**No. 2015-1944**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00601

**NON-CONFIDENTIAL BRIEF FOR APPELLEE
BROADCOM CORPORATION**

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Appellee Broadcom
Corporation*

January 25, 2016

## CERTIFICATE OF INTEREST

Counsel for Appellee Broadcom Corporation certifies the following:

1.     The full name of every party or *amicus* represented by us is:

Broadcom Corporation

2.     The names of the real party in interest represented by us is:

Broadcom Corporation

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  Dominic E. Massa, Katie M. Saxton, Kevin A. Goldman, Zachary P. Piccolomini, Michael A. Diener

Dated:  January 25, 2016

/s/ Dominic E. Massa
Dominic E. Massa
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

- i -

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF AUTHORITIES .........................................................................v

STATEMENT OF RELATED CASES ..........................................................1

INTRODUCTION .........................................................................................2

STATEMENT OF ISSUES ...........................................................................4

STATEMENT OF THE CASE ......................................................................4

    A.    The Parties ............................................................................4

    B.    The Prior Art .........................................................................5

            1.    ARQ Protocols .........................................................5

            2.    The Seo Reference ...................................................6

    C.    The '215 Patent .....................................................................8

            1.    The '215 claims and specification ............................8

            2.    The '215 patent prosecution history .........................9

    D.    The ITC Litigation ...............................................................10

    E.    The Eastern District Of Texas Litigation ............................11

    F.    The Proceedings Before The Board And The Prior Petition For Mandamus ........................................................13

SUMMARY OF THE ARGUMENT ............................................................19

ARGUMENT ...............................................................................................21

I.    STANDARD OF REVIEW...................................................................21

II. THE BOARD CORRECTLY DETERMINED THAT THE '215 PATENT CLAIMS ARE UNPATENTABLE. ...................................................22

    A. The Board Correctly Construed "Type Identifier Field" To Mean "A Field Of A Message That Identifies The Type Of That Message." ........................................................22

    B. Substantial Evidence Supports The Board's Factual Finding That Seo Anticipates The '215 Patent Claims. ......................25

        1. Seo discloses a "type identifier field." .....................................25

        2. Seo discloses a "message field including a type identifier field." .................................................................29

        3. Seo discloses the additional limitations of claim 15. ...........................................................................32

III. THE BOARD'S DETERMINATION TO INITIATE AN *INTER PARTES* REVIEW IS BOTH CORRECT AND UNREVIEWABLE. ..........................36

    A. 35 U.S.C. § 314(d) Deprives This Court Of Jurisdiction To Review The Board's Determination To Initiate An *Inter Partes* Review .............................................................36

    B. Although Not Reviewable, The Board Correctly Determined That Broadcom's Petition Was Not Time-Barred. .............................................................................42

        1. The Board properly applied Section 315(b) to determine that Broadcom's petition was timely filed. ..........................................................................42

        2. The Texas Defendants are not real parties in interest or in privity with Broadcom. ........................44

    C. Wi-Fi One Has Identified No Basis For This Court To Invoke The Extraordinary Remedy Of Mandamus. ...........................49

CONCLUSION ..............................................................................50

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE


**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages 12-14 and 47-48 describes the commercial relationship between Broadcom and the Texas Defendants.  The material omitted on pages 46-47 describes a non-public regulatory action.

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Achates Reference Publishing, Inc. v. Apple Inc.*,
  803 F.3d 652 (Fed. Cir. 2015) ...................................................................passim

*Allied Chemical Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980)...................................................................................49

*Anhydrides & Chemicals, Inc. v. United States*,
  130 F.3d 1481 (Fed. Cir. 1997) ...............................................................35

*Apple Inc. v. Achates Reference Publishing, Inc.*,
  IPR2013-00080, 2013 WL 6514049 (PTAB Apr. 3, 2013) .............................45

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002) .................................................................24

*Cheney v. United States District Court for the District of Columbia*,
  542 U.S. 367 (2004)...............................................................................49

*City of Arlington v. Federal Communications Commission*,
  133 S. Ct. 1863 (2013)............................................................................41

*Click-to-Call Technologies, LP v. Oracle Corp.*,
  622 F. App'x 907 (Fed. Cir. 2015) ..........................................................38

*Director, Office of Workers' Compensation Programs v. Mangifest*,
  826 F.2d 1319 (3d Cir. 1987) ..................................................................48

*Dynamic Drinkware, LLC v. National Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015) ...............................................................22

*Ericsson, Inc. v. D-Link Systems, Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ...........................................................passim

*i4i, Ltd. Partnership v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) .................................................................32

*In re Altera Corp.*,
  494 F. App'x 52 (Fed. Cir. 2012) .............................................................49

*In re Calmar, Inc.*,
    854 F.2d 461 (Fed. Cir. 1988) ..................................................................49

*In re Cuozzo Speed Technologies, LLC*,
    793 F.3d 1268 (Fed. Cir. 2015) ..........................................................21, 40

*In re Gleave*,
    560 F.3d 1331 (Fed. Cir. 2009) ..............................................................21

*In re Jolley*,
    308 F.3d 1317 (Fed. Cir. 2002) ..............................................................22

*In re Kotzab*,
    217 F.3d 1365 (Fed. Cir. 2000) ..............................................................22

*In re Regents of University of California*,
    101 F.3d 1386 (Fed. Cir. 1996) ..............................................................49

*In re Telefonaktiebolaget LM Ericsson*,
    564 F. App'x 585 (Fed. Cir. 2014) .......................................................1, 15

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ..............................................................49

*Lindahl v. Office of Personnel Management*,
    470 U.S. 768 (1985)...............................................................................40

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
    No. 2015-1091, __ F.3d __, 2015 WL 7755665 (Fed. Cir. Dec. 2,
    2015) ......................................................................................................38

*Preminger v. Secretary of Veterans Affairs*,
    517 F.3d 1299 (Fed. Cir. 2008) ..............................................................38

*Reilly v. Office of Personnel Management*,
    571 F.3d 1372 (Fed. Cir. 2009) ..............................................................40

*Sebelius v. Auburn Regional Medical Center*,
    133 S. Ct. 817 (2013)..............................................................................41

*SightSound Technologies, LLC v. Apple Inc.*,
    No. 2015-1159, __ F.3d __, 2015 WL 8770164 (Fed. Cir. Dec. 15,
    2015) ......................................................................................................38

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)......................................................................................45

*Versata Development Group, Inc. v. SAP America, Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ...................................................................40

## DOCKETED CASES

*Achates Reference Publishing, Inc. v. Apple Inc.*,
    No. 15-842 (U.S. Dec. 29, 2015)....................................................................2

*Cuozzo Speed Technologies, LLC v. Lee*,
    No. 15-446 (U.S. Jan. 15, 2016) ...............................................................2, 38

## STATUTES, REGULATIONS, AND RULES

35 U.S.C.
    § 314(d)................................................................................................passim
    § 315(b).................................................................................................passim
    § 316(a)(5) ........................................................................................14, 45

37 C.F.R. § 42.51(b)(2)....................................................................................14, 45

Office Patent Trial Practice Guide,
    77 Fed. Reg. 48,756 (Aug. 14, 2012) .......................................................45

Fed. Cir. R. 35(a)(1).......................................................................................38

**STATEMENT OF RELATED CASES**

A petition for a writ of mandamus in the underlying *inter partes* review was previously before this Court. *In re Telefonaktiebolaget LM Ericsson*, Nos. 2014-127, -128, and -129, 564 F. App'x 585 (Fed. Cir. May 5, 2014). The panel was composed of Judges Lourie, Dyk, and Reyna. Judge Lourie authored the opinion of the Court.

The patent at issue in the present appeal, U.S. Patent No. 6,772,215 ("the '215 patent"), is involved in a case currently pending in the United States District Court for the Eastern District of Texas. *Ericsson, Inc. v. D-Link Sys., Inc.,* No. 10-cv-0473 (E.D. Tex.). This Court previously decided an appeal from that action. *Ericsson, Inc. v. D-Link Sys., Inc.*, Nos. 2013-1625, -1631, -1632, -1633, 773 F.3d 1201 (Fed. Cir. Dec. 4, 2014). The panel was composed of Judges O'Malley, Taranto, and Hughes. Judge O'Malley authored the opinion of the Court, and Judge Taranto filed an opinion dissenting-in-part.

There are two cases pending before this Court that have been designated as companions to the present appeal: (1) *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1945; and (2) *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1946.

The Supreme Court granted a petition for writ of certiorari to consider the circumstances under which a decision by the Patent Trial and Appeals Board ("the Board") to institute an *inter partes* review may be reviewed on appeal as well as

the claim construction methodology to be applied in *inter partes* review proceedings. *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446 (U.S. Jan. 15, 2016). There is an additional petition for writ of certiorari pending before the Supreme Court that concerns the circumstances under which a decision by the Board to institute an *inter partes* review may be reviewed on appeal. *Achates Reference Publ'g, Inc. v. Apple Inc.*, No. 15-842 (U.S. Dec. 29, 2015).

