**No. 2015-1944**

IN THE

# UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee.*

*Appeal from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board in Case No. IPR2013-00601*

## REPLY BRIEF OF APPELLANT
## WI-FI ONE, LLC

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
(214) 978-4972

Peter J. Ayers
LEE & HAYES PLLC
11501 Alterra Parkway
Suite 450
Austin, TX 78758
(512) 605-0252

*Attorneys for Appellant Wi-Fi One, LLC*

## CERTIFICATE OF INTEREST

Counsel for the Appellant, Wi-Fi One, LLC, certifies the following:

1.      The full name of every party or amicus represented by me is:

**Wi-Fi One, LLC**

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Wi-Fi One, LLC**

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Wi-Fi One, LLC is 100% owned by Optis Wi-Fi Holdings, LLC.**

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**LEE & HAYES, PLLC**
Peter Ayers
J. Christopher Lynch
John Shumaker

**NELSON BUMGARDNER, P.C.**
Donald Puckett

**SKIERMONT DERBY LLP (formerly SKIERMONT PUCKETT LLP)**
Steven Joseph Udick
Sarah E. Spires

i

**MCKOOL SMITH, P.C.**
Douglas A. Cawley

Dated:  February 29, 2016          Respectfully submitted,


                                   /s/ Donald Puckett
                                   G. Donald Puckett
                                   NELSON BUMGARDNER PC
                                   3131 West 7th Street, Suite 300
                                   Fort Worth, Texas 76107
                                   (817) 377-9111 (telephone)
                                   (817) 377-3485  (facsimile)
                                   puckett@nelbum.com

                                   Douglas A. Cawley
                                   MCKOOL SMITH, P.C.
                                   300 Crescent Court, Suite 1500
                                   Dallas, TX 75201
                                   (214) 978-4972 (telephone)
                                   (214) 978-4044 (facsimile)
                                   dcawley@mckoolsmith.com

                                   Peter J. Ayers
                                   LEE & HAYES PLLC
                                   11501 Alterra Parkway, Suite 450
                                   Austin, TX 78758
                                   (512) 605-0252 (telephone)
                                   (512) 605-0252 (facsimile)
                                   peter@leehayes.com

                                   *Attorneys for Appellant,*
                                   *Wi-Fi One, LLC*

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...............................................................1

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ....................................................................v

I.    SUMMARY OF REPLY...................................................................1

II.   ARGUMENT IN REPLY..................................................................2

   A.    The Court is not precluded from reviewing the PTAB's
         decision on the §315(b) time bar issue..................................2

         1.    This case is factually distinguishable from *Achates*. ...................2

               a.    Unlike *Achates*, the PTAB panel below did not
                     review the most relevant evidence on the §315(b) issue......2

               b.    Unlike *Achates*, the PTAB panel below did not render a
                     reasoned written decision on the §315(b) issue. ..................6

         2.    *Achates* is not binding if this Panel determines that
               *Achates* did not consider the relevant binding Supreme
               Court authorities.......................................................................9

         3.    The *Achates* decision was wrongly decided. Section
               314(d) does not bar all appellate review of the PTAB's
               determinations regarding the §315(b) time bar. .......................13

         4.    At a minimum, this Panel should request en banc
               reconsideration of *Achates*, or wait for the Supreme
               Court's decision in *Cuozzo*. .......................................................14

B.     The PTAB's decision on the §315(b) time bar issue should be vacated or reversed. ............................................................................16

     1.     The Board committed a critical legal error by applying the wrong substantive legal standards. .....................................16

     2.     The Board committed serious procedural errors. .....................19

     3.     Patent Owner is entitled to appellate relief on the §315(b) time bar issue. ....................................................................19

C.     The Board erred in determining that the '215 patent claims are unpatentable. ..................................................................................20

     1.     The Board erred in construing the term "type identifier field" by neglecting to differentiate between different message types. ...........................................................................20

     2.     Seo does not anticipate the challenged claims. .........................22

     3.     Seo does not teach or suggest a "message field including a type identifier field." ..............................................................25

     4.     Claim 15 is valid over Seo. .....................................................27

CONCLUSION ......................................................................................................29

CERTIFICATE OF SERVICE ..............................................................................30

CERTIFICATE OF COMPLIANCE ......................................................................32

iv

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. Inc. v. Gardner,*
387 U.S. 136 (1967)......................................................................................11

*Achates Ref. Publ., Inc. v. Apple, Inc.,*
803 F.3d 652 (Fed. Cir. 2015) ............................................................ passim

*Anhydrides & Chems., Inc. v. United States*
130 F.3d 1481 (Fed. Cir. 1987) ..................................................................28

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
809 F.3d 1282 (Fed. Cir. 2015) ...................................................................9

*Atar S.r.l. v. United States,*
730 F.3d 1320 (Fed. Cir. 2013) ....................................................................7

*Atlantic Thermoplastics, Inc. v. Faytex Corp.,*
970 F.2d 834 (Fed. Cir. 1992) ......................................................... 9, 10, 15

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns. Group, Inc.,*
262 F.3d 1258 (Fed. Cir. 2001) ..................................................................24

*City of Arlington v. FCC,*
133 S.Ct. 1863 (2013)..................................................................................12

*Cuozzo Speed Techs. v. Lee,*
2016 U.S. LEXIS 632 (U.S. Jan. 15, 2016)............................... 13, 14, 15, 22

*Cutsforth, Inc. v. MotivePower, Inc.,*
2016 U.S. App. LEXIS 1083 (Fed. Cir. 2016)...............................................7

