**No. 15-1944**

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

**WI-FI ONE, LLC,**

*Appellant,*

v.

**BROADCOM CORPORATION,**

*Appellee.*

_____

2015-1944, 2015-1945, 2015-1946

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in
IPR2013-00601, IPR2013-00602, IPR2013-00636

_____

## WI-FI ONE, LLC'S COMBINED PETITION FOR
## REHEARING *EN BANC* AND PANEL REHEARING

_____

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Ste. 300
Fort Worth, Texas 79107
(817) 377-9111

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Ste. 1500
Dallas, TX 75201
(214) 978-4972

Peter J. Ayers
LEE & HAYES, PLLC
11501 Alterra Parkway, Ste. 450
Austin, TX 78758
(512) 605-0252

*Attorneys for Appellant Wi-Fi One, LLC*

_____

## CERTIFICATE OF INTEREST

Counsel for the Appellant, Wi-Fi One, LLC, certifies the following:

The full name of every party or amicus represented by me is:

**Wi-Fi One, LLC**

The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Wi-Fi One, LLC**

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Wi-Fi One, LLC is 100% owned by Optis Wi-Fi Holdings, LLC.**

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**LEE & HAYES, PLLC**
Peter Ayers
J. Christopher Lynch
John Shumaker

**NELSON BUMGARDNER, P.C.**
Donald Puckett

**SKIERMONT DERBY LLP (formerly SKIERMONT PUCKETT LLP)**
Steven Joseph Udick
Sarah E. Spires

**MCKOOL SMITH, P.C.**
Douglas A. Cawley

Dated:  October 17, 2016                    Respectfully submitted,


                                            /s/ Donald Puckett
                                            G. Donald Puckett
                                            NELSON BUMGARDNER PC
                                            3131 West 7th Street, Suite 300
                                            Fort Worth, Texas 76107
                                            (817) 377-9111 (telephone)
                                            (817) 377-3485  (facsimile)
                                            puckett@nelbum.com

                                            Douglas A. Cawley
                                            MCKOOL SMITH, P.C.
                                            300 Crescent Court, Suite 1500
                                            Dallas, TX 75201
                                            (214) 978-4972 (telephone)
                                            (214) 978-4044 (facsimile)
                                            dcawley@mckoolsmith.com

                                            Peter J. Ayers
                                            LEE & HAYES PLLC
                                            11501 Alterra Parkway, Suite 450
                                            Austin, TX 78758
                                            (512) 605-0252 (telephone)
                                            (512) 605-0252 (facsimile)
                                            peter@leehayes.com

                                            *Attorneys for Appellant,*
                                            *Wi-Fi One, LLC*

**TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTEREST .........................................................................................i

STATEMENT OF COUNSEL – FEDERAL CIRCUIT RULE 35(B)(2) ................1

I.    INTRODUCTION AND STATEMENT OF THE CASE..................................3

II.   POINTS OF LAW OR FACT OVERLOOKED OR
      MISAPPREHENDED BY THE PANEL ..........................................................6

III.  ARGUMENT ..................................................................................................9

      A.   The Court Should Grant Rehearing *En Banc* to Decide Important
           Legal Issues of First Impression Following the Supreme Court's
           Recent *Cuozzo* Decision ...................................................................9

      B.   The Court Should Grant Rehearing *En Banc* or Panel Rehearing to
           Address Issues the Panel Overlooked or Misapprehended .......................13

IV.   CONCLUSION ...............................................................................................15

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Page(s)*

## Cases:

*Abbot Labs., Inc. v. Gardner,*
    387 U.S. 136 (1967)................................................................1-2, 11-12

*Achates Reference Publishing, Inc. v. Apple Inc.,*
    803 F.3d 652 (Fed. Cir. 2015) ................................................. *passim*

*Bowen v. Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986)................................................................1-2, 11-12

*Click-to-Call Technologies, LP v. Oracle Corp.,*
    Federal Circuit Case No. 15-242, Dkt. 71 .................................. 3, 7, 9

*Cuozzo Speed Tech's, LLC v. Lee,*
    136 S.Ct. 2131 (2016)............................................................... *passim*

*Leedom v. Kyne,*
    358 U.S. 184 (1958)................................................................... 1-2

*Lindahl v. Office of Personnel Mgmt.,*
    470 U.S. 768 (1984).................................................................. 1-2

*Mach Mining, LLC v. E.E.O.C.,*
    135 S.Ct. 1645 (2015)............................................................. 1, 11-12

*Reilly v. Office of Personnel Mgmt.,*
    571 F.3d 1372 (Fed. Cir. 2009) ........................................... 1-2, 8, 12

*Shaw Indust. Group, Inc. v. Automated Creel Sys., Inc.,*
    817 F.3d 1293 (Fed. Cir. 2016) ................................................. 13

**Statutes:**

Administrative Procedure Act, 5 U.S.C. §§551-559 ....................................... *passim*

5 U.S.C. §§706(2)(A)-(D).................................................................................. 15

35 U.S.C. §312 ..............................................................................................9-10

35 U.S.C. §314 ......................................................................................... *passim*

35 U.S.C. §315(b) ..................................................................................... *passim*

35 U.S.C. §319 ................................................................................................ 11

**STATEMENT OF COUNSEL - FEDERAL CIRCUIT RULE 35(B)(2)**

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1. Following a final written decision of the Patent Trial and Appeal Board ("PTAB"), may a party appeal the PTAB's determination as to whether the *Inter Partes* Review ("IPR") petition was time-barred pursuant to 35 U.S.C. §315(b)?

2. Following a final written decision of the PTAB, may a party on appeal raise points of error asserting that the PTAB violated provisions of the Administrative Procedure Act ("APA") in connection with the PTAB's determination as to whether the IPR petition was time-barred pursuant to 35 U.S.C. §315(b)?

3. Did the United States Supreme Court's decision in *Cuozzo Speed Tech's, LLC v. Lee*, 136 S.Ct. 2131 (2016) overrule or modify the Federal Circuit's holding in *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015)?

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States and precedents of this court: *Cuozzo Speed Technologies, LLC v. Lee*, 136 S.Ct. 2131 (2016); *Mach Mining, LLC v. E.E.O.C.*, 135 S.Ct. 1645 (2015); *Bowen v. Michigan*

1

*Academy of Family Physicians*, 476 U.S. 667 (1986); *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768 (1984); *Abbot Labs., Inc. v. Gardner*, 387 U.S. 136 (1967); *Leedom v. Kyne*, 358 U.S. 184 (1958); and *Reilly v. Office of Personnel Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009).