Counsel for Appellee Broadcom Corporation ("Broadcom") know of no other case pending in this or any other court that may affect or be affected by the Court's decision in this appeal.

## INTRODUCTION

The '215 patent claims recite straightforward method steps directed to a so-called ARQ protocol for transferring data in a communication network. ARQ protocols are typically used to ensure that a receiver properly receives every data packet that is sent by a transmitter, for example by having the receiver send "negative acknowledgements" that identify missing packets that the transmitter should resend. Numerous types of negative acknowledgements were known in the prior art, for example a list of consecutive missing packets or a bitmap of non-consecutive missing packets. But the '215 patent purports to disclose a novel ARQ protocol in which a receiver may send different types of negative

acknowledgements so long as it includes a "type identifier field" that identifies the type of negative acknowledgement being sent.

Wi-Fi One now concedes, however, that prior art communications systems—including the Seo prior art reference—disclose ARQ protocols that feature multiple negative acknowledgement formats, as well as a field that identifies the type of negative acknowledgement. Wi-Fi One nevertheless attempts to distinguish Seo on the grounds that it discloses a single "type" of negative acknowledgement in its header, and therefore fails to disclose a "type identifier field." Wi-Fi One's tortured arguments do not withstand scrutiny. Seo discloses a field—"NAK_TYPE"—that identifies the type of negative acknowledgement being conveyed (from among multiple types of potential negative acknowledgements) and thus is indistinguishable from the '215 patent "type identifier field."

Tellingly, rather than focusing on the merits of the Board's determination, Wi-Fi One devotes the bulk of its brief to arguing that Broadcom's petition for *inter partes* review was untimely. Indeed, on four separate occasions below, Wi-Fi One argued that Broadcom was in privity with parties who were time-barred from petitioning for review of the '215 patent under 35 U.S.C. § 315(b), and therefore that the Board erred in its decision on institution. The Board repeatedly found that Wi-Fi One's contentions were baseless and that it had properly instituted an *inter*

- 3 -

*partes* review.  While the Board's determination is plainly correct, 35 U.S.C.

§ 314(d) unequivocally deprives this Court of jurisdiction to review the Board's

decision to institute an *inter partes* review, including the Board's determination

that a petition is timely under 35 U.S.C. § 315(b).

Wi-Fi One has shown no error in the Board's decision, and it should be

affirmed.

## STATEMENT OF ISSUES

1.    Whether the Board correctly determined that claims 1, 2, 4, 6, 8, 15,

22, 25, 26, 29, 32, 34, 45, 46, 49, 52, and 54 of the '215 patent are unpatentable.[1]

2.    Whether 35 U.S.C. § 314(d) deprives this Court of jurisdiction to

review the Board's determination to initiate an *inter partes* review based on its

assessment of the time bar set forth in 35 U.S.C. § 315(b).

## STATEMENT OF THE CASE

**A.    The Parties**

Broadcom is one of the world's leading developers of semiconductor

technologies.  Broadcom circuits are used worldwide to power numerous

commercial devices and applications, including smartphones, wireless and

broadband communication networks, and cloud-based storage solutions.

---

[1] Wi-Fi One concedes that, other than claim 15, all challenged claims rise or fall
with independent claim 1.  *See* Opening Brief of Appellant ("Br.") 3.

- 4 -

Wi-Fi One LLC is the owner of the '215 patent and a wholly owned subsidiary of non-practicing entity Optis Wi-Fi Holdings, LLC.[2] Wi-Fi One also identified non-practicing entity PanOptis Patent Management, LLC as a real party-in-interest in the *inter partes* review proceedings. A2.

## B. The Prior Art

### 1. ARQ Protocols

The '215 patent is directed to an Automatic Repeat Request ("ARQ") protocol for transferring data. A33(1:23-25). In communication networks, data is typically transferred in sequential "packets"[3] (with each packet assigned its own "sequence number" or "SN"), and ARQ techniques are used to address missing or damaged packets. A33(2:17-37). Various prior art ARQ protocols teach methods for a receiver to inform a transmitter that a packet was not received correctly so that the transmitter may resend it as many times as needed until it is received by the receiver, ensuring that the receiver receives every packet in a sequence. A33(1:27-48). For example, the receiver may provide the transmitter with a positive acknowledgement ("ACK" or "PACK") indicating that one or more

---

[2] During the pendency of the *inter partes* review, Telefonaktiebolaget LM Ericsson ("Ericsson") transferred ownership of the '215 patent to Wi-Fi One, though Ericsson retains some interest in the patent. A468. This brief refers to Wi-Fi One LLC and Ericsson collectively as "Wi-Fi One."

[3] "Packets" are also referred to interchangeably as "protocol data units" ("PDUs"), "cells," and "frames." A311.

packets were correctly received, and/or it may provide a negative acknowledgement ("NAK" or "NACK") indicating that one or more packets were not correctly received. A311-12; A30(Fig. 1); A33(2:34-37). The transmitter uses the positive or negative feedback to determine which packets to retransmit. A312; A33(1:33-36).

### 2.    The Seo Reference

U.S. Patent No. 6,581,176 ("Seo"), filed December 31, 1998 and issued on June 17, 2003, is directed to improving NAK messages in an ARQ protocol. A501(3:58-4:2, 3:42-43)(Seo). It was designed to modify the ARQ protocol specified in international standard IS-707 for a Code Division Multiple Access ("CDMA") mobile radio communication system. A500(1:14-19)(Seo); A502(5:28-30)(Seo).

If the Seo receiver determines that it has not received certain data packets, it sends a NAK requesting that the transmitter retransmit the missing data. A502(5:31-36)(Seo). While earlier ARQ receivers sent separate NAK messages for each missing data packet, Seo teaches that a receiver may send a single NAK message that informs the transmitter of all missing data packets. *Id.*

The Seo system features two different types of NAKs:  a first type in which the NAK identifies the first sequence number and last sequence number of the missing data ("First/Last"), and a second type in which the NAK identifies the

- 6 -

specific missing packets using a bitmap ("Bitmap").  A502(5:54-6:22)(Seo).  In the

case of a "First/Last" NAK, the transmitter will retransmit the entire consecutive

sequence of packets from the first identified packet to the last identified packet,

whereas in the case of a "Bitmap" NAK, the transmitter will retransmit only the

packets that were specifically identified as missing.  A502(6:26-49)(Seo).  Figure 4

depicts the different possible fields that can be included in different types of

feedback messages:

| FIELD | LENGTH (BITS) |
|---|---|
| SEQ | 8 |
| CTL | 4 |
| RE_NUM | 2 |
| NAK_TYPE | 2 |
| NAK_SEQ | 4 |
| L_SEQ_HI | 4 |
| | |
| FIRST | 12 |
| LAST | 12 |
| FCS | 16 |
| PADDING | VARIABLE |
| | |
| NAK_Map_Count | 2 |
| NAK_Map | |
| NAK_Map_SEQ | 12 |
| NAK_Map | 8 |

**FIG. 4**

A497(Fig. 4)(Seo).  Seo explains that not all fields are used in all types of

messages.  For example, a "First/Last" type of NAK will use the "First/Last" fields

(e.g., FIRST, LAST) but not the "Bitmap" fields (e.g., NAK_MAP_COUNT), whereas a "Bitmap" type of NAK will use the "Bitmap" fields but not the "First/Last" fields. A502(6:18-21)(Seo).

The NAK message includes a type field, called NAK_TYPE, that identifies which type of NAK is being sent. A502(5:53-54)(Seo). Seo teaches that a receiver can use both types of NAK messages ("First/Last" and "Bitmap") and switch between them interchangeably. A501-02(4:40-54, 5:28-40, 6:26-49)(Seo). The Seo transmitter relies on the NAK_TYPE field to identify the type of NAK message so that it can process the NAK message correctly. A502(5:53-57, 6:19-22)(Seo).

## C.    The '215 Patent

### 1.    The '215 claims and specification

The '215 patent is directed to an ARQ protocol in which a receiver sends a NAK to inform a transmitter that certain data packets were not correctly received and should be retransmitted.[4] The specification acknowledges that numerous different types of NAK messages were known in the prior art (for example, providing a list of sequential missing packets or providing a bitmap of non-consecutive missing packets), but asserts that prior art ARQ protocols were "static"

---

[4] The '215 patent also discloses variations that use an ACK to indicate which packets were properly received, but there is no dispute that positive and negative acknowledgements were equally well-known in the prior art and do not affect the patentability of the claims. *See* Br. 9-18.

and not adaptable. A34(3:46-56). The patent purports to disclose an ARQ protocol "whereby different mechanisms can be used to indicate erroneous D-PDUs [i.e., packets that were not received correctly]." A34(4:43-47). The specification states that the receiver may indicate which packets were not received using different types of known NAK messages, and that the NAK may include a "type identifier field" that informs the transmitter which type of NAK is being sent. A35-37(6:19-24, 7:52-65, 8:34-35, 8:49-57, 9:1-9).