*In re Cuozzo Speed Techs., LLC,*
793 F.3d 1268 (Fed. Cir. 2015) ........................................................... 13, 22

*In re Sang-Su Lee,*
277 F.3d 1338 (Fed. Cir. 2002) ....................................................................7

*Intel Corp. v. U.S. Int'l Trade Comm'n,*
    946 F.2d 821 (Fed. Cir. 1991) ...........................................................................3

*Mach Mining, LLC v. EEOC,*
    135 S.Ct. 1645 (2015)....................................................................................12

*Mercier v. U.S.,*
    786 F.3d 971 (Fed. Cir. 2015) ......................................................................11

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ....................................................................21

*PPC Broadband, Inc. v. Corning Optical Commc'ns. RF, LLC,*
    No. 2015-1364 (Fed. Cir. Feb. 22, 2016) .....................................................22

*Reilly v. Office of Personnel Mgmt.,*
    571 F.3d 1372 (Fed. Cir. 2009) ....................................................................16

*Smith v. GTE Corp.,*
    236 F.3d 1292 (11th Cir. 2001) ....................................................................10

*Synopsys, Inc. v. Mentor Graphics Corp.,*
    2016 U.S. App. LEXIS 2250 (Fed. Cir. 2016) ..............................................14

*Tohono O'odham Nation v. U.S.,*
    559 F.3d 1284 (Fed. Cir. 2009) ....................................................................10

*Tucker v. Phyfer,*
    819 F.2d 1030 (11th Cir. 1987) ...................................................... 9, 10, 11

**Statutes**

5 U.S.C. §556(d) ................................................................................... 5, 19

5 U.S.C. §556(e) ................................................................................... 5, 19

35 U.S.C. §314(d) ................................................................... 1, 2, 8, 11-16

35 U.S.C. §315(b) ............................................................................... passim

**Rules**

Fed. Cir. R 35(a)(1) ............................................................................15

## I.    SUMMARY OF REPLY

Broadcom's responsive brief provides no coherent justification for the PTAB below having refused to even consider the known indemnity agreement in connection with its determination that the District Court Defendants are not a real party in interest or privy of Broadcom, and that the 35 U.S.C. §315(b) time bar does not apply. The Board's §315(b) determination should be reversed because the Board applied the wrong legal standard on this issue, and also because the Board's actions amounted to a serious procedural error. The Federal Circuit is not precluded from reviewing the §315(b) determination by 35 U.S.C. §314(d). The recent *Achates* decision is factually distinguishable. Wi-Fi One also encourages the Panel to revisit the holding of *Achates* because that case did not consider the relevant binding Supreme Court authorities and was wrongly decided.

In addition, the Board's decision below should be overturned because several of the Board's findings are not supported by substantial evidence. First, the Board erroneously construed the term "type identifier field" by ignoring the clear import of the specification, namely, that such a field must differentiate from among a number of different message types. Second, the Board misapplied its erroneous construction to Seo. Specifically, Seo discloses a single message type having fields for both a bitmap and a First / Last message and cannot distinguish from among a

1

number of message types. Finally, the Board erroneously interpreted claim 15 by neglecting that the claim requires a "length field," which Seo does not disclose. Accordingly, the Board's finding that Seo anticipates the challenged claims should be reversed.

## II.   ARGUMENT IN REPLY

### A.   The Court is not precluded from reviewing the PTAB's decision on the §315(b) time bar issue.

Contrary to Broadcom's contention, the panel decision in *Achates Ref. Publ., Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) does not preclude this Panel from reviewing the Board's §315(b) determination below. This is true for at least two reasons. First, the present case is factually distinguishable from *Achates* in material ways, as discussed below. Second, the *Achates* decision itself may be revisited by this Panel because the *Achates* panel did not consider the most relevant binding Supreme Court precedents. For the reasons discussed below, this Court retains authority to review the Board's §315(b) determination, notwithstanding *Achates* and notwithstanding 35 U.S.C. §314(d).

#### 1.   This case is factually distinguishable from *Achates*.

##### a.   Unlike *Achates*, the PTAB panel below did not review the most relevant evidence on the §315(b) issue.

An indemnity agreement between an IPR petitioner and a third party that covers infringement claims arising from the challenged patent is always highly

2

relevant to the "real party-in-interest or privy" issue under §315(b). In all likelihood, an indemnity agreement is the most relevant evidence. *See* Op. Br. at 36-37.[1] Broadcom does not dispute this point, nor could it. The Federal Circuit has held that the existence of an indemnity agreement alone, in many cases, is sufficient for a finding of a privity relationship. *See, e.g., Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991).

Unlike the present case, in *Achates* the PTAB panel had full knowledge of the alleged terms of the alleged indemnity agreement because it reviewed an unsigned draft of the agreement. *See Achates*, 803 F.3d at 654. In that case, the PTAB denied further discovery and found that the §315(b) time bar did not apply because *even if* the draft indemnity agreement had been signed, the terms of the draft agreement were not sufficient (in the PTAB's view) to create a privity relationship between the relevant parties. *See id*. Thus, in *Achates*, the disputed issue was whether an alleged indemnity agreement had been signed at all. The Board, for purposes of its decision, essentially assumed that the agreement had been signed and found that even if it were signed it still did not establish a privity relationship on the facts of that case. *Id*. Unlike the present case, there was no

---

[1] Citations to "Op. Br." refer to Wi-Fi One's Opening Brief, and citations to "Resp. Br." refer to Broadcom's Responsive Brief.

dispute or uncertainty in *Achates* over the terms of the alleged indemnity agreement. *See id.*

In the present case, by contrast, there is no dispute that there is in fact a binding indemnity agreement between Broadcom and one or more of the District Court Defendants that covers infringement claims arising from the patent challenged below. But here (unlike *Achates*) the Board below ***has no idea what the terms of the indemnity agreement are***. Despite the diligent best efforts of Patent Owner, the Board would not allow the indemnity agreement to be made part of the record. In this case, the PTAB cannot claim to have made an informed decision on the §315(b) issue because the PTAB wholly failed to consider the most relevant piece of evidence. *See* Op. Br. at 35-38.