Dated: October 17, 2016

   /s/ Donald Puckett
Donald Puckett
ATTORNEY OF RECORD FOR APPELLANT

2

## I.  INTRODUCTION AND STATEMENT OF THE CASE

This case[1] presents the first opportunity for the *en banc* court to consider the scope and application of 35 U.S.C. §314(d) following the Supreme Court's decision addressing §314(d) in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S.Ct. 2131 (2016). In *Cuozzo*, the Supreme Court found that §314(d) precluded appellate review of certain arguments raised on appeal, but expressly limited its holding to the particular appellate points raised in that case. The court provided guidance on other types of appellate arguments that would not be precluded by §314(d), and left it for this court (in the first instance) to decide, on a case-by-case basis, the scope and application of §314(d) to other appellate issues – such as the §315(b) time-bar and administrative procedure issues that Wi-Fi One raised in this appeal. *See, e.g., Click-to-Call Technologies, LP v. Oracle Corp.*, Federal Circuit Case No. 15-242, Dkt. 71 (in case involving application of §314(d) to the PTAB's determination under §315(b), Supreme Court vacated Federal Circuit's opinion and remanded with instructions to reconsider in light of *Cuozzo*).

---

[1] Wi-Fi One files an identical Petition for Rehearing in three separate appellate cases involving the same parties: Case Nos. 2015-1944; 2015-1945; and 2015-1946. Each case involves a separate appeal from a different IPR proceeding before the PTAB. The three appeals have not been consolidated; but the briefing schedule was coordinated, and all three appeals were addressed at a single oral argument. The issues presented in the present Petition for Rehearing are identical in all three cases. For convenience and consistency in this Petition, all citations to the briefs of the parties will refer to the briefs filed in Case No. 2015-1944.

The facts of this case are quite unusual because of the egregiousness of the PTAB's handling of the §315(b) issue. Broadcom was never sued in district court for infringement of the patent at issue in the IPR below, but several of Broadcom's customers were. At the time Broadcom filed the instant IPR petition, those customers were barred from filing a petition of their own due to the statutory time-bar under 35 U.S.C. §315(b). *See* Opening Br. at 5-6. The ultimate legal issue presented to the PTAB was whether Broadcom also was subject to the time-bar because one or more of the district court defendants was a "real party in interest" or "privy" of Broadcom under §315(b).

The PTAB frequently considers the application of §315(b) in similar situations. The twist in this case, however, is that there is a known indemnity agreement between Broadcom and one or more of the time-barred parties. It is known to exist because the document was produced to Wi-Fi One in the district court litigation, but under a confidentiality designation that precludes Wi-Fi One from submitting the indemnity agreement to the PTAB in the proceeding below. *See* Opening Br. at 6-8.

Wi-Fi One has made every conceivable effort to put the indemnity agreement into the evidentiary record of this case. Wi-Fi One asked the district court for relief from the protective order, but the request was denied. Wi-Fi One sought permission from the PTAB to obtain the known indemnity agreement

4

through PTAB discovery, but the request was denied. Wi-Fi One sought mandamus relief from this court, but the request was denied. Broadcom opposed Wi-Fi One's efforts at every turn – despite the fact that Wi-Fi One's district court litigation counsel already has a copy of the document, and Broadcom would incur no expense in producing the document in this case. *See* Opening Br. at 8-9.

The PTAB below denied Wi-Fi One's discovery requests with the absurd circular reasoning that Wi-Fi One was not entitled to the requested discovery because Wi-Fi One did not prove that Broadcom filed the IPR petition pursuant to an indemnity agreement. *See* Opening Br. at 36-37. The PTAB provided a reasoned written decision on Wi-Fi One's discovery motion; but it never provided a reasoned decision on the §315(b) issue, instead merely incorporating by reference its decision on the discovery motion. *See* Opening Br. at 38-41. Thus, the Board's "decision" on the §315(b) issue (to the extent it was decided at all) was done with a purposeful disregard of the known indemnity agreement between Broadcom and certain district court defendants – likely the most relevant evidence on the §315(b) issue.

The panel below made no mention of the unusual procedural aspects of this case. On the §314(d) issue, the panel's opinion is essentially limited to its finding *Cuozzo* did not overrule *Achates Reference Publ'g, Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) and that *Achates* should not be reconsidered. The panel

overlooked Wi-Fi One's arguments that the PTAB below violated provisions of the Administrative Procedure Act ("APA") and administrative law for failing to consider the complete evidentiary record, denying Wi-Fi One the opportunity to present evidence contrary to the PTAB's findings, and failing to provide a reasoned written decision on the §315(b) issue.

Rehearing of this appeal is required to correct the panel's erroneous decision, to decide important issues of law in light of *Cuozzo*, and to consider arguments that Wi-Fi One raised in this appeal, but that were misapprehended and overlooked by the panel.

## II. POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED BY THE PANEL

Pursuant to Federal Circuit Rules 36(e)(3)(F) and 40(a)(4), Wi-Fi One provides this statement of points of law or fact that were overlooked or misapprehended by the court in its panel decision.

1.     The panel misapprehended the effect of the United States Supreme Court's decision in *Cuozzo Speed Tech's, LLC v. Lee*, 136 S.Ct. 2131 (2016) when it held that "[w]e see nothing in the *Cuozzo* decision that suggests *Achates* has been overruled." *See* Panel Op. at 8. The panel's quoted language from *Cuozzo*, however, omits the language immediately following, in which the Supreme Court emphasized that §314(d) is a limitation on appeals of the PTAB's institution

decisions *"under this section"* (i.e. §314). *See Cuozzo*, 136 S.Ct. at 2141 (emphasis in original).

2.    The panel overlooked the fact that the Supreme Court, by issuing a "grant-vacate-remand" order in another case, indicated that this court should review *Achates* and decide whether it was overruled or modified by *Cuozzo*, as discussed in Wi-Fi One's Supplemental Brief. *See* Wi-Fi One Supp Br. at 4-5 (discussing the *Click-to-Call* case).

3.    The panel overlooked Wi-Fi One's arguments that the panel can and should reconsider *Achates* because the *Achates* decision did not properly frame the legal issue (as demonstrated by *Cuozzo*) and because *Achates* did not consider the relevant Supreme Court authorities on this issue. *See* Opening Br. at 27-30; Reply Br. at 9-12; Wi-Fi One Supp. Br. at 5-6. The panel declined to reconsider *Achates*, apart from its finding that *Cuozzo* did not directly overrule *Achates*. *See* Panel Op. at 6, fn.1.