> Claim 1, which is representative of the claims at issue, recites:
>
> A method for minimizing feedback responses in an ARQ protocol, comprising the steps of:
>
> sending a plurality of first data units over a communication link;
>
> receiving said plurality of first data units; and
>
> responsive to the receiving step, constructing a message field for a second data unit, said message field including a *type identifier field* and at least one of a sequence number field, a length field, and a content field.

A37(10:19-28) (line breaks added).[5]

### 2.    The '215 patent prosecution history

As originally filed, the claims did not require a "type identifier field" but instead listed a "type identifier field" as one among several possible fields that could be included in a feedback response (i.e., an ACK or a NAK). A1698-703.

---

[5] Except as otherwise noted, each emphasis in this brief is added.

During prosecution, the Examiner rejected the original claims as anticipated by a prior art reference ("Cam").  The applicants argued that Cam did not disclose a "type identifier field," A1707-08, and amended the claims to make the "type identifier field" a required field rather than an optional field, as shown below in the amendment to claim 1:

> A method for minimizing feedback responses in an ARQ protocol, comprising the steps of:
>
> sending a plurality of first data units over a communication link;
>
> receiving said plurality of first data units; and
>
> responsive to the receiving step, constructing a message field for a second data unit, said message field including <u>a type identifier field and</u> at least one of ~~a type identifier field,~~ a sequence number field, a length field, and a content field.

A1698(annotations in original); *see also* A1699-703 (similarly amending the additional independent claims).  The Examiner allowed the claims to issue as amended.

### D.    The ITC Litigation

The '215 patent is one of a number of patents that were the subject of an investigation at the U.S. International Trade Commission captioned *In the Matter of Certain Electronic Devices, Including Wireless Communication Devices, Tablet Computers, Media Players and Televisions, and Components Thereof*, ITC Inv. No. 337-TA-862 (the "ITC Investigation").  A3.  The ITC Investigation was based

on a complaint filed by Wi-Fi One that identified Samsung Electronics America, Inc., Samsung Telecommunications America LLC, and Samsung Electronics Co., Ltd. as respondents. Following the exchange of expert reports, the ITC Staff Attorney recommended that the asserted claims of the '215 patent be found invalid under both Seo and a separate prior art reference ("Gong"). A303. The investigation was terminated prior to the ITC reaching a determination on the merits. A1125.

### E.     The Eastern District Of Texas Litigation

On September 14, 2010, Wi-Fi One filed suit in the United States District Court for the Eastern District of Texas, accusing seven wireless communications companies—D-Link Systems, Inc., Netgear, Inc., Belkin International, Inc., Dell, Inc., Toshiba Corporation, Acer Inc., and Gateway Inc. (the "Texas Defendants")—of infringing nine patents that Wi-Fi One alleged were essential to the IEEE 802.11(n) wireless standard, including the '215 patent. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1213 (Fed. Cir. 2014).[6] Although Wi-Fi One's allegations were based in part on the Texas Defendants' use of Broadcom's chips

---

[6] The Texas litigation and subsequent appeal also involved U.S. Patent Nos. 6,466,568 ("the '568 patent") and 6,4424,625 ("the '625 patent"). In separate *inter partes* reviews, the Board found that the challenged claims of the '568 patent and '625 patent were unpatentable, and those determinations are the subject of the co-pending cases that have been designated as companions to the present appeal, *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1945, and *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1946.

- 11 -

in their products, Wi-Fi One chose not to sue Broadcom. Broadcom never became a party to the litigation, ███████████████████████████████ ███████████████████████████. A868 (¶¶2-5).

In its claim construction order, the district court adopted Wi-Fi One's proposed construction of the term "type identifier field" as "a field that identifies the message type of the feedback response message from a number of different message types." A591; A594.

The district court held an eight-day jury trial. A1641. The Texas Defendants were allowed 15 hours to present their case, including their defenses related to the five remaining patents-in-suit, damages, and certain equitable issues. A304. The Texas Defendants elected not to address the invalidity of the '215 patent at trial. *Id.* At the conclusion of the trial, the jury found that the Texas Defendants infringed the '215 patent. *Ericsson*, 773 F.3d at 1213.

The Texas Defendants appealed, *inter alia*, the district court's construction of "type identifier field," the finding of infringement of the '215 patent, and the district court's jury instructions related to damages. *Ericsson*, 773 F.3d at 1217. The Court adopted the district court's claim construction and affirmed the finding of infringement. *Id.* at 1217-22. The Court vacated the damages award because the district court had not properly instructed the jury on how to apportion the value of an allegedly standard-essential patent. *Id.* at 1235. In particular, the Court

noted that, while Wi-Fi One based its infringement theory on the accused products' compliance with the 802.11(n) standard, "the '215 patent … at best covers the ability to send different feedback response types," and "some 802.11(n) standard products do not use more than one type of feedback message." *Id.* at 1232.

### F. The Proceedings Before The Board And The Prior Petition For Mandamus

Broadcom petitioned for *inter partes* review of claims 1, 2, 4, 6, 8, 15, 22, 25, 26, 29, 32, 34, 45, 46, 49, 52, and 54 of the '215 patent ("the challenged claims"). A305. Broadcom identified several grounds of invalidity, including that the challenged claims are anticipated by Seo. A306. In support of its petition, Broadcom submitted testimony from Dr. Harry Bims, an expert in the field of wireless communications and communication protocols. A306; A521-22(¶2). Dr. Bims explained how Seo discloses each element of the challenged claims. A529-42(¶¶30-62).

On December 16, 2013, Wi-Fi One filed a motion for additional discovery related to its contention that Broadcom allegedly had the opportunity to control the Texas Defendants in the Texas litigation and therefore that its petition for *inter partes* review was time-barred under 35 U.S.C. § 315(b). A45. Broadcom submitted its opposition on December 20, 2013, explaining that

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████.   A69; *see also* A868(¶¶2-5).

On January 24, 2014 the Board denied Wi-Fi One's motion.  A90.  The Board carefully reviewed Wi-Fi One's discovery requests (A77-79); the statute, legislative history, regulations, and prior Board decisions regarding requests for additional discovery (A79-80); the statute, regulations, and court decisions regarding privity (A80-84); and the arguments and facts asserted by Wi-Fi One (A84-88).  "After weighing the factors surrounding the issue of privity as advanced by [Wi-Fi One]," the Board found that Wi-Fi One "has not met its burden of demonstrating that additional discovery is in the interests of justice."  A90; *see also* 35 U.S.C. § 316(a)(5); 37 C.F.R. § 42.51(b)(2).

On February 7, 2014, Wi-Fi One requested a rehearing of its motion for additional discovery alleging that Broadcom's actions indicate a community of interest with the Texas Defendants that was served in the Texas litigation.  A98.  The Board denied Wi-Fi One's request on February 20, 2014.  A101-02.  The Board explained that Wi-Fi One "ignores the weight of authority cited by the Board that shows control over prior litigation is a crucial factor normally required

to bind a party to that prior litigation using collateral estoppel," A103, and held that Wi-Fi One "failed to meet its burden of showing that additional discovery would have more than a mere possibility of showing that Broadcom should be bound by the Texas litigation." A105-06.

On March 10, 2014, the Board issued its Decision on Institution, finding that there was a reasonable likelihood that the challenged claims were anticipated by Seo. A128. The Board construed the term "type identifier field" to mean "a field of a message that identifies the type of that message," A117, and found a reasonable likelihood that Seo discloses this element. A126-27. The Board elected not to institute review based on the additional prior art reference that Broadcom had identified ("Gong") on the grounds that it was redundant. A128.

On April 1, 2014, Wi-Fi One petitioned this Court for a writ of mandamus seeking to overturn the Board's denial of its motion for additional discovery related to the privity issue. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014).[7] This Court held that Wi-Fi One had failed to meet the "heavy burden" required for mandamus relief, and denied the petition without prejudice to Wi-Fi One attempting to raise its arguments on appeal after final decision by the Board. *Id.* at 586.

---

[7] Wi-Fi One filed essentially identical petitions for writs of mandamus in the *inter partes* reviews concerning the '568 patent and '625 patent, and the Court issued a consolidated opinion that addressed all three petitions.

- 15 -

Wi-Fi One filed a Patent Owner Response on June 11, 2014, and submitted a supporting declaration by its expert Dr. Akl.  A131; A1645.  Wi-Fi One argued that the Board erred in construing "type identifier field" and that the term should be construed to mean "a field of a message that identifies the type of a feedback message from a number of different message types."  A162.  Wi-Fi One further argued that Seo does not disclose a "type identifier field" because it does not identify a type of message from a number of different message types.  A173-75.  Wi-Fi One also argued that Seo does not disclose a "message field including a type identifier field" because its "type identifier field" is allegedly part of the signal header rather than the signal payload.  A175-76.  Additionally, Wi-Fi One argued that Seo failed to disclose a "length field," which Wi-Fi One contended was an additional requirement of dependent claim 15.  A176-77.  Wi-Fi One also asserted that Broadcom's petition was time-barred on the grounds that Broadcom was in privity with the Texas Defendants and "could have exercised control" over the Texas litigation.  A148.