It is quite perplexing to consider the very substantial time and effort that the parties have expended in this case battling over whether the Board would simply take the indemnity agreement into evidence and consider it. *See* Op. Br. at 8-9 (discussing Patent Owner's procedural attempts to force Broadcom to produce the agreement for purposes of this IPR). The agreement is a short document that was produced to Patent Owner's counsel in litigation – albeit under a protective order that precludes Patent Owner from using it in the IPR proceeding below. *See* A1628-31. It simply defies logic and reason that the Board below has been so

steadfastly adamant in its refusal to consider it, or to make it a part of the record that the Federal Circuit can review on appeal.

This important factual distinction from *Achates* – the fact that the Board below failed to consider the critical indemnity agreement and had no understanding of its terms – is significant to the outcome of this appeal. Unlike the patent owner in *Achates*, Patent Owner in this appeal can show that the Board committed serious procedural violations. *See* Op. Br. at 30-31 (discussing the Federal Circuit's authority to review for serious procedural violations); Op. Br. at 35-38 (discussing the ways in which the PTAB's actions in this case amount to serious procedural violations).

In its Response Brief, Broadcom ***never addresses*** Patent Owner's contention that the PTAB's refusal to consider the highly-relevant indemnity agreement amounts to a serious procedural error. *See* Op. Br. at 36-38 (arguing that the PTAB violated §§556(d) and (e) of the Administrative Procedures Act and citing cases). Broadcom's brief simply attempts to justify the PTAB's ***discovery*** ruling, i.e., its refusal to compel Broadcom to produce the indemnity agreement. *See* Resp. Br. at 44-49 (discussing alleged justifications for the PTAB's discovery ruling). But this misunderstands Patent Owner's argument, and avoids the salient legal issues. As stated in Patent Owner's Opening Brief:

5

> Patent Owner's point of error, however, is ***more than just a complaint that the Board misapplied the standards for deciding a discovery motion***. The Board's error here is more fundamental. The requested discovery goes to the heart of whether the IPR petition was time barred when it was filed, and thus goes to whether the Board itself has complied with the statutory directive under §315(b). To arrive at the factually correct ruling, the Board by necessity must look at the known indemnity agreements.

Op. Br. at 36 (emphasis added). By limiting its argument to the merits of the discovery motion, Broadcom fails to address Patent Owner's real point of error – that the PTAB committed serious procedural error by failing to consider known, highly-relevant evidence, and also by denying Patent Owner the opportunity to present contrary evidence. *See* Op. Br. at 36-38.

### b.   Unlike *Achates*, the PTAB panel below did not render a reasoned written decision on the §315(b) issue.

This case also is factually distinct from *Achates* because the Board below failed to provide a reasoned explanation for its decision on the §315(b) issue. *See* Op. Br. at 24 fn. 5 and 38-41. In *Achates*, the PTAB first decided a discovery motion related §315(b), then later made a substantive determination in its institution decision, and then again revisited its substantive §315(b) issue in its final written decision. *See Achates*, 803 F.3d at 654.   In both the institution decision and the final written decision, the PTAB in *Achates* set forth a reasoned

6

written decision applying the law to the facts and explaining the substantive basis for its determination. *See id.*

In this case, by contrast, the PTAB never made a substantive determination of the §315(b) issue at all. It only decided Patent Owner's discovery motion – applying procedural standards relating to discovery – before Patent Owner had even fully briefed the substantive §315(b) issue.   The PTAB's subsequent institution decision and final written decision merely incorporated by reference the Board's reasoning on the ***discovery motion***, without providing a reasoned basis for its ultimate ***substantive*** determination that the §315(b) time bar does not apply in this case. *See* Op. Br. at 38-41.

The Federal Circuit recently reaffirmed the important principal that the PTAB has an obligation to articulate its reasoning for making its decisions, stating:

> As we held in *In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002), the Board must articulate its reasoning for making its decision. The Board must develop and explain the basis for its findings. This enables the reviewing court to conduct meaningful review of the proceedings. Broad, conclusory statements are not enough to satisfy the Board's obligation to provide reasoned explanation for its decision.

*Cutsforth, Inc. v. MotivePower, Inc.*, 2016 U.S. App. LEXIS 1083 at *7 (Fed. Cir. 2016).  *See also Atar S.r.l. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013).

Here, the Board committed serious procedural errors by failing to provide a reasoned decision articulating the basis for its own jurisdiction and its compliance

7

with a statutory directive; and also by failing to explain a clearly articulated statement of reasons for departing from its actions in other similar cases. *See* Op. Br. at 38-39 (citing cases). Broadcom essentially concedes these points, because Broadcom cannot (and does not attempt to) point to any portion of the Board's institution decision or final written decision that sets forth a reasoned basis for finding that the Board complied with §315(b). Instead, Broadcom merely argues: (1) that this court is precluded from reviewing the sufficiency or the Boards' reasoning in its §315(b) decision (Resp. Br. at 42) and (2) that the Board's conclusory statements in the institution decision and final written decision, incorporating the discovery order by reference, are sufficient (Resp. Br. at 48 fn. 22). Broadcom never addresses Patent Owner's real argument – that the Board abrogated its responsibility to provide a reasoned statement of its decision on the §315(b) issue when it merely incorporated, by reference, its finding that Patent Owner had not shown that it was entitled to additional discovery on the issue.