4.    The panel overlooked Wi-Fi One's arguments that the facts of the present case are distinguishable from the facts of *Achates*. Wi-Fi One argued that, unlike *Achates*, the PTAB panel below refused to consider the most relevant evidence – a known indemnity agreement – or to even allow the agreement to be made a part of the record. *See* Reply Br. at 2-6. Wi-Fi One also argued that this case is distinguishable from *Achates* because the PTAB panel below did not render

a reasoned written decision on the §315(b) issue. *See id.* at 6-8. The panel's decision did not address these arguments at all. The panel was incorrect to state that "Wi-Fi One does not dispute that *Achates* renders its challenge to the Board's timeliness ruling nonappealable if *Achates* is good law." Panel Op. at 6.

5.      The panel overlooked or misapprehended the import of prior Federal Circuit decisions preserving the rights of parties to appeal agency actions that involve critical legal errors or serious procedural violations, notwithstanding statutory limits on appeal. *See* Opening Br. at 25-27 and 30-31 (discussing *Reilly v. Office of Personnel Mgmt.*). This argument was not addressed by the panel.

6.      The panel overlooked Wi-Fi One's arguments that the PTAB violated various requirements of the APA. *See* Opening Br. at 37 (PTAB's refusal to consider known relevant evidence violates 5 U.S.C. §556(d)); *id.* at 37-38 (PTAB's complete denial of discovery, on the facts of this case, violated 5 U.S.C. §556(e)); *id.* at 38-41 (PTAB's failure to provide a reasoned written decision on the §315(b) time-bar issue was an arbitrary and capricious agency action). The panel opinion did not consider whether such issues are appealable, and did not consider the substantive merits of these appellate points.

8

## III.    ARGUMENT

**A.    The Court Should Grant Rehearing *En Banc* to Decide Important Legal Issues of First Impression Following the Supreme Court's Recent *Cuozzo* Decision.**

Shortly after deciding *Cuozzo*, the Supreme Court vacated an opinion of this court that had relied upon *Achates* to preclude review of the §315(b) time-bar issue, and remanded the case for reconsideration by this court in light of *Cuozzo*. *See Click-to-Call*, Federal Circuit Case No. 15-242, Dkt. 71.

The panel decision in this case effectively decided this issue, holding that *Cuozzo* did not overrule or modify *Achates. See* Panel Op. at 8. Judge Reyna filed a concurring opinion disagreeing with the panel's holding that *Achates* is still good law, and urging *en banc* reconsideration of *Achates*. *See* Panel Op. Concurrence at 1-3. This case presents the first opportunity for the court *en banc* to consider the proper scope and application of §314(d) post-*Cuozzo*, and specifically to decide §314(d)'s application to the §315(b) time-bar issue.

In *Cuozzo*, the Supreme Court considered the purpose and scope of 35 U.S.C §314(d) and concluded that the statute precluded appeal of "the kind of mine-run claim at issue here, involving the Patent Office's decision to institute inter partes review." *Cuozzo*, 136 S.Ct. at 2136. The specific appellate arguments at issue in *Cuozzo* were whether the PTAB had made a proper institution decision under §314(d), in light of Cuozzo's assertion that the petition lacked the "particularity"

9

required by 35 U.S.C. §312. *See id.* at 2142 ("In this case, Cuozzo's claim that Garmin's petition was not pleaded 'with particularity' under §312 is little more than a challenge to the Patent Office's conclusion under §314(a), that the 'information presented in the petition' warranted review.").

In *Cuozzo*, the Supreme Court expressly limited its holding to the facts of that case, and left it for this court to decide (in the first instance at least) the proper application of §314(d) to other IPR appellate issues, such as the §315(b) time-bar issue, in light of the guidance provided by *Cuozzo*:

> [W]e emphasize that our interpretation applies where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review. See §314(d) (barring appeals of "determinations . . . to initiate an inter partes review *under this section*" (emphasis added)). This means that we need not, and do not, decide the precise effect of §314(d) on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond "this section."

*Cuozzo*, 136 S.Ct. at 2141 (emphasis added in original).

10

The *Cuozzo* court provided further guidance by providing an example list of appellate issues related to the PTAB's institution decisions that would not be barred by §314(d), including: (1) constitutional issues, such as a denial of due process, (2) arguments that the agency acted outside of its statutory limits, (3) arguments related to statutes that are less closely related to §314, and (4) other "shenanigans" that are properly reviewable under 35 U.S.C. §319 or the APA. *See id.* at 2141-42.

In light of *Cuozzo,* it can now be seen that the *Achates* court did not properly frame the issue. The *Achates* decision was premised upon the court's finding that §315(b) is not "jurisdictional." *See Achates*, 803 F.3d at 657. Under the *Cuozzo* framework, the jurisdictional/nonjurisdictional distinction is irrelevant. Instead, whether a particular appellate point is barred by §314(d) depends on whether the appellate point is a "mine-run" argument "closely related" to the PTAB's institution decisions under §314, or alternatively whether the argument falls into one of the other categories of exceptions to §314(d) identified by the *Cuozzo* court. *See* Wi-Fi One Supp. Br. at 4-6.

Moreover, *Cuozzo* demonstrates that *Achates* did not consider the applicable Supreme Court authorities in connection with its decision to preclude all review of the PTAB's §315(b) determinations. The *Achates* court did not consider the strong presumption of reviewability of agency action under the APA, or related Supreme

11

Court cases such as *Mach Mining, LLC v. E.E.O.C.*, 135 S.Ct. 1645; *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986); *Abbott Labs., Inc. v. Gardner*, 387 U.S. 136 (1967); and others. *See* Wi-Fi One Supp. Br. at 5-6.

The *Achates* decision also did not consider prior decisions of this court that preserved appellate review of agency action involving critical legal errors or serious procedural violations, such as *Reilly v. Office of Personnel Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009). Wi-Fi One urged the panel to consider such cases. *See* Opening Br. at 25-27 and 30-31. The panel opinion, however, did not consider these cases or Wi-Fi One's argument.

For all of the foregoing reasons, the court should reconsider the viability of the *Achates* holding, which has been rendered particularly suspect in light of *Cuozzo*. Because of the importance of this issue, Wi-Fi One respectfully urges *en banc* review. As eloquently stated by Judge Reyna, the time-bar issue is not a "mine run" claim - it is wholly unrelated to the PTAB's institution decision under §314(a). It is a statutory directive with which the Board must comply, and it is part of the statutory basis upon which the PTAB's final decision rests. *See* Panel Op., Concurrence at 3. Yet *"Achates* renders §315(b) toothless. For example, if the Board simply chose to ignore a time bar issue altogether, there would be no avenue for appellate review." *Id.,* Concurrence at 2.