On October 1, 2014, Broadcom filed its Reply.  A231.  Broadcom explained that the Board had reasonably construed "type identifier field" to mean a "field of a message that identifies the type of that message" based on its usage in the specification.  A237.  Broadcom further explained that Seo discloses a "type identifier field" because its NAK_TYPE field identifies the type of feedback

message from among the multiple types of feedback messages that Seo employs. A238-43. Broadcom also explained that Wi-Fi One could not distinguish Seo based on its allegation that Seo disclosed a "type identifier field" in its header because the '215 patent claims, specification, and prosecution history all demonstrate that a "type identifier field" could be located in any part of a message, and that in fact the "type identifier field" disclosed in the '215 patent is itself in the message header. A243. Additionally, Broadcom explained that claim 15 does not require a "length field," and that Wi-Fi One's attempt to rearrange the clauses of claim 15 to create such a requirement was contrary to the claim's plain meaning. A247. Broadcom also explained that, with respect to the time-bar issue, Wi-Fi One was simply rearguing its "privity" theory that the Board had already rejected multiple times. A234-36.

After an oral hearing, the Board issued its Final Written Decision. The Board found that Wi-Fi One's arguments and evidence regarding the "privity" issue were not substantively different from the arguments and evidence it had already found to be insufficient, and affirmed its decision to institute *inter partes* review based on the timeliness of the petition. A8-9.

The Board maintained its construction of "type identifier field" as "a field of a message that identifies the type of that message." A13. The Board explained that, while Wi-Fi One had proposed adding explicit language that the type

- 17 -

identifier field identify the type of message "from a number of different message types," that limitation was already implicit in the Board's construction. A12.

The Board further held that the challenged claims were unpatentable as anticipated by Seo. A16-26. The Board explained that the Seo NAK_TYPE field identifies which of two possible message types is being conveyed, and therefore satisfies the "type identifier field" element. A20. The Board rejected Wi-Fi One's argument that the "type identifier field" could not be conveyed in a header, explaining that the intrinsic evidence provided no basis for such a limitation. A23-24. The Board further found that claim 15 does not require a "length field," and that Wi-Fi One's claim interpretation was ungrammatical and incorrect. A25.

On April 6, 2015, Wi-Fi One filed a request for a rehearing of the Board's Final Written Decision, arguing that the Board had applied an erroneous legal standard in its privity determination that focused solely on whether Broadcom had the ability to control the Texas Defendants in the Texas litigation, and had not considered whether the Texas Defendants were controlling Broadcom's actions in the *inter partes* review. A260-61. The Board denied Wi-Fi One's request on June 1, 2015, explaining that Wi-Fi One had not identified any error in the Board's analysis. A272-77. In particular, the Board explained that its prior decision "focuses primarily on Broadcom's ("Petitioner") exercise of control, or opportunity to exercise control over the prior District Court lawsuit (Req. 8), that is

- 18 -

because that was the focus of Patent Owner's Motion for Additional Discovery."

A273.  The Board further explained that its prior decision "did not characterize the

legal standard, for all cases, as being limited strictly to a petitioner's control, or

opportunity to control, a non-party in previous litigation.  To the contrary, it

addressed control, or opportunity to control, by a non-party generally as one of  a

number of factors."  A273-74.  The Board found that, just as Wi-Fi One had failed

to put forth any evidence that Broadcom had the ability to exercise control over the

Texas Defendants in the Texas litigation, it had similarly failed to put forth any

evidence that the Texas Defendants were controlling Broadcom's actions in the

*inter partes* review.  A272-78.  Thus, the Board reaffirmed its determination that

the Texas Defendants were not real parties in interest or in privity with Broadcom,

and that the *inter partes* review was not time-barred under 35 U.S.C. § 315(b).

A278.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The Board correctly found that the challenged claims of the '215 patent are

unpatentable.  The Board's factual determination that every claim limitation is

disclosed by Seo is supported by substantial evidence.

The '215 patent is directed to a straightforward ARQ protocol in which a

receiver sends a "negative acknowledgement" ("NAK") that informs a transmitter

that certain data packets were not received and should be resent.  The specification states that different types of known NAK messages may be used (e.g., identifying a sequential list of missing packets, or using a bitmap to identify a non-sequential list of missing packets), and that the NAK may include a "type identifier field" that identifies which type of NAK is being sent.  Seo discloses such an ARQ protocol.

Wi-Fi One contends that Seo does not disclose a "type identifier field" because it purportedly identifies only a single type of NAK, and because it purportedly identifies the type of NAK in the signal header rather than the signal payload.  These distinctions have no basis in either the patent or the record.  Seo discloses a NAK that features a field ("NAK_TYPE") that identifies the type of NAK being sent (e.g., a list of sequential missing packets or a bitmap that identifies a non-sequential list of missing packets).  And nothing in the intrinsic evidence remotely supports limiting the "type identifier field" to a field in a payload rather than in a header; indeed, as the Board correctly found as a factual matter, the "type identifier field" disclosed in the '215 patent is itself part of the header.  Wi-Fi One also contends that claim 15 requires that the NAK include a "length field."  But the plain language of the claim makes clear that a "length field" is optional, not a requirement.

Wi-Fi One's principal attempt to circumvent the Board's well-supported claim construction and factual determinations is to argue that the Board never

- 20 -

should have instituted an *inter partes* review on the grounds that Broadcom's petition is time-barred under 35 U.S.C. § 315(b). The Board correctly determined that the defendants in Wi-Fi One's prior lawsuit were not real parties in interest or in privity with Broadcom and therefore Broadcom's petition for *inter partes* review was timely filed, and in any event 35 U.S.C. § 314(d) deprives this court of jurisdiction to review the Board's determination.

The Board's decision should be affirmed.

## ARGUMENT

### I.    STANDARD OF REVIEW

In an appeal from an *inter partes* review, this Court "review[s] the Board's claim construction according to the Supreme Court's decision in *Teva Pharmaceuticals U.S.A., Inc. v. Sandoz, Inc.* [The Court] review[s] underlying factual determinations concerning extrinsic evidence for substantial evidence and the ultimate construction of the claim de novo." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279-80 (Fed. Cir. 2015) (citation omitted). In an *inter partes* review, claim terms in an unexpired patent are interpreted according to their broadest reasonable construction. *Id.* at 1278.

Anticipation, including whether a limitation is disclosed in a prior art reference, is a question of fact. *In re Gleave*, 560 F.3d 1331, 1334-35 (Fed. Cir. 2009). The Board's factual findings are to be upheld unless they are not supported

by substantial evidence, while its legal conclusions are reviewed *de novo*.

*Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Substantial evidence is more than a "mere scintilla of evidence" but something less than the "weight of the evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

35 U.S.C. § 314(d) prohibits this Court from reviewing the Board's determination to initiate an *inter partes* review based on its assessment of the time-bar set forth in 35 U.S.C. § 315(b). *Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652, 658 (Fed. Cir. 2015).

## II. THE BOARD CORRECTLY DETERMINED THAT THE '215 PATENT CLAIMS ARE UNPATENTABLE.

### A. The Board Correctly Construed "Type Identifier Field" To Mean "A Field Of A Message That Identifies The Type Of That Message."

The '215 patent is directed to an ARQ protocol in which a receiver sends a NAK to inform a transmitter that certain data packets were not correctly received and should be retransmitted. The specification states that different types of NAKs may be used, and that the NAK may include a "type identifier field" that informs

the transmitter which type of message is being sent.  A35-37(6:19-24, 7:52-65, 8:34-35, 8:49-57, 9:1-9).  Based on this clear disclosure, the Board correctly construed "type identifier field" to mean "a field of a message that identifies the type of that message."  A9-13.

Wi-Fi One argues that the Board's construction errs in two respects.  Neither has merit.

*First*, Wi-Fi One asserts that the Board's construction should have specified that a "type identifier field" identifies a message type "from a number of different message types."  Br. 51-52.  But the Board's construction does just that.  As the Board explained, by stating that the field identify the "type" of message, its construction requires that the "type identifier field" provide the transmitter with information to differentiate between different types of potential feedback messages.  A12 (explaining that Wi-Fi One's proposed "from a number of different message types" qualification is "implicit in [the Board's] construction").  Indeed, in finding that Seo's NAK_TYPE field is a "type identifier field," the Board found that the NAK_TYPE differentiates between different types of feedback messages.  A23.  This is all that Wi-Fi One contends is required.  *See* Br. 52 ("[T]he 'type identifier field' must be able to differentiate between different types of the feedback messages.'").  Thus, the Board's construction already includes the "from

- 23 -

a number of different message types" element that Wi-Fi One incorrectly contends is absent.