These factual distinctions from *Achates* are significant to the outcome of this appeal because they amount to serious procedural errors that are reviewable by this Court, notwithstanding the language of §314(d). *See* Op. Br. at 38-42.

**2.** ***Achates*** **is not binding if this Panel determines that** ***Achates*** **did not consider the relevant binding Supreme Court authorities.**

Even if this Panel finds that this case is not factually distinct from *Achates*, the Panel is not required to blindly follow the *Achates* decision, because the *Achates* panel itself did not consider the relevant Supreme Court authorities. If *Achates* had considered the relevant Supreme Court cases, and adopted a certain interpretation of those cases, then its holding would be binding precedent on this Panel under the "prior panel precedent rule." But where the prior panel did not consider the relevant Supreme Court precedents, a subsequent panel is allowed to revisit the issues presented in light of the binding Supreme Court authority. *See Atlantic Thermoplastics, Inc. v. Faytex Corp.*, 970 F.2d 834, 839 fn.2 (Fed. Cir. 1992). *See also Tucker v. Phyfer*, 819 F.2d 1030, 1035 fn. 7 (11th Cir. 1987).

The Federal Circuit, of course, has no authority to modify or ignore binding precedent from the United States Supreme Court. "Supreme Court decisions remain binding precedent until [the Court] sees fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 809 F.3d 1282 at fn. 3 (Fed. Cir. 2015). In such circumstances, the Federal Circuit has expressly recognized an exception to the prior panel precedent rule. *See Atlantic Thermoplastics*, 970 F.2d at 839 fn. 2

("A decision that fails to consider Supreme Court precedent does not control if the court determines that the prior panel would have reached a different conclusion if it had considered controlling precedent.").

In *Atlantic Thermoplastics*, the Federal Circuit cited the Eleventh Circuit decision *Tucker v. Phyfer*, 819 F.2d at 1035 fn. 7, which further explained this exception to the prior panel precedent rule:

> The [prior] panel decided the case **without any reference to the Supreme Court's previous holdings** in *Lyons* and *Geraghty*. Our prior panel rule, which makes decisions of prior panels of this court binding on subsequent panels of the court . . . , if applied here, would require us to follow [the prior panel's] rationale. We decline to do so, however, for we are convinced that had *Lyons* and *Geraghty* been called to the attention of the [prior] panel, the panel would have come to the conclusion we reach today. In affirming the district court, we do not view ourselves as violating the prior panel rule; rather, we are simply **discharging our duty to follow clearly controlling Supreme Court precedent**. We hasten to add that had the panel expressly considered *Lyons* and *Geraghty*, we would be bound by its interpretation and application of those decisions.

*Id.* (emphasis added).[2] *See also Tohono O'odham Nation v. U.S.*, 559 F.3d 1284, 1287-88 (Fed. Cir. 2009) (citing *Tucker* for the proposition that a prior panel

---

[2] A subsequent panel of the Eleventh Circuit criticized the *Tucker* exception to the prior panel precedent rule and attempted to collect contrary authority. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1302-03 (11th Cir. 2001). In doing so, however, the *Smith* panel cited no other case in which the prior panel had completely failed to consider the relevant Supreme Court authority. *See id.* The *Smith* panel rejected the notion of a broader "overlooked reason" exception. *Id.* at 1303. In any event, as

10

decision is binding only where it considered the applicable Supreme Court authorities); *Mercier v. U.S.*, 786 F.3d 971, 981 (Fed. Cir. 2015) ("***In the absence of authority from the Supreme Court***, this Court could only overrule [a prior panel precedent] were we to sit en banc") (emphasis added).

As discussed in Patent Owner's Opening Brief, the *Achates* panel did not properly frame the legal issue, and as a result it failed to consider the most relevant Supreme Court authorities. *See* Op. Br. at 20-21, 29-30. Under the relevant Supreme Court cases, in determining whether a statute precludes judicial review the court must start with the strong presumption that judicial review is available, and must then determine whether the specific statute at issue sufficiently evidences a clear congressional intent to overcome the presumption of reviewability. *See* Op. Br. at 21-23 (discussing the relevant authority). The *Achates* panel, however, never once mentioned the strong presumption of reviewability, and it did not consider whether §314(d) or its corresponding legislative history are sufficient to overcome this presumption. Thus, the *Achates* decision never considered *Abbott Labs. Inc. v. Gardner*, 387 U.S. 136 (1967) (Administrative Procedure Act evidences a strong congressional presumption in favor of judicial review of administrative action),

---

stated in the *Tucker* case itself, the *Tucker* exception is properly limited to circumstances in which the prior panel altogether failed to consider relevant Supreme Court authorities.

11

*Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645 (2015) (reaffirming the presumption), or similar cases. Nor did the *Achates* decision consider *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), or the cases collected in footnote 3 of *Bowen*, in which the Supreme Court has refused to read statutory limitations on reviewability as a complete bar to appellate review.

In *Achates*, the Court's decision to treat §314(d) as a complete bar to judicial review of the §315(b) time bar was premised upon a finding that the time bar was non-jurisdictional. *See Achates*, 803 F.3d at 657-58. Yet, the *Achates* opinion does not cite or consider the Supreme Court holding in *City of Arlington v. FCC*, 133 S.Ct. 1863 (2013), in which the Court rejected the very notion of any distinction between jurisdictional and non-jurisdictional statutory limits on agency power, and instructed lower courts to abandon any such distinction. *See id.* at 1868-71.