Additionally, apart from the §315(b) time-bar issue, the Patent Office has consistently taken a broad view of §314(d) generally, in an effort to preclude any appellate review of many issues that are not "closely related" to the PTAB's institution decisions under §314(d). *See, e.g. Shaw Indust. Group, Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1303 (Fed. Cir. 2016) (Reyna concurring, discussing the USPTO's "claim to unchecked discretionary authority" in deciding whether to deny a petition on grounds of redundancy). *En banc* review in this case would be the court's first opportunity to provide guidance *en banc* to practitioners and the USPTO on the proper scope of §314(d) following *Cuozzo*.

**B.     The Court Should Grant Rehearing *En Banc* or Panel Rehearing to Address Issues the Panel Overlooked or Misapprehended.**

Wi-Fi One raised several arguments on appeal that were simply overlooked or misapprehended by the panel decision. In both its Opening Brief and its Reply, Wi-Fi One emphasized that it was not simply appealing the PTAB's §315(b) determination or the PTAB's discovery rulings. Wi-Fi One also raised procedural points of error related to the PTAB's *refusal to consider* a known indemnity agreement (the most relevant evidence on the "real party in interest or privy" issue under §315(b)), the PTAB's denial of all discovery on this issue, and the PTAB's failure to provide a reasoned written decision on the §315(b) issue. *See* Opening Br. at 36-38; Reply Br. at 5-6. The panel overlooked all of these arguments.

Wi-Fi One also argued that the present case is factually distinguishable from *Achates* for two reasons. First, in *Achates*, the PTAB considered all known relevant evidence, whereas in this case the PTAB refused to consider a known indemnity agreement that likely was the most important evidence on the issue. *See* Reply Br. at 2-6. Second, in *Achates*, the PTAB issued a reasoned written decision on the §315(b) issue, whereas in this case the PTAB did not. *See* Reply Br. at 6-8. The panel overlooked these arguments and did not address them in its opinion. The panel was incorrect to state that "Wi-Fi One does not dispute that *Achates* renders its challenge to the Board's timeliness ruling nonappealable if *Achates* is good law." Panel Op. at 6. To the contrary, Wi-Fi One made arguments that this case is factually distinguishable from *Achates*; and the panel overlooked these arguments.

Additionally, Wi-Fi One raised appellate points under the APA that were overlooked by the panel. Wi-Fi One argued that the PTAB's refusal to consider the known indemnity agreement violated the PTAB's obligation to consider the full evidentiary record under 5 U.S.C. §556(d). *See* Opening Br. at 37. Wi-Fi One argued that the PTAB's denial of all discovery on this issue violated Wi-Fi One's right to present evidence contrary to the PTAB's findings under 5 U.S.C. §556(e). *Id.* at 37-38. Wi-Fi One also argued that the PTAB's failure to provide a reasoned written decision was arbitrary and capricious, contrary to administrative law requirements. *Id.* at 38-41. The panel overlooked these arguments altogether.

14

In *Cuozzo*, the Supreme Court expressly recognized that the APA creates appellate jurisdiction for this court to consider certain points of error, notwithstanding §314(d). *See Cuozzo*, 136 S.Ct. at 2141-42 (citing 5 U.S.C. §§706(2)(A)-(D)). The panel, however, did not consider whether any of Wi-Fi One's APA arguments are reviewable; and it did not consider the merits of these arguments. Rehearing *en banc* or panel rehearing should be granted so the court can consider and resolve Wi-Fi One's appellate arguments that were overlooked by the panel.

### IV.    CONCLUSION

For the foregoing reasons, Wi-Fi One requests the court grant rehearing *en banc* or a panel rehearing of this case, vacate the panel opinion, and rehear this appeal.

Dated: October 17, 2016                Respectfully submitted,


                                        */s/ Donald Puckett*

                                        G. Donald Puckett
                                        NELSON BUMGARDNER PC
                                        3131 West 7th Street, Suite 300
                                        Fort Worth, Texas 76107
                                        (817) 377-9111 (telephone)
                                        (817) 377-3485 (facsimile)
                                        puckett@nelbum.com

                                        Peter J. Ayers
                                        LEE & HAYES PLLC
                                        11501 Alterra Parkway, Suite 450
                                        Austin, TX 78758
                                        (512) 605-0252 (telephone)
                                        (512) 605-0269 (facsimile)
                                        peter@leehayes.com

                                        Douglas A. Cawley
                                        MCKOOL SMITH, P.C.
                                        300 Crescent Court, Suite 1500
                                        Dallas, TX 75201
                                        (214) 978-4972 (telephone)
                                        (214) 978-4044 (facsimile)
                                        dcawley@mckoolsmith.com

                                        Attorneys for Appellant,
                                        Wi-Fi One, LLC

16

# ADDENDUM

# United States Court of Appeals
# for the Federal Circuit

---

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

---

2015-1944

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00601.

---

Decided: September 16, 2016

---

DOUGLAS AARON CAWLEY, McKool Smith, PC, Dallas, TX, argued for appellant. Also represented by DONALD PUCKETT, Nelson Bumgardner PC, Fort Worth, TX; PETER J. AYERS, Lee & Hayes, PLLC, Austin, TX.

DOMINIC E. MASSA, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for appellee. Also represented by KEVIN A. GOLDMAN, ZACHARY P. PICCOLOMINI, KATIE SAXTON.

---

Before DYK, BRYSON, and REYNA, *Circuit Judges.*

2                     WI-FI ONE, LLC v. BROADCOM CORPORATION

Opinion for the court filed by *Circuit Judge* BRYSON.

Concurring opinion filed by *Circuit Judge* REYNA.

BRYSON, *Circuit Judge*.

This is an appeal from a decision of the Patent Trial and Appeal Board in an inter partes review. The Board held various claims of a patent owned by Wi-Fi One, LLC ("Wi-Fi"), to be anticipated. We affirm.

## I

## A

The patent at issue in this case, U.S. Patent No. 6,772,215 ("the '215 patent"), is directed to a method for improving the efficiency by which messages are sent from a receiver to a sender in a telecommunications system to advise the sender that errors have occurred in a particular message.