*Second*, Wi-Fi One contends that the Board's construction should have required that a "type identifier field" identify a type of "feedback response" message, rather than just a type of message.  Br. 51.  The Board rejected this additional limitation, explaining that it would unduly narrow the term by incorporating the intended use described in the preamble into the claim itself.  A10-11; *see Catalina Mkt'g. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (explaining that a preamble is not limiting where it merely states an intended use).  As Broadcom explained below, Wi-Fi One's argument is entirely irrelevant to the present appeal—there is no dispute that the messages disclosed in the '215 patent specification and the Seo prior art reference are all "feedback response" messages.  *See* Br. 53-56.  Thus, the Court need not address this issue, and in any event it provides no basis for disturbing the Board's factual finding of anticipation.[8]

---

[8] In the appeal of the Texas litigation, this Court affirmed the district court's construction of "type identifier field" as "a field that identifies the message type of the feedback response message from a number of different message types." *Ericsson*, 773 F.3d at 1217-19.  Because the Board's construction includes the element "from a number of different message types," the only difference between the Board's broadest reasonable construction and this Court's construction under the *Phillips* framework is whether the "type identifier field" must identify a type of "feedback response." A10-12.  As set forth above, that difference is immaterial to the present appeal.

**B.    Substantial Evidence Supports The Board's Factual Finding That Seo Anticipates The '215 Patent Claims.**

The Board correctly found that Seo discloses every limitation of the '215 patent claims.  A16-26.  On appeal, Wi-Fi One contends only that Seo does not disclose a "type identifier field," a "message field including a type identifier field," and an alleged claim 15 requirement of a "length field."  Br. 53-61.  As set forth below, Seo discloses all of the claim elements, and the Board's anticipation finding is supported by substantial evidence.

### 1.    Seo discloses a "type identifier field."

Seo is directed to an ARQ protocol for a radio communication system.  A501(3:54-4:2)(Seo).  If the Seo receiver determines that it has not received certain data packets, it sends a NAK requesting that the transmitter retransmit the missing data.  A502(5:31-36)(Seo).  Seo further teaches that, rather than sending separate NAK messages for each missing data packet, the Seo receiver may send a single NAK that informs the transmitter of *all* missing data packets.  A502(5:31-36)(Seo).

The Seo system features two different types of NAKs:  a first type ("First/Last") in which the NAK identifies the first sequence number and last sequence number of a consecutive sequence of packets to be retransmitted, and a second type ("Bitmap") in which the NAK uses a bitmap to identify non-consecutive packets to be retransmitted.  A502(5:54-6:22)(Seo).  The NAK signal

- 25 -

includes a type field, called NAK_TYPE, that identifies which type of NAK is being sent. A502(5:53-54)(Seo). Seo teaches that a receiver can use both types of NAK messages and switch between them interchangeably, A501-02(4:40-54, 5:28-40, 6:26-49)(Seo), and thus the Seo transmitter relies on the NAK_TYPE field to identify the type of NAK message so that it can process the NAK message correctly. A502(5:53-57, 6:19-22)(Seo).

The Board correctly found that the NAK_TYPE field is a "type identifier field" because it identifies the type of NAK message. A19-20. The Board based its decision upon the express disclosure of Seo as well as the testimony of Broadcom's expert. A19-23; *see also* A526-31(¶¶24-32); A1110(¶¶4-6). The Board further explained that it did not credit the testimony of Wi-Fi One's expert, "who merely repeats the language of the Patent Owner Response." A22. The Board's factual determination is plainly supported by substantial evidence.

Wi-Fi One nevertheless contends that the NAK_TYPE field does not identify the "type" of NAK message because, according to Wi-Fi One, the Seo system employs only a single "type" of NAK message that includes both "First/Last" and "Bitmap" fields. Br. 53-56. Wi-Fi One's theory is entirely without merit.

Seo explains that different fields "exist" in different types of NAK messages. A502(6:18-22)(Seo). In a "First/Last" NAK message, specific fields

(e.g., FIRST, LAST) "exist" that relate to that specific type of message, whereas in a "Bitmap" NAK message different fields (e.g., NAK_MAP_COUNT) "exist" that relate to that different type of message. *Id.* As Broadcom's expert explained, in testimony credited by the Board, Seo uses the straightforward, well-understood meaning of "exist"—when a field exists, it is present in the NAK message; when a field does not exist, it is not present. A23; A1110(¶¶4-6). A Seo NAK message does not include fields that do not "exist," i.e., there are no "First/Last" fields in a "Bitmap" type message, and there are no "Bitmap" fields in a "First/Last" type message. A23; A1110(¶¶4-6).

Despite this plain disclosure, Wi-Fi One contends that both types of fields are present in both types of NAK messages, and that whether a particular field "exists" merely refers to whether it contains non-zero values or zero values. Br. 54. Seo, however, never says anything of the sort, and the passages Wi-Fi One purports to rely on in fact depict how different fields are present or not present (i.e., "exist") in different types of NAK messages. Figure 4, for example, depicts the set of possible fields that can be used in creating a NAK message, and plainly uses blank spaces to indicate that "First/Last" fields and "Bitmap" fields are not included in the same message. A497(Fig. 4)(Seo). Similarly, claim 10 describes the possible fields that can be used in a particular embodiment of the Seo method, and dependent claim 11 further explains that different fields "exist" in different

- 27 -

types of messages.  A504(9:49-54)(Seo) ("[S]aid (g), (h), (i) and (j) fields *exist* when a value of said (d) field is '00', said (k) field *exists* when the value of said (d) field is '01'"); A1110(¶4) ("Fields relating to NAK_MAP exist when the NAK message is a bitmap type (NAK_TYPE=01), and different fields (e.g., FIRST, LAST) exist for the First/Last list type of NAK message (NAK_TYPE=00).").[9]

Although Seo is clear on its face, the common sense understanding of what it means for a field to "exist" is further confirmed by the contemporaneous IS-707 CDMA standard, which appears to have adopted Seo.[10]  A241; A1099-100(194:6-195:8)(Akl); A1110-11(¶7).  As Wi-Fi One's expert concedes, IS-707 depicts that type-specific fields are present or not present depending on the NAK_TYPE of the message.  A1099-100(194:6-195:8)(Akl); *see also* A892; A1110-11(¶7).

---

[9] Wi-Fi One makes a related claim that the NAK messages necessarily have a uniform length because Seo provides that unused portions of a frame may be "padded" with zeroes.  Br. 54.  That is both incorrect and irrelevant.  The "padding" field, which is used to align a message with certain overall length boundaries, A1109(¶2), is not a "First/Last" field or a "Bitmap" field but an entirely separate field.  A497(Fig. 4).  Even if all the NAK messages in Seo were the same fixed length (though they are not), that would not indicate that the NAK messages contain both "First/Last" and "Bitmap" fields—completely different types of messages may be transmitted within the same length parameters.  A1109-10(¶3).

[10] The IS-707 standard, although not necessarily prior art, is at a minimum contemporaneous evidence of how a person of ordinary skill in the art would understand Seo's disclosure of what it means for a field to "exist."  A1096(191:7-21)(Akl); A1110-11(¶7).

Wi-Fi One's theory, moreover, is entirely irrelevant. Even under Wi-Fi One's incorrect interpretation of Seo (in which a NAK message includes fields that do not "exist" but are populated with meaningless zeroes), the NAK_TYPE field informs the transmitter which of the two types of NAK messages it has received— a first type in which the "First/Last" fields are populated with meaningful data and a second type in which the "Bitmap" fields are populated with meaningful data. *See* Br. 54; A502(5:47-6:22)(Seo); *see also* A1111-12(¶8). That is all that Wi-Fi One contends is required to satisfy the "type identifier field" limitation. Br. 50 ("A 'type identifier field' in the '215 patent must identify the type of message *from a number of different message types*.") (emphasis in original). Thus, Seo discloses a "type identifier field" even under Wi-Fi One's factually incorrect interpretation.

### 2. Seo discloses a "message field including a type identifier field."

Wi-Fi One separately argues that Seo does not disclose a "message field including a type identifier field" because the NAK_TYPE field (i.e., the "type identifier field") is allegedly part of the message header rather than the payload and therefore is not in a "message field." Br. 56-57. Once again, Wi-Fi One attempts to draw an artificial distinction that has no basis in the intrinsic evidence, and that the Board properly rejected. A23-24.

*First*, the '215 patent draws no distinction between header fields and payload fields, and in fact never once uses the word "header." A24. To the

contrary, the patent describes the signals depicted in Figures 4-7 as "messages" and does not differentiate any parts of those messages, such as those fields that include control information (i.e., message type) and those that contain payload data. A30-31(Figs. 4-7); A1112(¶10). In both Seo and the '215 patent, the "type identifier fields" inform the transmitter of the type of NAK message being transmitted. Wi-Fi One's purported distinction between a "type identifier field" in a header and an identical field in a payload is arbitrary and unsupported. Furthermore, to the extent that the "type identifier fields" depicted in the '215 patent were to be classified, the Board credited the testimony of Broadcom's expert that they would be classified as part of the header and not part of the payload because they contain bits that tell a receiver how to process the substance of the data that follows. A24; *see also* A1112(¶10).