As can be seen, the *Achates* court did not consider the relevant and binding Supreme Court authorities on point. For this reason, this Panel may reconsider the holding in *Achates* that §314(d) precludes review of the Board's determinations under §315(b). This Panel can, and should, consider the applicable and binding Supreme Court authority and make its own determination as to whether *Achates* was correctly decided.

12

**3.**    **The *Achates* decision was wrongly decided. Section 314(d) does not bar all appellate review of the PTAB's determinations regarding the §315(b) time bar.**

The Federal Circuit first held that §314(d) precludes review of the PTAB's decision to institute an *inter partes* review following a final written decision on the merits in *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1273 (Fed. Cir. 2015). The *Achates* decision, which applied §314(d) to preclude review of the PTAB's §315(b) decisions, is a direct extension of *Cuozzo*. *See Achates*, 803 F.3d at 657.

The United States Supreme Court, however, recently granted a writ of certiorari in the *Cuozzo* case and will consider the application and scope of §314(d). *See Cuozzo Speed Techs. v. Lee*, 2016 U.S. LEXIS 632 (U.S. Jan. 15, 2016). In the pending *Cuozzo* appeal, the Supreme Court will consider the following issue: "whether the court of appeals erred in holding that, even if the Board exceeds its statutory authority in instituting an IPR proceeding, the Board's decision whether to institute an IPR proceeding is judicially unreviewable." *See Cuozzo*, 2015 U.S. Briefs 446 (2015) (Petition for Writ of Certiorari). The Supreme Court's decision will, in all likelihood, bare directly on this appeal.

In its Opening Brief, Patent Owner provided a lengthy argument as to why *Achates* was wrongly decided. *See* Op. Br. at 20-31. Patent Owner's argument is premised upon the strong presumption of reviewability, an analysis of case law

13

assessing similar limitations on reviewability in other statutory schemes, and an assessment of the text of §314(d) and its legislative history in the overall context of the America Invents Act. *See id.* These arguments go largely unchallenged in Broadcom's Response Brief. Instead, Broadcom's argument rests almost entirely on the notion that this Panel is bound by *Achates* and should defer to its resolution of the reviewability issue. *See* Resp. Br. at 36-42. Patent Owner therefore stands on its Opening Brief as its statement of the reasons *Achates* was wrongly decided.

Since Patent Owner filed its Opening Brief, the Federal Circuit has issued one additional decision holding (upon agreement of the Patent Owner) that §314(d) operates to bar review of the PTAB's §315(b) determination. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 2016 U.S. App. LEXIS 2250 at *31 (Fed. Cir. 2016). Patent Owner encourages the Panel to consider Part III of Judge Newman's dissent, which cites the same binding Supreme Court authority relied upon by Patent Owner to support the notion that *Achates* was wrongly decided. *See id.* at *71-76.

**4. At a minimum, this Panel should request en banc reconsideration of *Achates*, or wait for the Supreme Court's decision in *Cuozzo*.**

For the reasons stated above, this Panel is not bound to follow *Achates*, and it can decide the reviewability issue differently if the Panel concludes that Supreme

Court precedent dictates a different result. *See Atlantic Thermoplastics*, 970 F.2d at 839 fn. 2.

In the alternative, if this Panel concludes that *Achates* was wrongly decided, it has the authority itself to ask the other judges of the Federal Circuit for en banc review of *Achates*. The relevant Federal Circuit rule states:

> **Arguing to a Panel to Overrule a Precedent.** Although only the court en banc may overrule a binding precedent, a party may argue, in its brief and oral argument, to overrule a binding precedent without petitioning for hearing en banc. The panel will decide whether to ask the regular active judges to consider hearing the case en banc.

Fed. Cir. R 35(a)(1).

Finally, this Panel should consider whether it should stay this appeal or delay a ruling on the reviewability issue under §314(d) until the Supreme Court renders its decision in the pending *Cuozzo* case.  For purposes of judicial economy, and also to avoid a ruling that could potentially be inconsistent with the forthcoming *Cuozzo* opinion from the Supreme Court, the Panel should consider this option. In the event the Court does delay a ruling on this appeal until after the *Cuozzo* opinion is rendered, Patent Owner respectfully requests an opportunity to file a short brief on the effect of that forthcoming opinion on this appeal after *Cuozzo* is decided by the Supreme Court.

15

**B.    The PTAB's decision on the §315(b) time bar issue should be vacated or reversed.**

As argued in Patent Owner's Opening Brief, the Federal Circuit should, at a minimum, retain jurisdiction to review the Board's decision below to ensure that it did not commit a critical legal error or a substantial departure from important procedural rights. *See* Op. Br. at 26-27 and 30-31 (discussing *Reilly v. Office of Personnel Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009)). Broadcom's response is limited to a single footnote in which it simply points out that *Reilly* was decided under the Civil Service Retirement Act. *See* Resp. Br. at 40 fn. 14. But Broadcom ignores Patent Owner's argument that the statutory language of the Civil Service Retirement Act, on its face, is a much more restrictive limit on appellate review – yet the Federal Circuit nonetheless found that it retained jurisdiction to review administrative decisions for critical legal errors or serious procedural violations. *See* Op. Br. at 26-27. Given the less restrictive statutory language of §314(d), the Federal Circuit should retain *at least* as much authority to review administrative action as was found in *Reilly. See id.*

> **1.    The Board committed a critical legal error by applying the wrong substantive legal standards.**

As shown in Patent Owner's Opening Brief, it is very clear that the Board below applied a narrow and rigid legal standard focusing exclusively on whether

16

Broadcom had the right to control the District Court Litigation, and viewed it as irrelevant whether the District Court Defendants have the ability to control Broadcom's activities in the IPR below. As just one example, the Board stated in its decision denying discovery to Patent Owner:

> To show privity requires a showing that Broadcom would be bound by the outcome of the Texas Litigation. To be bound, in normal situations, Broadcom **must have had control over the Texas Litigation.**

*See* A81; *see also* Op. Br. at 34-35 (collecting quotations from the Board below showing that the Board applied the incorrect legal standard).