In the technology described in the patent, data is transmitted in discrete packets known as Protocol Data Units ("PDUs"). The useful data or "payload" in those packets is carried in what are called user data PDUs ("D-PDUs"). Each D-PDU contains a sequence number that uniquely identifies that packet. The sequence number allows the receiving computer to determine when it either has received packets out of order or has failed to receive particular packets at all, so that the receiver can correctly combine the packets in the proper order or direct the sender to retransmit particular packets as necessary.

The receiver uses a different type of packet, a status PDU ("S-PDU"), to notify the sender of the D-PDUs it failed to receive. The '215 patent is concerned with organizing the information contained in S-PDUs efficiently so as to minimize the size of the S-PDUs, thus conserving bandwidth.

The patent discloses a number of methods for encoding the sequence numbers of missing packets in S-PDUs. Some of those methods use lists that indicate which packets are missing by displaying the ranges of the sequence numbers of the missing packets. Other methods are based on bitmaps that use binary numbers to report on the status of a fixed number of packets relative to a starting point.

Depending on how many packets fail to be properly delivered and the particular sequence numbers of the errant packets, different methods can be more or less efficient for encoding particular numbers and ranges of errors. In order to leverage the benefits of the different encoding methods, the patent discloses an S-PDU that can combine multiple message types in an arbitrary order, with "no rule on the number of messages or the type of messages that can be included in the S-PDU." '215 patent, col. 7, ll. 55-57. Using that technology, S-PDUs can be constructed with a combination of the encoding types best suited for the particular errors being encoded, so that the S-PDU can be more compact than an S-PDU that uses a single encoding type.

B

In 2013, Broadcom petitioned for inter partes review of the '215 patent, challenging numerous claims. Prior to the institution decision, Wi-Fi argued that Broadcom was barred from seeking review of the patent. Wi-Fi argued that Broadcom was in privity with certain entities that were involved in parallel district court litigation involving the '215 patent, and that because those entities would be time-barred from seeking inter partes review of the '215 patent, Broadcom was time-barred as well. *See* 35 U.S.C. § 315(b).

Wi-Fi filed a motion seeking discovery designed to support its argument, but after briefing the Board denied the motion. It found that Wi-Fi "has not provided evi-

dence to show that there is more than a mere possibility that the sought-after discovery even exists" or "that the sought-after discovery has more than a mere possibility of producing useful evidence on the crucial privity factor"— control of the district court litigation by Broadcom in a way that would foreclose it from seeking inter partes review.

After the Board denied Wi-Fi's petition for rehearing, Wi-Fi petitioned this court for a writ of mandamus. This court denied the petition. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014).

The Board instituted inter partes review of the '215 patent, finding that there was a reasonable likelihood that the challenged claims were anticipated by U.S. Patent No. 6,581,176 to Seo. The Board declined to institute review based on another reference because it found that reference would be redundant in light of Seo.

Seo teaches improvements to what are known as negative acknowledgement ("NAK") frames. NAK frames are sent by the receiving unit to inform the transmitting unit that frames sent by the transmitting unit were misdelivered. The Seo method uses a single packet to provide information about multiple misdelivered frames, so that "only one NAK control frame for all missed user data frames is transmitted to a transmitting station to require a retransmission of the missed user data when a timer for an NAK is actually expired." Seo, col. 5, ll. 32-35.

Seo describes the structure of the disclosed NAK frames. The frames include a field called "NAK_TYPE" that indicates how the NAK frame represents missing frames. If the NAK_TYPE is set to "00," then the missing frames are encoded as a list, and the frame requests retransmission of all user data frames between the first missing frame and the last, represented by the "FIRST" and "LAST" values. If the NAK_TYPE is set to "01," then the NAK frame transmits information about the missing

transmitted frames using a bitmap.    In that case, the NAK frame contains the field "NAK_MAP_SEQ" to identify the starting point of the bitmap and the field "NAK_MAP" to transmit the bitmap.

Before the Board, Wi-Fi argued that the NAK_TYPE field disclosed in Seo is not a "type identifier field" and that Seo therefore does not satisfy the type identifier field limitation of the '215 patent.  Wi-Fi further argued that, even if Seo discloses that feature, the NAK_TYPE field is not found within a "message field," as required by the claims at issue.  The Board rejected those arguments, found that Seo disclosed all the limitations of the challenged claims of the '215 patent, and therefore held those claims to be unpatentable.  The Board also rejected Wi-Fi's argument that claim 15 of the '215 patent required some sort of "length field," which Seo did not disclose.  Finally, the Board held that Wi-Fi had not shown that Broadcom was in privity with the district court defendants, and therefore Broadcom was not barred from filing a petition for inter partes review.

## II

On appeal, Wi-Fi continues to press its argument that Broadcom was barred from petitioning for inter partes review because it was in privity with a time-barred district court litigant.

The Board may not institute inter partes review "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."  35 U.S.C. § 315(b).  To determine whether a petitioner is in privity with a time-barred district court litigant, the Board conducts a flexible analysis that "seeks to determine whether the relationship between the purported 'privy' and the relevant other party is sufficiently close such that both should be bound by the trial outcome and related

estoppels."    Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012).

This court has previously addressed whether a patent owner can argue on appeal that the Board improperly allowed a privy of a time-barred district court litigant to pursue an inter partes review.  The statute governing the Board's institution of inter partes review provides that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."    35 U.S.C. § 314(d).    In *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652, 658 (Fed. Cir. 2015), we held that section 314(d) "prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of § 315(b), even if such assessment is reconsidered during the merits phase of proceedings and restated as part of the Board's final written decision."

Wi-Fi does not dispute that *Achates* renders its challenge to the Board's timeliness ruling nonappealable if *Achates* is still good law.  What Wi-Fi argues is that the Supreme Court's recent decision in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), implicitly overruled *Achates*.[1]    In *Cuozzo* the patent owner challenged the Board's institution decision, arguing that the Board should not have instituted inter partes review, because the petition failed to "identif[y], in writing and

---

[1]    Wi-Fi also argues that even in the absence of a Supreme Court overruling, we have a license to reconsider *Achates* because the decision was flawed.    We decline Wi-Fi's invitation.  "We are bound by prior Federal Circuit precedent 'unless relieved of that obligation by an en banc order of the court or a decision of the Supreme Court.'" *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1291 (Fed. Cir. 2015) (quoting *Deckers Corp. v. United States*, 752 F.3d 949, 959 (Fed. Cir. 2014)).

with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." 35 U.S.C. § 312(a)(3). Based on the language of section 314(d), the Supreme Court held that the Board's decision on that issue was unreviewable. *Cuozzo*, 136 S. Ct. at 2139. In the course of its opinion, the Court clarified the scope of the preclusion of review:

> [I]n light of § 314(d)'s own text and the presumption favoring review, we emphasize that our interpretation applies where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review. This means that we need not, and do not, decide the precise effect of § 314(d) on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond "this section." Thus, contrary to the dissent's suggestion, we do not categorically preclude review of a final decision where a petition fails to give "sufficient notice" such that there is a due process problem with the entire proceeding, nor does our interpretation enable the agency to act outside its statutory limits by, for example, canceling a patent claim for "indefiniteness under § 112" in inter partes review. Such "shenanigans" may be properly reviewable in the context of § 319 and under the Administrative Procedure Act, which enables reviewing courts to "set aside agency action" that is "contrary to constitutional right," "in excess of statutory jurisdiction," or "arbitrary [and] capricious."