*Second*, Wi-Fi One contends that the '215 patent claims were amended "to distinguish, among other things, fields that were included in the header." Br. 56. This erroneously suggests that Wi-Fi One amended the claims to require that the "type identifier field" be in a payload field distinct from a header field, and that before the amendment, the location of the "type identifier field" was not specified.

In fact, the claims before amendment required there to be a message field with a "type identifier field" *or* one of three other fields, and were amended to require a message field with a "type identifier field" *and* one of three other fields.

The amendment did not add any requirement that a "type identifier field" be located in any particular portion of the message (header, payload, or elsewhere). As indicated below, the amendment to claim 1 (like similar amendments to the other independent claims) makes no distinction between a header or a payload:

> said message field including <u>a type identifier field</u> and at least one of ~~a type identifier field,~~ a sequence number field, a length field, and a content field.

A1698(annotations in original); *see also* A1699-703(similar amendments); A1707-09 (explaining that the claims were amended to distinguish a prior art reference that disclosed a "sequence number field" but not a "type identifier field"). Claim 1 was not amended to distinguish a "type identifier field" located in a payload from one located in a header. Thus, the "type identifier field" was always part of the "message field"—the only impact of the amendment was to make the "type identifier field" a necessary element, and not one of several optional fields within the message field.

*Finally*, Wi-Fi One contends that including the "type identifier field" in a payload rather than a header "permits any combination of feedback messages to be transmitted in the response, thereby reducing the size or content of [the signal]." Br. 57. This alleged benefit is not a claim element and therefore does not

- 31 -

distinguish Seo in any way.[11] But it is also counterfactual—to the extent there is any benefit from minimizing bits in the "type identifier field," it makes no difference whether the "type identifier field" is in the header or the payload. A1112(¶9). And at most, the '215 patent posits that different types of feedback messages may be more efficient in different scenarios, for example a series of missing consecutive sequence numbers (Table 1 example 1) is more efficiently identified as a list, but a non-consecutive set of sequence numbers (Table 1 example 4) is more efficiently identified in a bitmap. A34(4:11-29). Seo, however, provides similar examples to demonstrate that its system offers the same efficiencies: in the case of missing consecutive sequence numbers, the "First/Last" approach is more efficient, but in the case of non-consecutive missing sequence numbers, the "Bitmap" approach is more efficient. A502(6:26-49)(Seo).

### 3. Seo discloses the additional limitations of claim 15.

Finally, the Board correctly found that Seo discloses the additional limitations of claim 15. A24-25. Claim 15 requires a type identifier field and "at least one of" three optional fields. More specifically, it reads:

> said message field including a **[1]** type identifier field and **[2]** *at least one of*, **[a]** a length field, **[b]** a plurality of erroneous sequence number-fields, and **[c]** a plurality of erroneous sequence number

---

[11] During the Texas litigation, Wi-Fi One argued (successfully) that minimizing the size of feedback responses was not a claim limitation. A592-94; *Ericsson*, 773 F.3d at 1218; *see also i4i, Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) ("[N]ot every benefit flowing from an invention is a claim limitation.").

length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields.

A37-38(10:66-11:5)(bracketed characters added).  In other words, the claim requires either [a] a length field, or [b] a plurality of erroneous sequence number fields, or [c] a plurality of erroneous sequence number length fields.  A25.  For embodiments that include [c], each erroneous sequence number length field must be associated with a respective sequence number field.  *Id.*  Thus, as the Board explained, the phrase "at least one of" means that the claim encompasses any combination of [a], [b], and/or [c], while the "each of" clause limits the permissible combinations by requiring that all embodiments featuring [c] also include [b], and further requires a specific associative relationship between [b] and [c].  *Id.*  This straightforward, linear parsing reflects the plain meaning of the claim, and comports with the equally straightforward and linear use of "at least one of" and "each of" throughout the claims.  *See, e.g.*, A37(10:25-27)(claim 1); A38(11:37-43)(claim 25); A38(12:40-46)(claim 45).

Wi-Fi One does not dispute that, under the Board's (correct) interpretation, claim 15 rises or falls with the other challenged claims.  Br. 57-61.  Instead, Wi-Fi One argues that the claim should be rewritten as follows:

> said message field including a **[1]** type identifier field and **[2]** *at least one of*, **[a]** a length field, **[b]** a plurality of erroneous sequence number-fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous

- 33 -

sequence number length fields, and **[c]** a plurality of erroneous sequence number length fields, ~~each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields~~.

*See* Br. 58.  Wi-Fi One provides no justification for rewriting the claim to depart from its plain meaning.  Tellingly, the only evidence Wi-Fi One purports to rely on is Figure 6, *see* Br. 59-60, but as the specification explains, Figure 6 depicts a method of transmitting an erroneous sequence number field along with an associated erroneous sequence number length field to identify a list of consecutive "erroneous" (missing or not properly received) packets, i.e., the "erroneous sequence number" identifies the first missing packet and the "erroneous sequence number length" indicates the total number of consecutive missing packets.  A36(7:29-41); A30(Fig. 6).  Thus, Figure 6 fully reflects the Board's correct interpretation, and provides no support for departing from the claim's plain meaning.  Indeed, the specification is consistent throughout its embodiments— every erroneous sequence number length field is associated with a sequence number field.  *See, e.g.*, A36(8:23-48) (describing erroneous sequence number length fields "$L_1$"—"$L_{LENGTH}$" and the associated erroneous sequence number fields "$SN_1$"—"$SN_{LENGTH}$"); A31(Fig. 8) (same).  Under Wi-Fi One's strained interpretation, the claim would encompass a signal that includes an erroneous sequence number length field but ***not*** an associated erroneous sequence number field.  Such an embodiment would be nonsensical, because an erroneous sequence

- 34 -

number length field is used only in association with an erroneous sequence number field to define the span of the consecutive sequence of packets to be retransmitted. A36(7:30-33). In other words, there is no need for an erroneous sequence number length field (which defines the end of the sequence) without an associated erroneous sequence number field (which defines the start of the sequence). Conversely, an erroneous sequence number field *is* independently useful, because it identifies a specific packet to be retransmitted.

Were there any ambiguity in the claim language (though there is not), the Board properly recognized that the most natural and grammatical reading is to apply the "each of…" clause to the immediately preceding clause. A25 ("When a claim recites, 'at least one of A, B, and C, each of said B associated with said C,' the intuitive interpretation is to read the 'each of' clause as part of C."); *see also Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1483 (Fed. Cir. 1997) (explaining that "referential or qualifying phrases" usually "refer solely to the last antecedent"). Wi-Fi One's ungrammatical claim interpretation should be rejected, and the Board's determination that Seo anticipates claim 15 should be affirmed.

III.    **THE BOARD'S DETERMINATION TO INITIATE AN *INTER PARTES* REVIEW IS BOTH CORRECT AND UNREVIEWABLE.**

A.    **35 U.S.C. § 314(d) Deprives This Court Of Jurisdiction To Review The Board's Determination To Initiate An *Inter Partes* Review.**

Wi-Fi One asks this Court to overturn the Board's determination to institute the underlying *inter partes* review based on its assessment of the time bar set forth in 35 U.S.C. § 315(b).  Br. 20-44.[12]  Congress, however, has mandated that the Board's determination whether to institute an *inter partes* review is "final and nonappealable," 35 U.S.C. § 314(d), and thus this Court has no jurisdiction to review the Board's determination.  *Achates*, 803 F.3d at 659.

This Court squarely resolved the question of whether the Board's Section 315(b) determination is appealable in *Achates*—a case that is factually indistinguishable from the present dispute.  In that case, Apple petitioned for *inter partes* reviews of several patents held by Achates.  *Id.* at 653.  In response, Achates asserted that Apple's petitions were untimely because Apple was in privity with certain parties that were time-barred under Section 315(b), and Achates moved for additional discovery related to a "blank indemnification agreement" that it argued could demonstrate a privity relationship between Apple and the time-barred

_____

[12] Wi-Fi One's Section 315(b) arguments are identical to the Section 315(b) arguments set forth in its briefs in the companion appeals.  For avoidance of doubt, Broadcom has included identical rebuttals in its three responsive briefs.  The page number citations in each brief refer to Wi-Fi One's corresponding opening brief and the corresponding joint appendix in each appeal.

parties. *Id.* at 654. The Board denied the motion on the grounds that there was "no basis to believe that even if the blank indemnification agreement had been signed, it would show [any time-barred parties] to be real parties in interest or in privity with Apple as those terms are used in § 315(b)." *Id.* The Board further explained that there was no evidence that any of the time-barred parties had the right to intervene or control Apple's defense to any charge of patent infringement, and concluded that none of the time-barred parties were real parties in interest or privies of Apple. *Id.* Thus, based on its assessment of the Section 315(b) time-bar, the Board instituted an *inter partes* review of the challenged patents. *Id.* During the merits phase, Achates reasserted its theory that Apple's petitions were time-barred under § 315(b), and in its final written decisions, the Board reaffirmed its earlier decisions that Apple had timely filed its petitions. *Id.* On appeal, Achates challenged the Board's final written decisions, arguing that the Board erred in denying its motions for additional discovery and in concluding that Apple's petitions were not time-barred under § 315(b). *Id.*

The Court held that the language of Section 314(d) is clear and controlling: "35 U.S.C. § 314(d) prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of § 315(b)." *Id.* at 658. Nor is there any exception for a claim that the Board's Section 315(b)

determination rendered its actions *ultra vires*, as such "statutory interpretation disputes fall outside this [*ultra vires*] exception." *Id.* at 658-59.