In its Response Brief, Broadcom attempts to shift the blame to Patent Owner and asserts that the Board focused narrowly on Broadcom's control of the Texas Litigation because Patent Owner made this the focus of its argument in its request for additional discovery on the issue. *See* Resp. Br. at 43-44 (accusing Patent Owner of a "shifting sands" approach to the privity issue). But Broadcom makes its argument based on a few cherry-picked quotes from Patent Owner's motion for discovery. The entirety of the motion papers makes clear that Patent Owner simply sought to obtain the relevant facts (such as a copy of the highly relevant indemnity agreement) and urged the Board to apply the correct broad and flexible legal standard that is required by §315(b). *See* A44-47 (describing a "level of coordination" between Broadcom and its customers"); A48-49 (urging the Board

17

to apply a broad and flexible standard to consider the totality of the circumstances); A50 (stating that the existence of an indemnity agreement, alone, may be sufficient for a finding of privity); A51 (arguing that the Board's review of the indemnity agreement will inherently be useful evidence).

Indeed, in Patent Owner's request for reconsideration of the discovery motion (filed less than two weeks after the Board's denial of the discovery request, and well before Patent Owner filed its Patent Owner Response), Patent Owner specifically argued that the Board had erred by applying a narrow legal standard that required Broadcom to have control over the District Court Litigation for a finding of privity. *See* A96-98; *see also* A144-150 (Patent Owner Response). It is simply incorrect for Broadcom to contend that Patent Owner "reversed its position" after the Board rendered its final written decision. *See* Resp. Br. at 43. Patent Owner has consistently urged the Board to apply the correct, broad and flexible legal standard to determine whether one or more of the District Court Defendants is a real party in interest or privy of Broadcom for purposes of this IPR. Nothing in Patent Owners' papers justifies the Board applying the wrong legal test and insisting that Broadcom must have controlled the District Court Litigation as a prerequisite to a finding of privity. The Board's application of an erroneous legal standard amounts to a critical legal error. *See* Op. Br. at 31-35.

18

### 2.   The Board committed serious procedural errors.

The Board's conduct also was a substantial departure from important procedural rights. *See* Op. Br. at 35-41. Specifically, the Board refused to consider the known indemnity agreement – perhaps the most relevant evidence on the §315(b) issue – and thus failed to honor its obligation to consider all relevant evidence on this issue. *See* Op. Br. at 36-37 (citing 5 U.S.C. §556(d)). The Board also denied Patent Owner an opportunity to present evidence contrary to the Board's findings. *See id.* at 37-38 (citing 5 U.S.C. §556(e)). The Board further failed to provide a reasoned explanation for its substantive decision on the §315(b) issue. *See id.* at 38-41 (collecting cases). Broadcom largely fails to rebut these points. Under the facts of this case, the Board's actions amount to serious procedural errors and are reversible.

### 3.   Patent Owner is entitled to appellate relief on the §315(b) time bar issue.

For the foregoing reasons, Patent Owner has demonstrated that it is entitled to appellate relief. Patent Owner urges this Court to find that it has authority to review the Board's determination of the §315(b) issue directly by appeal of the final written decision. In the alternative, Patent Owner has requested that this appeal be treated as a petition for writ of mandamus. *See* Op. Br. at 41-44.

Broadcom provides scant argument in rebuttal to Patent Owner's request for mandamus relief in the alternative. *See* Resp. Br. at 49-50.

Patent Owner urges the Court to reverse the judgment of the Board below and render judgment in favor of Patent Owner, finding that the evidence on the present record is sufficient for a finding that one or more of the District Court Defendants is a real party in interest or privy of Broadcom for purposes of this appeal. *See* Op. Br. at 7-9, 40-41 (discussing the evidence). At a minimum, the Board's judgment below should be vacated and the case should be remanded with instructions for the Board to consider all the relevant evidence (including the indemnity agreement) and to apply the correct legal standard.

## C.　The Board erred in determining that the '215 patent claims are unpatentable.

### 1.　The Board erred in construing the term "type identifier field" by neglecting to differentiate between different message types.

Appellee's defense of the Board's construction of "type identifier field," contradicts the intrinsic evidence. The '215 patent teaches that a "type identifier field" differentiates among four different message types: (1) BITMAP', (2) LIST, (3) ACK, and (4) NO MORE. A35–37 at 6:12–7:51; 8:17–20; 9:67–10:2. Merely identifying a type of message is not sufficient because the "type identifier field" must allow the transmitter to differentiate between a feedback message type from

20

among a number of different message types. *Id.* If only one type of message exists—for example, a system provides only a bitmap message, then there is no need for identifying the type of message since only one type exists. The term "type identifier field," on the other hand, requires differentiating between message types. Only Wi-Fi One's construction does that.