*Id.* at 2141-42 (citations omitted).

We see nothing in the *Cuozzo* decision that suggests *Achates* has been implicitly overruled. The Supreme Court stated that the prohibition against reviewability applies to "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." Section 315 is just such a statute. The time-bar set forth in section 315 addresses who may seek inter partes review, while section 312 governs what form a petition must take. Both statutes govern the decision to initiate inter partes review.

Wi-Fi's arguments to the contrary are unavailing. Wi-Fi argues that *Cuozzo* "tied the limitation of judicial review to the Patent Office's ability to make its substantive patentability determination as embodied in § 314(a)." To the extent that Wi-Fi means to suggest that the Court limited the statutory bar against judicial review to the Board's substantive determination at the time of institution, i.e., whether a particular reference raises a reasonable likelihood of anticipating or rendering a challenged claim obvious, we disagree. The Supreme Court extended the preclusion of judicial review to statutes related to the decision to institute; it did not limit the rule of preclusion to substantive patentability determinations made at the institution stage, as the facts of *Cuozzo* itself make clear. Subsection 312(a)(3), which the Court addressed in *Cuozzo*, is not related to substantive patentability, but instead is addressed to the conditions for seeking review—in that case, the level of specificity required in the petition.

Wi-Fi also argues that the reviewability ban is limited to issues arising under section 314, because of the statutory text providing that a determination by the Director whether to institute inter partes review "under this section" is not reviewable. 35 U.S.C. § 314(d). This court explicitly rejected that argument in *Achates*. *See* 803 F.3d at 658 ("Finally, Achates also contends that § 314(d) does not limit this court's review of the timeliness of Apple's

petition under § 315, because § 314(d) says '[t]he determination by the Director whether to institute an inter partes review *under this section* shall be final and nonappealable' (emphasis added). Achates' reading is too crabbed and is contradicted by this court's precedent. The words 'under this section' in § 314 modify the word 'institute' and proscribe review of the institution determination for whatever reason."). Nothing in *Cuozzo* casts doubt on that interpretation of the statute, especially in light of the fact that the Supreme Court held that the particularity requirement, which is contained in section 312, is non-appealable.

Wi-Fi next argues that time-bar issues should be reviewable because Board practice allows parties to argue those issues at trial. That argument, too, was rejected in *Achates*. 803 F.3d at 658 ("That the Board considered the time-bar in its final determination does not mean the issue suddenly becomes available for review or that the issue goes to the Board's ultimate authority to invalidate—the Board is always entitled to reconsider its own decisions."). Wi-Fi has not pointed to anything in *Cuozzo* that casts doubt on that reasoning.

Finally, Wi-Fi argues that the Board's denial of its request for discovery on the time-bar issue is an example of the "shenanigans" that the Supreme Court in *Cuozzo* suggested would be reviewable. We disagree. The Board simply declined to grant discovery because Wi-Fi had not made a sufficient showing to support its request. To hold that such a ruling falls within the narrow exception to the Supreme Court's unreviewability holding would render routine procedural orders reviewable, contrary to the entire thrust of the *Cuozzo* decision.

III

Wi-Fi also challenges the Board's substantive determination that Seo anticipates the '215 patent. Wi-Fi brings three separate challenges: that Seo does not dis-

close a type identifier field, that Seo does not disclose a type identifier field within a message field, and that the Board misconstrued the term type identifier field.

### A

Claim 1 of the '215 patent, which is representative, provides as follows:

> A method for minimizing feedback responses in an ARQ protocol, comprising the steps of:
>
> sending a plurality of first data units over a communication link;
>
> receiving said plurality of first data units; and
>
> responsive to the receiving step, constructing a message field for a second data unit, said message field including a type identifier field and at least one of a sequence number field, a length field, and a content field.

Wi-Fi argues that Seo does not disclose a type identifier field because it discloses only a single type of message, and that the single type of message contains fields for encoding errors as both lists and bitmaps. Wi-Fi relies on Figure 4 of Seo, shown below:

WI-FI ONE, LLC v. BROADCOM CORPORATION                    11

| FIELD | LENGTH (BITS) |
|---|---|
| SEQ | 8 |
| CTL | 4 |
| RE_NUM | 2 |
| NAK_TYPE | 2 |
| NAK_SEQ | 4 |
| L_SEQ_HI | 4 |
|  |  |
| FIRST | 12 |
| LAST | 12 |
| FCS | 16 |
| PADDING | VARIABLE |
|  |  |
| NAK_Map_Count | 2 |
| NAK_Map |  |
| NAK_Map_SEQ | 12 |
| NAK_Map | 8 |

Based on Figure 4, Wi-Fi argues that the data structure in Seo contains fields for the list type of coding, which are entitled FIRST, LAST, FCS, and PADDING, and fields for the bitmap type of coding, which are entitled NAK_Map_Count, NAK_Map_SEQ, and NAK_Map.

Wi-Fi argues that in Seo all fields are always present, either as useful values or as "padded zeros," i.e., place-holders, regardless of the value of the NAK_TYPE field. Therefore, Wi-Fi argues, the NAK_TYPE field does not

function as a type identifier field that identifies the type of coding used in Seo's data structure.

The Board rejected that argument, relying on the disclosure in Seo that certain fields "exist" depending on the value of the NAK_TYPE field. *See* Seo, col. 5, ll. 54-57 ("When a value of the field NAK_TYPE is '00', the receiving station requests a retransmission of missed user data frames numbered a field FIRST through a field LAST."); col. 6, ll. 18-22 ("If a value of the field NAK_TYPE is '01', the field NAK_MAP_COUNT exists."). Based on those portions of the Seo specification, the Board concluded that Seo discloses a control frame "that includes certain fields only when NAK_TYPE is '00' and includes other fields only when NAK_TYPE is '01.'" Accordingly, the Board rejected Wi-Fi's argument that NAK_TYPE is not a type identifier field.