Wi-Fi One contends that *Achates* was wrongly decided and should not apply in this case. Br. 20-31. Wi-Fi One omits any discussion of stare decisis, but there can be no doubt that this Court may not disregard its own precedent. *See, e.g.*, *Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) ("A prior precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en banc*."); *see also* Fed. Cir. R. 35(a)(1) ("[O]nly the court *en banc* may overrule a binding precedent."). In the absence of *en banc* review or an intervening decision by the Supreme Court,[13] the Court may not overturn *In re Cuozzo*, *Achates*, and the numerous subsequent cases affirming that Section 314(d) prohibits this Court from reviewing the Boards' institution decisions. *See, e.g.*, *SightSound Techs., LLC v. Apple Inc.*, No. 2015-1159, __ F.3d __, 2015 WL 8770164, at *3 (Fed. Cir. Dec. 15, 2015); *MCM Portfolio LLC v. Hewlett-Packard Co.*, No. 2015-1091, __ F.3d __, 2015 WL 7755665, at *3 (Fed. Cir. Dec. 2, 2015); *Click-to-Call Techs., LP v. Oracle Corp.*, 622 F. App'x 907, 908 (Fed. Cir. 2015). As set forth below,

---

[13] The Supreme Court recently granted a writ of certiorari to consider whether the Board's decision to institute an *inter partes* review is subject to judicial review in cases where the patent holder contends that the Board exceeded its statutory authority. *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446 (U.S. Jan. 15, 2016).

however, even if the Court were to consider Wi-Fi One's arguments, they are all without merit.

*First*, Wi-Fi One contends that the Court erred in interpreting Section 314(d) to preclude judicial review of decisions whether to institute *inter partes* review. Br. 23-27. According to Wi-Fi One, Section 314(d) should be construed to preclude only interlocutory appeals and not to preclude review of the institution decision following a final written decision. Br. 24-25. That is plainly incorrect. Section 314(d) is titled "No appeal" and states that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d). This language unambiguously precludes all review of the Board's decision whether to institute an *inter partes* review. That plain meaning is further confirmed by reading Section 314(d) in the context of the related provisions of the America Invents Act directed to *inter partes* reviews, which separately limit appeals to final written decisions. As this Court has explained:

> A declaration that the decision to institute is 'final' cannot reasonably be interpreted as postponing review until after issuance of a final decision on patentability. Moreover, given that § 319 and § 141(c) already limit appeals to appeals from final decisions, § 314(d) would have been unnecessary to preclude non-final review of institution decisions. Because § 314(d) is unnecessary to limit interlocutory appeals, it must be read to bar review of all institution decisions, even after the Board issues a final decision.

*Cuozzo*, 793 F.3d at 1273.[14]

**Second**, Wi-Fi One contends that, notwithstanding the clear language of Section 314(d), this Court has jurisdiction to review Section 315(b) determinations because Section 315(b) is a "congressional directive."  Br. 27-30.  According to Wi-Fi One, the Board's determination that a petition was timely filed is equivalent to the Board's determination that a patent qualifies for "covered business method review," which this Court held to be reviewable on appeal.  Br. 22-23; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1319-21 (Fed. Cir. 2015).  Once again, Wi-Fi One raises an argument that this Court has considered and properly rejected.  As the Court explained in *Achates*, whether a patent qualifies as a "covered business method" is the "defining characteristic" of the Board's "authority to invalidate" a patent in a covered business method review.  *Achates*, 803 F.3d at 657-58 (quoting *Versata*, 793 F.3d at 1320-21).  By contrast, Section

---

[14] For these same reasons, Wi-Fi One's reliance on cases interpreting the Civil Service Retirement Act is misplaced.  *See* Br. 25-26; *cf. Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768 (1985); *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009).  The Supreme Court in *Lindahl* properly focused its analysis on the specific statutory provision at issue (which the Court held "quite naturally can be read as precluding review only of OPM's factual determinations") as well as the "overall statutory structure" and legislative history (which the Court held "quite clearly" indicated that Congress intended there to be some judicial review of decisions made pursuant to the Civil Service Retirement Act).  *Lindahl*, 470 U.S. at 779, 789; *see also Reilly*, 571 F.3d at 1377 (discussing *Lindahl*).  Those narrowly circumscribed decisions are irrelevant to this Court's correct interpretation of Section 314(d) and Section 315(b) of the America Invents Act.

315(b) has no impact on the Board's ultimate authority to invalidate a patent claim, it merely bars particular petitioners from challenging the claim. *Id.* In other words, the Board *always* has the power to invalidate a claim challenged in a time-barred petition via a timely petition from another petitioner, even if that petition raised the exact same arguments as the time-barred petition. *Id.*

Wi-Fi One contends that the Court erred in *Achates* by distinguishing the "jurisdictional" issue in *Versata* from the "non-jurisdictional" nature of Section 315(b) determinations. Br. 27-30. In particular, Wi-Fi One argues that *City of Arlington v. FCC*, 133 S. Ct. 1863 (2013), prohibits this Court from making such distinctions. *Id.* But, while *City of Arlington* notes that it is inappropriate to characterize statutory provisions as "jurisdictional" or "non-jurisdictional" when determining if an agency's statutory interpretations are entitled to *Chevron* deference, 133 S. Ct. at 1868, the Supreme Court has also explained that a time-bar governing an agency's authority to act is either "non-jurisdictional" (and thus may be waived) or "jurisdictional" (and thus is non-waivable). *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824-25 (2013). The Court held, moreover, that there is a presumption that agency time-bars are non-jurisdictional and that such a presumption may be overcome only by a "clear statement" to the contrary. *Id.* Section 315 lacks any such "clear statement," and thus it is plainly not a limit on

the Board's ultimate authority to invalidate particular patent claims—which the Board could indisputably do upon consideration of a non-time-barred petition.

*Finally*, Wi-Fi One contends that *Achates* does not govern the present case because the Board did not make an explicit determination regarding Section 315(b) in its Decision on Institution. Br. 24 n. 5. That is not correct, as *Achates* makes clear. Any challenge under Section 315(b) is a claim that the Board erred in deciding to institute an *inter partes* review. Indeed, as Wi-Fi One concedes elsewhere, the Board's Section 315(b) determination "goes to the heart of whether the IPR petition was time-barred when it was filed." Br. 36. And as this Court explained, regardless of when (or how many times) the Board considers whether a petition is time-barred, that determination is always "part of the decision to institute" and thus may not be challenged on appeal. *Achates*, 803 F.3d at 658.

> **B.    Although Not Reviewable, The Board Correctly Determined That Broadcom's Petition Was Not Time-Barred.**
>
> **1.    The Board properly applied Section 315(b) to determine that Broadcom's petition was timely filed.**

The Board considered and rejected Wi-Fi One's contention that Broadcom's petition was time-barred because the Texas Defendants were real parties in interest or in privity with Broadcom. A8-9; A272-74; *see also* A80-85; A102-06. Wi-Fi One contends the Board "applied the wrong legal standard in making its § 315(b) determination." Br. 31-35. In particular, Wi-Fi One argues that the Board erred by

focusing exclusively on whether Broadcom controlled the Texas Defendants in the Texas litigation, and by not considering whether the Texas Defendants controlled Broadcom in the *inter partes* review. *Id.* Wi-Fi One's theory is starkly contradicted by the record.