Broadcom erroneously relies on Seo, rather than the intrinsic evidence, to support its proposed construction. In particular, Broadcom relies on the Board's erroneous finding that Seo's "NAK_TYPE differentiates between different types of feedback messages." Resp. Br. at 23. Relying on irrelevant extrinsic evidence such as Seo should be rejected in favor of relying on the unambiguous intrinsic evidence. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) ("However, while extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." (internal quotations omitted)). Regardless, Broadcom is wrong, because Seo discloses only one message type—a single NAK having both Bitmap and First/Last field information. A502 at 5:28–30; A1667 at ¶ 49. Because information relating to both Bitmaps and First/Last fields exist in the Seo NAK_TYPE message, Seo discloses only a single

message type. In other words, Seo discloses *one* type of message containing two types of information.

Next Broadcom argues that construing the "type identifier field" as identifying a type of feedback response message, rather than merely a type of message, is unduly narrow. Resp. Br. at 24. This is wrong. Patent Owner argued that the "feedback response message" reflected the broadest reasonable construction in light of the specification, not that the preamble was a claim limitation. Op. Br. at 51. Because Patent Owner's construction best reflects the intrinsic evidence, while the Board's adopted construction is inconsistent with it, this Court should vacate the Board's construction and adopt Patent Owner's. *See PPC Broadband, Inc. v. Corning Optical Commc'ns. RF, LLC*, No. 2015-1364, at 6 (Fed. Cir. Feb. 22, 2016) ("In IPR Proceedings, the Board gives claims their broadest reasonable interpretation consistent with the specification." (citing *In re Cuozzo Speed Techs., LLC*, 793 F.3d at 1279, *cert. granted,* 2016 U.S. LEXIS 632).

### 2.    Seo does not anticipate the challenged claims.

The Board erred in determining that Seo anticipates the challenged claims by finding that the Seo NAK_TYPE meets the "type identifier field." Indeed, Seo discloses a single message type, a redundant NAK control frame that contains both

22

bitmaps and lists. A502 at 5:28–30; A497 at FIG. 4. Because Seo's NAK_TYPE has a constant size and format, containing both a bitmap and a list, the NAK frame disclosed by Seo always contains the same fields, but with varying content. Op. Br. at 54. Accordingly, the NAK_TYPE field in Seo cannot differentiate from among a number of different types of feedback messages, as required by the broadest reasonable construction of "type identifier field." Both the Board and Broadcom erred by conflating the content of the message payload with a particular type of message.

The Board's finding is not supported by substantial evidence. For example, Broadcom argues that the receiver in Seo "can use both types of message and switch between them interchangeably." Resp. Br. at 26. This is incorrect. Nothing in Seo suggest that the receiver in Seo can switch between both types of messages to "process the NAK message correctly." *Id*. Furthermore, Broadcom and the Board erred in concluding that "exist" means that the field is not always present. *Id*. at 27. The bitmap and First / Last fields must always exist in Seo because of backward capability of the then existing NAK frame, which was a single control frame including fields for both bitmaps and a list of first and last sequence numbers (A502 at 5:44–46, A497 at FIG. 4), and further that the First and Last fields in the existing RLP NAK control field in Seo always includes values (A500

23

at 2:10–16). Ignoring the plain teaching in Seo that the fields for bitmaps and First / Last list always have values is fatal to the Board's finding.

Realizing that the intrinsic evidence contradicts its position, Broadcom attempts to support its erroneous position with evidence extrinsic to Seo. Broadcom points to an interpretation of the "IS-707 CDMA standard" in a misguided attempt to show that the bitmap and First / Last fields do not simultaneously exist in Seo. But the IS-707 standard shows otherwise. The IS-707 post-dates Seo—Seo was filed in December 1998, yet IS-707 is dated April 1999, (A879), and is irrelevant to the teachings of Seo. Putting aside whether the IS-707 is even a later manifestation of Seo (which has not been shown), the changes between the respective fields in bitmap and First / Last fields in Seo and the later published IS-707 standard illustrate that the bitmap and First / Last fields in Seo simultaneously existed and had values. Otherwise, the bitmap and the First / Last fields in IS-707 and Seo would have been identical. Furthermore, contradicting the clear teachings of Seo with erroneous expert testimony and extrinsic evidence is improper and should be rejected. *Bell Atl. Network Servs., Inc. v. Covad Commc'ns. Group, Inc.,* 262 F.3d 1258, 1268–69 (Fed. Cir. 2001). Because the Board and Broadcom and its expert relied on erroneous interpretations of Seo, the

24

Board's finding that Seo anticipates the challenged claims of the '215 patent is not supported by substantial evidence.

Finally, Broadcom again erroneously argues that the NAK_TYPE field "informs the transmitter which of the two types of NAK messages it has received" and thus Seo discloses a "type identifier field" under Wi-Fi One's interpretation. Resp. Br. at 29. This is incorrect. Because, as discussed above, Seo discloses only one, not two, NAK message types, the Board's findings to the contrary are legally erroneous and unsupported by substantial evidence. Confusing the content of the message payload with the type of message is reversible error.

### 3. Seo does not teach or suggest a "message field including a type identifier field."

Broadcom argues that header and payload fields are irrelevant because the '215 patent does not distinguish between header and payload fields and does not use the word "header." *Id*. But Broadcom ignores the plain teachings of the '215 patent to do so. The message field limitation amendment was added during prosecution of the '215 patent claims to distinguish the admitted prior art that included a "PDU_format" field in the header of a PDU. A30 at FIGs. 2–3; Op. Br. at 56. To support its position, Broadcom points out that the message field was amended to include a "type identifier field" with "one of three types of fields." Resp. Br. at 30. Broadcom argues that the "type identifier field" was not amended

25

to distinguish one located in the payload from one located in the header, and therefore this term was amended "to make the 'type identifier field' a necessary element." *Id.* at 31. Broadcom's argument misses a critical assumption—the claim was amended in the context of a prior art PDU having an identifier field in the header and not in the payload.