The Board also credited the testimony of Broadcom's expert that it would not make sense to include unnecessary fields in a message. It was entirely reasonable for the Board to read the term "exist" in Seo in that way. Substantial evidence therefore supports the Board's conclusion that Seo discloses the type identifier field feature recited in the '215 patent.

B

Wi-Fi also argues that even if Seo discloses a type identifier field, Seo does not anticipate the '215 patent, because the NAK_TYPE field in Seo is part of the S-PDU header rather than the message field, as required by the claims.

The Board rejected that argument, finding that the '215 patent does not require the type identifier field to be in any particular part of the message, and that, in any event, Seo's NAK_TYPE field was included in the message field. We agree with the Board. Nothing in the '215 patent specifies whether the type identifier field must be

located in the header or any other specific part of the message.

Wi-Fi also argues that a prior amendment to claim 1 shows that the claim is drawn to the distinction between the message body and the header. During the prosecution of the '215 patent, Wi-Fi offered the following amendment:

> said message field including <u>a type identifier field and</u> at least one of ~~a type identifier field~~, a sequence number field, a length field, and a content field.

That amendment moved the type identifier field from being one of four optional fields to being a required field, accompanied by at least one of the three remaining optional fields.

On appeal, Wi-Fi argues that the amendment "distinguish[es], among other things, fields that were included in the header of the PDU such as the 'PDU_format' field shown in the admitted prior art." That argument is meritless. The type identifier field was identified as part of the message field before and after the amendment, so the amendment had no effect on where in the packet the type identifier field had to be located. The amendment simply made that term a required feature, rather than one of the options listed in the "at least one" clause.

That understanding is confirmed by the applicants' remarks accompanying the amendment. The applicants distinguished a prior art reference by stating that amended claim 1 "provides the type identifier field and at least one of a sequence number field, a length field, and a content field." Because there is no support in the patent or the prosecution history for Wi-Fi's distinction between the presence of the type identifier field in the message field and in the header, the Board was correct to reject Wi-Fi's argument.

C

Wi-Fi next argues that the Board erred in construing the phrase "responsive to the receiving step, constructing a message field for a second data unit, said message field including a type identifier field" to mean "a field of a message that identifies the type of that message." Wi-Fi argues that the Board's construction failed to specify that a type identifier field must distinguish the type of message from a number of different message types.

We agree with the Board that Wi-Fi's interpretation does no more than restate what is already clear from the Board's construction—that a type identifier field must distinguish between different message types. Wi-Fi's real quarrel is not with the Board's claim construction, but with the Board's conclusion that Seo discloses different message types. As we have noted, the Board's conclusion that Seo discloses different message types is supported by substantial evidence.

IV

Finally, Wi-Fi challenges the Board's analysis of claim 15. That claim reads:

A method for minimizing feedback responses in an ARQ protocol, comprising the steps of:

sending a plurality of first data units over a communication link;

receiving said plurality of first data units; and

responsive to the receiving step, constructing a message field for a second data unit, said message field including a type identifier field and at least one of, a length field, a plurality of erroneous sequence number-fields, and a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associ-

ated with a respective one of said plurality of erroneous sequence number length fields.

Wi-Fi argues that claim 15, properly construed, requires that the message field contain either a "length field" or an "erroneous sequence number length field." Because Seo does not disclose length fields of either type, Wi-Fi argues that it does not anticipate claim 15.

Wi-Fi's argument is based on the structure of the "at least one of" clause. That clause requires that at least one of the following be present: "a length field," "a plurality of erroneous sequence number fields," or "a plurality of erroneous sequence number length fields." The second entry on the list, "a plurality of erroneous sequence-number fields," is not by itself a type of length field. However, the final clause of that limitation provides "each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields." That clause, Wi-Fi argues, requires that each erroneous sequence number field must be associated with an erroneous sequence number length field. For that reason, Wi-Fi contends that some sort of length field is required to meet claim 15.

Broadcom argues that the "each of said" clause requires that each of the erroneous sequence number length fields must be associated with an erroneous sequence number field, not the other way around. Therefore, in Broadcom's view, an erroneous sequence number field can stand alone, without an accompanying erroneous sequence number length field; for that reason, according to Broadcom, claim 15 does not require the presence of a length field in all cases.

Wi-Fi's is the better reading of the text of the claim. The structure of the "at least one of" limitation is best understood by stripping it to its essence: substituting A for the length field, B for the plurality of erroneous sequence number fields, and C for the erroneous sequence

16                    WI-FI ONE, LLC v. BROADCOM CORPORATION

number length fields.  So viewed, the claim by its terms would require one of A, B, or C, except that each of B must be associated with one of C.  That reading is at odds with Broadcom's, which would require each of C to be associated with one of B.

While the text of the limitation, standing alone, favors Wi-Fi's interpretation, we conclude that Wi-Fi's interpretation does not make sense in light of the specification, and thus that Broadcom's interpretation must be accepted as correct.

The specification of the '215 patent explains the properties and purpose of the length field.  The length field is used in open-ended data structures to provide information about the data structure, such as the number of lists or bitmaps that are present in a packet, or the length of the bitmaps that are used to represent errors.  *See* '215 patent, col. 2, ll. 56-62; col. 6, ll. 25-34; col. 7, ll. 52-65.  Because the length of a particular message can be fixed by the rules of the protocol, a length field is not a required feature of the invention.  *See id.*, col. 7, ll., 57-60 ("For this exemplary embodiment, each such message includes a type identifier, and the length is either fixed or indicated by a length field for each specific message.").

The specification also describes the purpose of the erroneous sequence number fields and the erroneous sequence number length fields.  The specification explains that one method for representing errors "is to include a field after each list element which determines the length of the error, instead of indicating the length of the error with an 'ending' [sequence number]."  '215 patent, col. 7, ll. 31-33.  Using that method, strings of consecutive errors are represented with an erroneous sequence number that marks the beginning of the error, followed by an erroneous sequence number length field that marks how long the error persists.  That method is generally more efficient than representing an error sequence by its starting

and ending point because "[i]n most systems, the size of the length field would then be substantially smaller than the size of the [sequence number] field." *Id.*, col. 7, ll. 33-35.