Wi-Fi One alleges error based solely on the fact that the Board explained—correctly—that Wi-Fi One had failed to show that Broadcom controlled, or could have controlled, the Texas litigation. Br. 34. In the passages cited by Wi-Fi One, *id.*, the Board was responding directly to Wi-Fi One's (baseless) contention that Broadcom had the ability to exercise control over the Texas Defendants. *See* A50 ("Here, evidence will prove that ***Broadcom has had the opportunity to control*** and maintains a substantive legal relationship with the D-Link Defendants sufficient to bind Broadcom to the District Court's judgment."); *see also* A81-89.[15] After the Board issued its Final Written Decision, Wi-Fi One reversed its position and asserted a new theory that the Texas Defendants were controlling Broadcom. A259-61. Far from Wi-Fi One's claim that "[t]he Board made it abundantly clear that it viewed the District Court Defendants' right to control this IPR to be of no

---

[15] Notably, while Wi-Fi One contended that Broadcom engaged in litigation and *inter partes* reviews "on behalf of its customers pursuant to its indemnity obligations," it made clear that it was ***not*** contending that any indemnity agreement subjected Broadcom to the control of its customers, but rather that Broadcom was independently seeking "to protect [its own] interests," A45, and following its own "corporate policy on litigation on behalf of its customers." A50.

importance whatsoever," Br. 34, the Board explained that whether a non-party (such as the Texas Defendants) could exercise control over a party (such as Broadcom) is a relevant factor in its privity analysis. A273-74. The Board simply rejected Wi-Fi One's new theory of privity because it was as baseless as Wi-Fi One's original theory. *Id.*

### 2. The Texas Defendants are not real parties in interest or in privity with Broadcom.

Even setting aside Wi-Fi One's shifting sands approach below, the record amply demonstrates that the Texas Defendants are not real parties in interest or in privity with Broadcom. Wi-Fi One's additional arguments—that the Board abused its discretion in denying Wi-Fi One's request for additional discovery (Br. 35-38), that the Board did not adequately set forth the reasons for its decision (Br. 38-39), and that the Board's determination is not supported by substantial evidence (Br. 40-41)—are contradicted by the record and plainly fail to support Wi-Fi One's claim that the Board erred in instituting an *inter partes* review.

Wi-Fi One's principal argument is that the Board abused its discretion by not compelling the production of certain indemnity agreements between Broadcom and two Texas Defendants. *See* Br. 35-38.[16] The Board, however, properly found that Wi-Fi One's motion was based on nothing more than "conjecture" and "mere

---

[16] Although Wi-Fi One bases its arguments on these indemnity agreements, it sought to propound far broader discovery requests upon Broadcom below. *See* A1212-16.

- 44 -

speculation," and therefore failed to meet its burden of proving that additional discovery would be "in the interests of justice."  A86-90; *see also* 35 U.S.C. § 316(a)(5) ("[D]iscovery shall be limited to … what is otherwise necessary in the interest of justice."); 37 C.F.R. § 42.51(b)(2)(i) ("The moving party must show that such additional discovery is in the interests of justice.").  The existence of indemnity provisions is not, as Wi-Fi One suggests, sufficient to establish that the Texas Defendants are real parties in interest or in privity with Broadcom.  *See Apple Inc. v. Achates Reference Publ'g, Inc.,* IPR2013-00080, 2013 WL 6514049, at *3 (PTAB Apr. 3, 2013) ("*Apple*") ("Indemnification is not one of the 'substantive legal relationships' cited in *Taylor* [*v. Sturgell*, 553 U.S. 880 (2008)] and is significantly different from those relationships, which involve successive interests in property.").[17]  Rather, the Board properly evaluates whether a non-party is a real party in interest or privy under "conventional principles of estoppel and preclusion," *id.* at *2, and conducts that evaluation "in a manner consistent with the flexible and equitable considerations established under federal caselaw." 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012); *see also id.* at 48,759-48,760 (relevant factors for determining whether a non-party is a real party in interest or

---

[17] In *Taylor v. Sturgell*, the Supreme Court held that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment…. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." 553 U.S. 880, 894 (2008).

privy include whether the non-party funded or directed the proceedings or "exercised or could have exercised control over a party's participation in a proceeding"). The Board correctly applied these standards in rejecting Wi-Fi One's motion for additional discovery. A79-86.

In addition to its assertions regarding Broadcom's purported indemnity obligations, Wi-Fi One based its request for additional discovery on three exhibits. These documents further demonstrate that Wi-Fi One's privity allegations are groundless and that Wi-Fi One failed to meet its burden of proving that additional discovery would be "in the interests of justice." A90. First, Wi-Fi One relied on a general risk statement in Broadcom's SEC filings discussing the risks for Broadcom of patent litigation brought against its customers. A45; A1418. Second, Wi-Fi One relied on an email chain between Acer and Wi-Fi One that refers to "technical discussion with the chipset suppliers" and "comments from Acer's vendors, including Intel, Broadcom and Atheros." A46; A1452-54. Providing technical information to a customer does not remotely establish "control" or "privity." ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████. A46; A1462-98. █████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.  As the Board correctly found, none of this shows privity

between Broadcom and any other entity.  A84-90.[18]

The Board also considered a sworn declaration from Broadcom that directly

refutes Wi-Fi One's claims that Broadcom exerted control over the Texas

litigation.[19]  That declaration establishes that:  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

---

[18] Wi-Fi One contends that the Board's reasoning was "circular" because it denied Wi-Fi One's motion based on its failure to present adequate supporting evidence. Br. 36.  But as noted above, the Board properly recognized that Wi-Fi One's "conjecture" and "mere speculation" were insufficient to meet its burden of demonstrating that additional discovery would be "in the interest of justice."  A79-80; A86-87.

[19] *See* A90 (denying motion "[a]fter weighing … the redacted information and arguments presented by [Wi-Fi One] and Broadcom that remain under seal").  The Board did not detail Broadcom's confidential evidence in its decision because it determined that Wi-Fi One's motion should be denied with or without that evidence.  *See* A79 n.3 ("After review of the un-redacted materials, the Board determines that they do not alter the outcome.").

███████████████████████████████████████████████████. *See*

A868-69.[20]

The Board carefully considered all of Wi-Fi One's allegations and rightly

concluded that they do not justify additional discovery, *see* A84-90,[21] and properly

held that Broadcom's petition for *inter partes* review was not time-barred under

Section 315(b). A8-9; A272-76.[22] Because the record amply supports the

conclusion that the Texas Defendants are not real parties in interest or in privity

---

[20] Wi-Fi One asserts that Broadcom's declaration was "carefully worded to focus narrowly and exclusively on Broadcom's ties to the District Court Litigation, and to avoid any mention of the District Court Defendants' role in directing or controlling this IPR." Br. 40. As discussed above, Broadcom submitted this declaration in response to Wi-Fi One's claim that Broadcom could control the Texas Defendants; it was not until Wi-Fi One's petition for rehearing of the Final Written Decision that Wi-Fi One reversed course and asserted that the Texas Defendants controlled Broadcom. Broadcom had no opportunity to respond to Wi-Fi One's new, equally meritless accusations, as the Board properly found that Wi-Fi One's second theory was as groundless as its first. A272-74.

[21] Although Wi-Fi One contends that the Board's denial of its requested discovery violated Section 556 of the Administrative Procedure Act, Br. 37, Wi-Fi One concedes that the Board has discretion to manage discovery, Br. 36, and further concedes that Section 556 "does not command that agencies admit all relevant evidence." Br. 38 (quoting *Director, Office of Workers' Compensation Programs v. Mangifest*, 826 F.2d 1319, 1331 (3d Cir. 1987)). As set forth above, the Board properly exercised its discretion to deny Wi-Fi One's discovery requests.

[22] Wi-Fi One contends that the Board "never expressly decided the § 315(b) issue" because its Final Written Decision incorporated by reference its earlier analysis set forth in its denial of Wi-Fi One's request for additional discovery. Br. 39. The Board's multiple decisions on this point could not be more clear—in sections titled "35 U.S.C. § 315(b)" the Board held that there was no evidence that the Texas Defendants were real parties in interest or in privity with Broadcom and therefore Broadcom's petition was not time-barred. *See* A8-9; A272-76.

with Broadcom, Wi-Fi One has shown no error with the Board's determination that Broadcom's petition for *inter partes* review was timely filed.

### C.    Wi-Fi One Has Identified No Basis For This Court To Invoke The Extraordinary Remedy Of Mandamus.

Wi-Fi One requests, in the alternative, that this Court treat its appeal as a petition for mandamus relief. Br. 30-31, 41-44. "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *see also In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996); *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). A party seeking a writ bears the burden of proving that its right to issuance of the writ is "clear and indisputable." *Allied Chem.*, 449 U.S. at 35.

To show a "clear and indisputable" right, the petitioner must prove that the lower court's analysis amounted to a "clear abuse of discretion." *In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (mandamus requires a "patently erroneous result"). Indeed, even if one demonstrates a "clear and indisputable" right to the writ, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004).

As set forth above, the Board correctly determined that Broadcom's petition was not time-barred under Section 315(b). Wi-Fi One has no "clear and

- 49 -

indisputable" right to relief, and therefore its alternative request for a writ of mandamus should be denied.

## CONCLUSION

The Board's decision should be affirmed.

Respectfully submitted,

/s/ Dominic E. Massa

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
ZACHARY P. PICCOLOMINI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

January 25, 2016

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of January, 2016 I filed the foregoing

Brief for Appellee Broadcom Corporation with the Clerk of the United States

Court of Appeals for the Federal Circuit via the CM/ECF system, which will send

notice of such filing to all registered CM/ECF users.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(b).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 11,467 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

January 25, 2016