Broadcom's expert further contradicts Broadcom's position by erroneously concluding that the "[type identifier field] would be classified as part of the header and not part of the payload because they contain bits that tell a receiver how to process the substance of the data that follows." *Id.* at 30. Broadcom's expert ignores payloads having multiple message types because each such message in that payload would be processed differently, not the same as required by Broadcom's expert.

Moreover, Broadcom argues that "reducing the size or content of [the S-PDU]" is not a claim element and thus does not distinguish Seo. *Id.* at 31. But that is wrong. Putting the message in the payload, rather than the header as does Seo, distinguishes the '215 patent from the prior art such as Seo, and further allows for more efficient S-PDUs. Broadcom finally argues that putting the type identifier field in the message does not necessarily guarantee the most efficient S-PDU, because missing sequence numbers may affect whether the First/Last or bitmap

26

approach is the most efficient. But the '215 claims are not directed toward forming the most efficient PDU. Rather, including the type identifier field in the payload, as does the '215 patent, distinguishes the '215 patent from the prior art. Accordingly, the Board's contrary decision is not supported by substantial evidence and must be reversed.

### 4. Claim 15 is valid over Seo.

Both the Board and Broadcom incorrectly interpreted the language of claim 15 to erroneously determine that Seo anticipates claim 15. This dispute centers on the claim language "a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields." In particular, Wi-Fi One argues that the "each of said plurality of erroneous sequence number fields" refers to "a plurality of erroneous sequence number fields" previously recited in the claim, whereas Broadcom and the Board simply ignore the antecedent basis of this term. The "associated" language in this phrase recognizes that each erroneous sequence number field has a corresponding erroneous sequence number length field, not the other way around as suggested by Broadcom.

27

The erroneous sequence number field is always present with an erroneous sequence number length in the '215 patent specification so that the receiver knows how many consecutive erroneous sequence numbers relate to the message. Broadcom attempts to support its position by arguing that an erroneous sequence number length field is not independently useful. Resp. Br. at 35. But the same can be said if the message field includes a type identifier field and a length field. In other words, the claim recites a message field with a type identifier field along with one of three different types of information: (1) length field, (2) plurality of erroneous sequence number fields, and (3) plurality of erroneous sequence number length fields such that the plurality of erroneous sequence number fields is associated with a respective one of said plurality of erroneous sequence number length fields. A37 at Claim 15. Furthermore, *Anhydrides & Chems., Inc. v. United States*, supports Wi-Fi One's position. 130 F.3d 1481, 1483 (Fed. Cir. 1987) (explaining that "referential or qualifying phrases" usually "refer solely to the last antecedent"). Just like *Anhydrides*, the last antecedent for "each of said plurality of erroneous sequence number fields" is "a plurality of erroneous sequence number fields." Accordingly, Broadcom's and the Board's analysis of claim 15 is unsupported by substantial evidence and must be reversed.

## CONCLUSION

For the foregoing reasons, the Board's Final Written Decision should be either reversed or vacated.

Dated:  February 29, 2016                    Respectfully submitted,


                                   */s/ Donald Puckett*
                                   G. Donald Puckett
                                   NELSON BUMGARDNER PC
                                   3131 West 7th Street, Suite 300
                                   Fort Worth, Texas 76107
                                   (817) 377-9111 (telephone)
                                   (817) 377-3485 (facsimile)
                                   puckett@nelbum.com

                                   Douglas A. Cawley
                                   MCKOOL SMITH, P.C.
                                   300 Crescent Court, Suite 1500
                                   Dallas, TX 75201
                                   (214) 978-4972 (telephone)
                                   (214) 978-4044 (facsimile)
                                   dcawley@mckoolsmith.com

                                   Peter J. Ayers
                                   LEE & HAYES PLLC
                                   11501 Alterra Parkway, Suite 450
                                   Austin, TX 78758
                                   (512) 605-0252 (telephone)
                                   (512) 605-0269 (facsimile)
                                   peter@leehayes.com

                                   Attorneys for Appellant,
                                   Wi-Fi One, LLC

29

# United States Court of Appeals
# for the Federal Circuit

*WiFi One, LLC v. Broadcom Corporation*, No. 2015-1944

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON BUMGARDNER PC, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **February 29, 2016** counsel has authorized me to electronically file the foregoing **Reply Brief for Appellant, WiFi-One, LLC**, with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

DOMINIC E. MASSA, ESQ.
KEVIN GOLDMAN, ESQ.
ZACHARY PICCOLOMINI, ESQ.
KATIE SAXTON, ESQ.
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
617-526-6000
dominic.massa@wilmerhale.com
kevin.goldman@wilmerhale.com
zachary.piccolomini@wilmerhale.com
kate.saxton@wilmerhale.com
*Attorneys for Appellee*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

February 29, 2016                                    /s/ Robyn Cocho
                                                           Counsel Press

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that I am an attorney of record on behalf of Appellants Wi-Fi One, LLC and that I personally used the "word count" feature of Microsoft Word 2010 to count the words in the foregoing Brief of Appellant Wi-Fi One, LLC identified in the Rule 32(a)(7)(B)(iii) and determined that the foregoing brief contains 6,514 words and is therefore in compliance with Rule 32(a)(7)(B)(i).

In addition, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

By: */s/ Donald Puckett*
G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485  (facsimile)
puckett@nelbum.com