Figure 9 of the '215 patent shows how that method would represent the failed transmission of a series of packets numbered 51-77:

| Field | Field Value | | Field size |
|---|---|---|---|
| | *Decimal* | *Bits* | |
| LIST' | N/A[1] | 01 | 2 |
| LENGTH | 1 | 00001 | 5 |
| SN₁ | 51 | 000000110011 | 12 |
| L₁ | 27 | 11011 | 5 |
| ACK | N/A | 11 | 2 |
| SN | 101 | 000001100101 | 12 |

The erroneous sequence number field, $SN_1$, shows that the error sequence begins at sequence number 51. The erroneous sequence number length field, $L_1$, shows that the error extends for 27 packets, covering packets 51 through 77.

Based on those descriptions of embodiments of the invention, it is clear that an erroneous sequence number length field is useful only when it is paired with an erroneous sequence number field, while an erroneous sequence number field can be useful without an accompanying erroneous sequence number length field. Thus, an erroneous sequence number field can stand alone, but an erroneous sequence number length field cannot.

The '215 specification makes clear that an erroneous sequence number field can be used absent an erroneous sequence number length field. As examples, Figure 10

shows four erroneous sequence numbers that are used to indicate errors, and Figure 12 shows a bitmap that contains an erroneous sequence number field to indicate where the bitmap begins. Both contain erroneous sequence number fields, but not erroneous sequence number length fields, thus supporting the Board's construction of claim 15.

By contrast, an erroneous sequence number length field can indicate an error only by reference to a starting point, which would be represented by an erroneous sequence number field. The '215 patent discloses no examples of an erroneous sequence number length field without an accompanying erroneous sequence number field, for the simple reason that an erroneous sequence number length field standing alone would not convey sufficient information to determine what packets must be retransmitted.

Based on the full teaching of the specification, we conclude that Wi-Fi's proposed construction of claim 15 is unreasonable. It would allow an erroneous sequence number length field to be present without an erroneous sequence number field, which the specification indicates would not work, while requiring all erroneous sequence number fields to be associated with erroneous sequence number length fields, which the patent teaches is not necessary. The Board's construction, on the other hand, comports with what the patent teaches about the number and length fields. Even though the language of claim 15, standing alone, provides some support for Wi-Fi's interpretation, we hold that in the end the claim must be read as the Board construed it in order to be faithful to the invention disclosed in the specification.

Accordingly, because claim 15, as properly construed, does not require a length field, we hold that the Board was correct to conclude that Seo anticipates that claim.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

———————————

**WI-FI ONE, LLC,**
*Appellant*

**v.**

**BROADCOM CORPORATION,**
*Appellee*

———————————

2015-1944

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00601.

———————————

REYNA, *Circuit Judge,* concurring.

I agree with the majority that Wi-Fi One has neither shown Broadcom to be in privity with the Texas Defendants nor a real party in interest in the Texas litigation.

I write separately to convey my sense that this Court has jurisdiction to address the time bar question despite the statutory requirement that the Board's institution decisions "shall be final and nonappealable." 35 U.S.C. § 314(d). I believe that the legal distinction that exists between an "institution" decision and a final decision compels that the decision in this case is a final decision, not an institution decision. A final decision concerning the time bar set forth by 35 U.S.C. § 315(b) should be subject to review.

DISCUSSION

Our opinion in *Achates Reference Publishing v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015), holds that a time bar decision is not reviewable—a holding that I believe should be reconsidered by the *en banc* court. The § 315(b) time bar falls squarely within the exceptions acknowledged by this court in *Achates*. "[E]ven when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Achates*, 803 F.3d at 658 (*quoting Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996)).

*Achates* renders § 315(b) toothless. For example, if the Board simply chose to ignore a time bar issue altogether, there would be no avenue for appellate review. I do not believe that is what Congress intended. Rather, I believe § 314(d) was intended to ensure that institution decisions were truly preliminary, not to capture all statutory limitations on the inter partes review ("IPR") process.

Here, the statutory language explicitly allows review of the Board's final decision,[1] and in this case we are faced with an argument that the Board exceeded the scope of its statutory authority both in instituting the IPR and in issuing its final decision.

It is clear that not every decision on whether there exists legal basis to commence an IPR is an unreviewable determination by the Director to institute as contemplated under § 314(d). For example, the Supreme Court has noted that § 314(d) may not bar consideration of a constitutional question, but that it "does bar judicial review of

---

[1]    A party to an IPR "may appeal the Board's decision" to this court. 35 U.S.C. § 141(c).

the kind of mine-run claim" of whether the grounds stated by the PTO in its institution decision matched the grounds in the original petition for IPR. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2136 (2016). The Court noted that Congress did not intend for a final IPR decision to "be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review." *Id.* at 2140.

The time-bar question is not a "mine-run" claim, and it is not a mere technicality related only to a preliminary decision concerning the sufficiency of the grounds that are pleaded in the petition. *See Cuozzo*, 136 S. Ct. at 2136. Indeed, the time bar question is immaterial to the Board's initial determination of whether there is a reasonable likelihood the petitioner would prevail on the merits. Rather, the time bar deprives the Board of jurisdiction to consider whether to institute a review after one year has expired from the date a petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. 35 U.S.C. § 315(b). Compliance with the time bar is part of the statutory basis on which the final decision rests, despite the fact that the question is first evaluated at the outset of the proceeding and noticed as part of the institution decision.

*Cuozzo* explicitly notes that its holding does not "enable the agency to act outside its statutory limits" and that such "shenanigans" are properly reviewable. 136 S. Ct. at 2141–42. That admonition compels us to review allegations that the Board has ignored, or erred in the application of, the statutory time bar.

## CERTIFICATE OF SERVICE

I, Robyn Cocho being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON BUMGARDNER PC, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **October 17, 2016** counsel has authorized me to electronically file the foregoing **Combined Petition for Rehearing *En Banc* and Panel Rehearing**, with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Dominic E. Massa, Esq.
Kevin Goldman, Esq.
Zachary Piccolomini, Esq.
Katie Saxton, Esq.
WILMER CUTLER PICKERING HALE AND DORR LLLP
60 State Street
Boston, MA 02109
617-526-6000
Dominic.massa@wilmerhale.com
Kevin.goldman@wilmerhale.com
Zachary.piccolomini@wilmerhale.com
Kate.saxton@wilmerhale.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Additionally, eighteen paper copies will be filed with the Court within the time provided in the Court's rules.

/s/ Robyn Cocho
Counsel Press