Nos. 2015-1944, -1945, -1946

_____

**IN THE**
# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————

WI-FI ONE, LLC,

Appellant,

v.

BROADCOM CORPORATION,

Appellee.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, IPR2013-00601, IPR2013-00602, IPR2013-00636

———————————

BRIEF OF AMICUS CURIAE
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
IN SUPPORT OF NEITHER PARTY

———————————

MARK L. WHITAKER
   *AIPLA PRESIDENT*
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave, NW
Washington, DC 20006-1888
(202) 887-1507

ERIKA H. ARNER
JOSHUA L. GOLDBERG
DANIEL C. TUCKER
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700

February 23, 2017

*Attorneys for Amicus Curiae*

## CERTIFICATE OF INTEREST

In accordance with Fed. Cir. R. 47.4 and Fed. R. App. P. 26.1, counsel for

Amicus Curiae American Intellectual Property Law Association certifies the

following:

1.   The full name of every party or amicus represented by me is:

   American Intellectual Property Law Association.

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

   Mark L. Whitaker of the American Intellectual Property Law Association;

   Erika H. Arner, Joshua L. Goldberg, and Daniel C. Tucker of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP

Date: February 23, 2017                    /s/Erika H. Arner
                                           *Attorney for Amicus Curiae*

ii

## TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICUS CURIAE ..........................................1

SUMMARY OF ARGUMENT .........................................................................2

ARGUMENT ...................................................................................................3

I.    Sections 314 and 315 and the AIA statutory scheme confirm that the Board's compliance with the § 315(b) time bar is subject to judicial review. ...........................................................................................3

    A.    The § 315(b) time bar is a statutory limitation on the Patent Office and is thus reviewable under the APA. ....................................3

    B.    The § 314(d) non-reviewability provision does not preclude judicial review of the Board's compliance with the § 315(b) time bar. ..........................................................................................4

    C.    The AIA statutory scheme supports judicial review of the § 315(b) time bar determination. ...........................................................9

II.   *Cuozzo* confirms that judicial review is available for the Board's compliance with the § 315(b) time bar. ...................................................12

    A.    *Cuozzo* preserved judicial review where the Board exceeds its statutory limits. ..............................................................................13

    B.    *Cuozzo* is consistent with interpreting the § 314(d) ban on judicial review as applicable only to § 314 determinations. ...............15

III.  Public policy favors judicial review of the Board's § 315(b) determinations. ...........................................................................................17

    A.    This Court's review of the Board's § 315(b) determinations will bring needed consistency to the law. ..........................................18

    B.    The Patent Office has other tools to address patents challenged in time-barred IPRs. .......................................................20

    C.    A ban on judicial review of the Board's compliance with the § 315(b) time bar may have negative implications beyond § 315(b). ........................................................................................21

CONCLUSION ...............................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achates Reference Publ'g, Inc. v. Apple Inc.*,
    803 F.3d 652 (Fed. Cir. 2015) ...............................................................*passim*

*BAE Sys. Info. and Elec. Integration. v. Cheetah Omni, LLC*,
    IPR2013-00175, Paper 15 (P.T.A.B. July 3, 2013)............................................19

*Bowen v. Mich. Acad. of Family Physicians*,
    476 U.S. 667 (1986).......................................................................................12

*Callidus Software Inc. v. Versata Software Inc.*,
    CBM2013-00053, Paper 22 (P.T.A.B. April 9, 2014)......................................22

*Click-to-Call Techs., LP v. Oracle Corp.*,
    No. 2015-1242, 2016 WL 6803054 (Fed. Cir. Nov. 17, 2016)..................*passim*

*CQG, Inc. v. Trading Techs. Int'l, Inc.*,
    CBM2015-00057, Paper 13 (P.T.A.B. July 10, 2015) ......................................22

*Cuozzo Speed Techs., LLC v. Lee*,
    136 S. Ct. 2131 (2016)..............................................................................*passim*

*eBay, Inc. v. Advanced Auctions LLC*,
    IPR2014-00806, Paper 14 (P.T.A.B. Sept. 25, 2014)........................................27

*Henderson v. Shinseki*,
    562 U.S. 428 (2011)...................................................................................14, 15

*Kucana v. Holder*,
    558 U.S. 233 (2010).......................................................................................5, 8

*Lindahl v. Office of Pers. Mgmt.*,
    470 U.S. 768 (1985)...........................................................................................5

*Macuato U.S.A. v. BOS GmbH & KG*,
    IPR2012-00004, Paper 18 (P.T.A.B. Jan. 24, 2013) .........................................19

*Mach Mining, LLC v. Equal Emp't Opportunity Comm'n*,
    135 S. Ct. 1645 (2015).......................................................................................5

*In re Recreative Techs. Corp.*,
  83 F.3d 1394 (Fed. Cir. 1996) ...............................................................11

*Sebelius v. Auburn Reg'l Med. Ctr.*,
  133 S. Ct. 817 (2013).........................................................................14

*Wi-Fi One, LLC v. Broadcom Corp.*,
  837 F.d 1329, 1341 (Fed. Cir. 2016) ...........................................13, 17

**Statutes**

5 U.S.C. § 704............................................................................................2, 4

5 U.S.C. § 706...............................................................................2, 4, 13, 23

35 U.S.C. § 302 ...........................................................................................9

35 U.S.C. § 303(a) .....................................................................................20

35 U.S.C. § 305 ...........................................................................................9

35 U.S.C. § 311 .......................................................................................9, 16

35 U.S.C. § 312........................................................................................12, 15, 16

35 U.S.C. § 314..................................................................................*passim*

35 U.S.C. § 315..................................................................................*passim*

35 U.S.C. § 319 ...........................................................................................4

35 U.S.C. § 321 ...........................................................................................9

35 U.S.C. § 325.........................................................................................22

38 U.S.C. § 7266(a) ...................................................................................14

42 U.S.C. § 1395oo(a)(3)...........................................................................14

**Other Authorities**

157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) ......................................10

157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011)................................10, 11

United States Patent and Trademark Office, *Ex Parte Reexamination Filing Data* 1 (Sept. 30, 2013), https://www.uspto.gov/patents/stats/ex_parte_historical_stats_roll_up_EOY2013.pd ........................................................................21

H.R. Rep. No. 112-98 (2011) (Conf. Rep.) .................................11, 17, 18

Manual of Patent Examining Procedure § 2239 (9th ed. rev. 07.2015) ...................21

Amy L. Magas, Comment, *When Politics Interfere with Patent Reexamination*, 4 J. Marshall Rev. Intell. Prop. L. 160 (2004)..........................21

S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)......................................................12

## **STATEMENT OF INTEREST OF AMICUS CURIAE**

The American Intellectual Property Law Association ("AIPLA") is a national bar association of approximately 14,000 members engaged in private and corporate practice, in government service, and in the academic community. AIPLA's members represent a wide and diverse spectrum of individuals, companies, and institutions involved directly or indirectly in the practice of patent, trademark, copyright, and unfair competition law, as well as other fields of law affecting intellectual property. Our members represent both owners and users of intellectual property. AIPLA's mission includes providing courts with objective analysis to promote an intellectual property system that stimulates and rewards invention while balancing the public's interest in healthy competition, reasonable costs, and basic fairness.

AIPLA has no stake in any of the parties to this litigation or in the result of this case.[1] AIPLA's only interest is in seeking correct and consistent interpretation of the law as it relates to intellectual property issues.[2]

---

[1] After reasonable investigation, AIPLA believes that (a) no member of its Board or Amicus Committee who voted to prepare this brief, or any attorney in the law firm or corporation of such a member, represents a party to this litigation in this matter, (b) no representative of any party to this litigation participated in the authorship of this brief, and (c) no one other than AIPLA, its members who authored this brief, and their law firms or employees, made a monetary contribution to the preparation or submission of this brief.

[2] The Court granted permission to file amicus briefs without consent of the parties by order dated January 4, 2017.

1

## SUMMARY OF ARGUMENT

The Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 100 *et seq.*, limits the Board's authority to institute and conduct inter partes review ("IPR"). Section 315(b) is one limit, prohibiting the Board from instituting review based on a petition filed more than one year after the petitioner, real party-in-interest, or privy of the petitioner is sued for infringement. The Board's compliance with the § 315(b) time bar is subject to judicial review under the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 704, 706. Judicial review of the Board's compliance with § 315 is not barred by § 314(d), which precludes review of the Board's institution determinations under § 314. This limited scope of the § 314(d) non-reviewability provision is consistent with the AIA statutory scheme and the Supreme Court's decision in *Cuozzo*.

Strong policy reasons support judicial review of the Board's compliance with § 315(b). The Board has inconsistently applied the § 315 time bar, threatening the balance struck by Congress' statutory scheme. This Court's review of the Board's § 315 time-bar decisions would bring needed consistency to this area of the law which has thus far resulted in uncertainty for patent owners, petitioners, the public, and the patent system as a whole.

The *en banc* Court should therefore overrule *Achates* and hold that the Board's compliance with the § 315(b) time bar is subject to judicial review.

**ARGUMENT**

I.    **Sections 314 and 315 and the AIA statutory scheme confirm that the Board's compliance with the § 315(b) time bar is subject to judicial review.**

A.    **The § 315(b) time bar is a statutory limitation on the Patent Office and is thus reviewable under the APA.**

Section 315(b), on its face, limits the Board's power to institute proceedings: "An inter partes review *may not be instituted* if . . . ." 35 U.S.C. § 315(b) (emphasis added). This is not a filing deadline for petitioners; rather it is a statutory limitation on Board actions. In her concurring opinion in *Click-to-Call*, Judge O'Malley made the decisive point in her interpretation of § 315(b): "Congress did not address the statute to petitioners . . . . Instead, the statute is addressed to the PTO . . . ." *Click-to-Call Techs., LP v. Oracle Corp.*, No. 2015-1242, 2016 WL 6803054, at *3 (Fed. Cir. Nov. 17, 2016). *Achates* was incorrectly premised on the reasoning that "the § 315(b) time bar does not impact the Board's authority to invalidate a patent claim—it only bars particular petitioners from challenging the claim." *Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652, 657 (Fed. Cir. 2015). On the contrary, § 315 limits the Board's authority to institute proceedings and invalidate claims. *See Click-to-Call,* 2016 WL 6803054, at *3 (O'Malley, J., concurring) ("[T]he plain language of the statute contradict[s] a key underpinning of our reasoning in *Achates*.").

3

The question can be framed this way: *who violates* § 315(b) when a petition is filed, and instituted, after the one-year statutory period? Not the petitioner—§ 315(b) does not prohibit a petitioner from filing a petition after the one-year period. Instead, the Office violates the statute by instituting review based on that petition. The § 315(b) time bar is a quintessential statutory limitation on the Board's authority.

As a statutory limitation, the § 315(b) time bar is reviewable under the APA, which empowers courts to set aside agency action that is "in excess of its statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(c). Although the Board makes the § 315(b) determination at a preliminary stage, the APA provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.* § 704. The Board's final written decision is the final agency action in an IPR, which is reviewable by this Court under 35 U.S.C. § 319, and that review may include the Board's compliance with the § 315(b) time bar determination.

**B.      The § 314(d) non-reviewability provision does not preclude judicial review of the Board's compliance with the § 315(b) time bar.**

The section 314(d) non-reviewability provision—"[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable"—does not prevent this Court from reviewing the Board's

4

compliance with the § 315(b) time bar. Section 314(d) must be analyzed against the presumption that agency action is subject to judicial review. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016); *Click-to-Call*, 2016 WL 6803054, at *5 (Taranto, J., concurring). This default rule is not easily overcome:

> Congress rarely intends to prevent courts from enforcing its directives to federal agencies. For that reason, this Court applies a "strong presumption" favoring judicial review of administrative action. That presumption is rebuttable: It fails when a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct. But the agency bears a "heavy burden" in attempting to show that Congress "prohibit[ed] all judicial review" of the agency's compliance with a legislative mandate.

*Mach Mining, LLC v. Equal Emp't Opportunity Comm'n*, 135 S. Ct. 1645, 1651 (2015) (citations omitted).

In particular, the presumption of judicial review is not overcome by a statute that "plausibly can be read as imposing an absolute bar to judicial review" if there is another reading of that statute that would permit review. *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779 (1985). Thus, if the statute is even "reasonably susceptible" to an interpretation that preserves judicial review, it should be given that interpretation. *Kucana v. Holder*, 558 U.S. 233, 251 (2010).

Here there is a reasonable—and correct—interpretation of § 314(d) that preserves judicial review of the § 315(b) time bar issue. Section 314(d) states that "[t]he determination by the Director whether to institute an inter partes review

*under this section* shall be final and nonappealable." 35 U.S.C. § 314(d) (emphasis added). Thus, only determinations made "under this section" (i.e., under § 314) are not reviewable.

The phrase "this section" in the larger phrase "under this section" refers to § 314, not to any other sections such as § 315. It does not refer merely to a subsection or to multiple sections. The statute makes this clear by consistently distinguishing between a subsection, a section, and a chapter. For example, § 314 uses the phrases "under subsection (a)," "under section 313," "under this section," and "under this chapter." These words mean what they say. "Subsection (a)" refers to § 314(a). "Section 313" refers to § 313. "This section"—when used in § 314— refers to § 314. And "this chapter" refers to Chapter 31 of Title 35, which includes §§ 311-319. Congress could have used different language if it intended § 314(d) to apply to provisions beyond § 314.

Furthermore, the phrase "under this section" modifies "determination" under § 314. Section 314(d) states that "the determination . . . under this section" is final and nonappealable. Reading § 314 as a whole confirms that earlier subsections in § 314 provide an antecedent basis for the "determination" in § 314(d) and reinforces the conclusion that "under this section" refers to the Director's determination in § 314:

6

35 U.S.C. § 314 — Institution of inter partes review

(a) Threshold.—

The Director may not authorize an inter partes review to be instituted unless the Director *determines* that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

(b) Timing.—The Director shall *determine* whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 . . . .

(c) Notice.—

The Director shall notify the petitioner and patent owner, in writing, of the Director's *determination under subsection (a)*, and shall make such notice available to the public as soon as is practicable. Such notice shall include the date on which the review shall commence.

(d) No Appeal.—

*The determination* by the Director whether to institute an inter partes review *under this section* shall be final and nonappealable.

35 U.S.C. § 314 (emphases added). The "determination" being made under § 314 is introduced in § 314(a), then repeated or referenced in each subsequent subsection. And while § 314(c) uses slightly different language ("determination under subsection (a)"), the initial identification of the determination in subsection (a) and the continued reference to that determination clearly refers back to the same determination. This "determination"—set out in § 314(a) and carried

7

through each subsection of § 314—is not reviewable under § 314(d). All other Board determinations are reviewable. Section 314(d) on its face does not apply to them.

The *Achates* decision concluded that § 314(d) proscribes review of the Board's institution determination based on its assessment of the § 315(b) time bar because the phrase "under this section" only modifies "institute" and not "determination." *Achates*, 803 F.3d at 658. However, the Court did not explain why that reading of the provision overcomes the presumption of judicial review as the only possible reading, or why it is determinative of the question.

*Achates* reached the wrong conclusion. Section 314(c) references a "determination under subsection (a)," suggesting that "under this section" in § 314(d) also modifies the same determination referenced throughout every subsection of § 314. But even if "under this section" modified "institute" as *Achates* concluded, the end result is the same because the "determination" is a "determination by the Director whether to institute." Everything in that sentence— including "institute"—traces back to the determination.

In any event, where two plausible interpretations exist—one that bars judicial review (*Achates*) and one that does not (set forth above)—the court should default to the interpretation that preserves judicial review. *Kucana*, 558 U.S. at 251; *Click-to-Call*, 2016 WL 6803054, at *5 (Taranto, J., concurring). The

interpretation of the phrase "under this section" in § 314(d) presented above is rooted in the text and structure of § 314, and it is at least plausible. The court should therefore adopt this interpretation and preserve the reviewability of the Board's § 315(b) time bar determination.

### C.    The AIA statutory scheme supports judicial review of the § 315(b) time bar determination.

The statutory scheme established by the AIA for administrative challenges to patents includes a variety of mechanisms, each with its own particular requirements and limitations. Congress struck a carefully balanced set of procedures to account for the diverse interests affected.

One mechanism—the IPR—is limited to prior art challenges, 35 U.S.C. § 311, but is available any time during the life of the patent, subject to § 315. In covered business method review ("CBM") and post grant review ("PGR"), a patent can be challenged on a broader set of invalidity grounds, 35 U.S.C. § 321(b), but subject to other restrictions, e.g., that a patent is a covered business method patent, AIA § 18, or that a PGR petition is filed within nine months of issuance, 35 U.S.C. § 321(c). Another mechanism, ex parte reexamination, is available to anyone (even the Patent Office) at any time, 35 U.S.C. § 302, but unlike inter partes, post grant, and covered business method reviews, reexamination is non-adversarial, 35 U.S.C. § 305.

When it created the IPR procedure, Congress carefully limited the Board's authority to institute the proceeding based on when petitions are filed. As Congress noted, §§ 315(a) and 315(b) together "impose time limits . . . when inter partes . . . review [is] sought in relation to litigation." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). This differentiates an IPR from an ex parte reexamination, which has no time limit. The IPR proceeding incentivizes petitioners to challenge patents early when there is co-pending litigation, allowing parties and the courts to save resources when litigation proceedings are stayed in view of the IPRs.

In § 315(a), Congress prohibited institution of an IPR where the petitioner (or real party in interest) had previously filed a declaratory judgment action, and required any subsequently filed declaratory judgment action to be stayed. 35 U.S.C. § 315(a). This provision is designed to reduce serial attacks on the patent, while preserving the accused infringer's ability to select its forum if filing first. *See* 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl).

In § 315(b), Congress also prohibited institution if the petition was filed more than one year after a related infringement action. 35 U.S.C. § 315(b). This ensures that any IPR challenge happens without unnecessary delay. Congress chose the one-year deadline (instead of an originally proposed six-month deadline) in order to balance interests between reducing unnecessary delay for patent owners

10

and ensuring that accused infringers have enough time to mount a successful challenge. *See* 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl).

Moreover, the § 315(b) time bar achieves an important Congressional goal— "quiet[ing] title to patent owners to ensure continued investment resources." H.R. Rep. No. 112-98, at 48 (2011) (Conf. Rep.). It does so by ensuring IPRs are not used as a "tool[] for harassment" by "repeated . . . administrative attacks on the validity of a patent," *id.*, which could indefinitely prevent patent owners from enforcing their rights.

In *Click-to-Call*, Judge Taranto described these limitations as the IPR regime's requirement of a "statutorily proper petitioner." 2016 WL 6803054, at *6 (Taranto, J., concurring). This requirement balances both private and institutional interests. *Id.* It ensures that the Patent Office has broad authority to revisit patent grants, while simultaneously limiting IPR to oppositional proceedings involving a petitioner who has not been sued more than one year prior to the petition filing. This scheme also has the important result of establishing some certainty for litigants, the Patent Office, and the public by providing a timeline within which a patent must be challenged after it is asserted. "The policy balance reflected in the . . . statute's provisions can not be unilaterally realigned by the agency." *In re Recreative Techs. Corp.*, 83 F.3d 1394, 1398 (Fed. Cir. 1996).

It would be unusual for Congress to set up these restrictions and simultaneously deprive this Court of the ability to ensure the Board's compliance with them. Congress does not operate that way:

> Very rarely do statutes withhold judicial review. It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board.

*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 671 (1986) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). This is not one of those rare instances—Congress did not give the Board carte blanche to rebalance the policy considerations it made when constructing the AIA.

## II.   *Cuozzo* confirms that judicial review is available for the Board's compliance with the § 315(b) time bar.

The Supreme Court's decision in *Cuozzo* supports the conclusion that the Board's § 315(b) time bar determination is reviewable. *Cuozzo* expressly recognized that judicial review is available where the Board acts in excess of its statutory limits, as it does when it violates the § 315(b) time bar. Moreover, the Supreme Court's determination that the § 312 pleading issue in *Cuozzo* was effectively a § 314 challenge aligns *Cuozzo* with an interpretation of § 314(d) as only prohibiting review of the Board's determination "under [§ 314]."

### A. *Cuozzo* preserved judicial review where the Board exceeds its statutory limits.

In *Cuozzo*, the Supreme Court stated that the § 314(d) non-reviewability provision does not "enable the agency to act outside its statutory limits." 136 S. Ct. at 2141. As discussed above in Section I.A, the § 315(b) time bar is a statutory limitation on the Board's authority. Thus under *Cuozzo*, § 314(d) does not shield the Board from judicial review when it violates § 315(b) by conducting a time-barred IPR proceeding. *Achates* should therefore be overruled.

At the same time, it could be argued that *Cuozzo* muddies the waters somewhat by also referring to acts "in excess of statutory jurisdiction." 136 S. Ct. at 2142. This has spawned debate over whether the § 315(b) time bar is a matter of Board "jurisdiction." *Compare Achates*, 803 F.3d at 657-58 (§ 315(b) is a non-jurisdictional filing deadline) *with Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.d 1329, 1341 (Fed. Cir. 2016) (Reyna, J., concurring) ("the time bar deprives the Board of jurisdiction . . ."); *Click-to-Call*, 2016 WL 6803054, at *7-8 (Taranto, J., concurring).

That question need not be resolved in this case, however, because judicial review of the Board's compliance with the § 315(b) time bar is equally available under the presumption of judicial review and under the APA proscription against ultra vires action by the Board in excess of its "statutory . . . limitations." 5 U.S.C.

13

§ 706(2)(C). As discussed above, *Cuozzo* expressly acknowledges the possibility of review if "the agency [acts] outside its statutory limits." 136 S. Ct. at 2141.[3]

In any event, § 315(b) is arguably jurisdictional and distinguishable from the claim processing rules in the *Henderson* and *Auburn Regional* cases cited by *Achates* as being non-jurisdictional. *See Achates*, 803 F.3d at 658. The statutes in *Henderson* and *Auburn Regional* were filing deadlines that placed limits on the party seeking relief, not on the agency. For example, the statute in *Auburn Regional* instructed that a service provider "may obtain a hearing" if "such provider files a request for a hearing within 180 days after notice of the intermediary's final determination." *Auburn Reg'l*, 133 S. Ct. at 824 (quoting 42 U.S.C. § 1395oo(a)(3)). Similarly, the statute in *Henderson* instructed that "a person adversely affected by [a final decision] shall file a notice of appeal with the Court within 120 days . . . ." *Henderson*, 562 U.S. at 439 (quoting 38 U.S.C. § 7266(a)). In contrast, § 315(b) limits the Board's authority to institute an IPR petition, not the petitioner's ability to file one. *See supra* Section I.A. Moreover,

---

[3] The statute's jurisdictional status may have consequences generally, but not for the *en banc* question. For example, whether the statute is jurisdictional would affect whether the Board could alter or ignore the time bar. *See, e.g.*, *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013); *Henderson v. Shinseki*, 562 U.S. 428, 434-36 (2011). These are different inquiries from the one at hand, which is whether the court can *review* the Board's application of the time bar.

14

unlike § 315(b), the provision in *Henderson* was part of a statutory scheme designed to help Veterans through a nonadversarial system where the Veterans are afforded as many procedural advantages as practicable. *Henderson*, 562 U.S. at 440-41. In contrast, IPRs are adversarial proceedings akin to district court litigation. Section 315(b) is thus nothing like the claim processing rules in these cases.

This interpretation of § 315(b) permitting judicial review for statutory compliance is thus consistent with *Cuozzo*'s statement that review is available when the Board exceeds its statutory limits. While § 315(b) need not be a "jurisdictional" limit on the Patent Office as that term was discussed in cases like *Auburn Regional* and *Henderson*, it meets that standard too.

**B.    *Cuozzo* is consistent with interpreting the § 314(d) ban on judicial review as applicable only to § 314 determinations.**

Although the challenge in *Cuozzo* was technically directed to the pleading requirements of § 312, the Supreme Court nonetheless applied the § 314(d) ban on judicial review, finding the § 312 challenge to be "little more than a challenge to the Patent Office's conclusion, under § 314(a), that the 'information presented in the petition' warranted review." 136 S. Ct. at 2142. This conclusion is consistent with the statutory interpretation that "under this section" in § 314(d) applies to the Patent Office's "determination" or—as the Court stated—"conclusion" under § 314.

15

The Court's characterization of the § 312 pleading requirement as effectively the same as the § 314(a) reasonable likelihood determination makes sense in two ways, neither of which applies to the § 315(b) time bar inquiry. First, as a textual matter, § 314(a) and § 312 are intertwined. Section 314(a) sets forth the reasonable likelihood standard based on "information presented in the petition filed under section 311." And § 312 defines the "Requirements . . . [of a] petition filed under section 311." In other words, the § 314(a) reasonable likelihood inquiry is based on a petition filed according to § 312's pleading requirements. Section 312's pleading requirements are thus wrapped up in the § 314(a) reasonable likelihood determination that carries throughout § 314.

The § 315(b) time bar inquiry does not share this same textual connection. Although § 314 references § 311 (and thus by implication § 312), it does not reference § 315. Section 315 also does not reference § 311, like § 312 does. While § 311 states "Subject to the provisions of this chapter, a person . . . may file with the office a petition . . . [,]" this broad reference to the *entire chapter* is a far cry from the express textual connection that ties § 312 to § 314.

Second, as a practical matter, the scope of the inquiries under the § 312(a)(3) pleading requirement and the § 314(a) reasonable likelihood inquiry are related. Whether the petition presents the grounds with sufficient particularity, § 312(a)(3), is directly related to whether the petitioner is likely to prevail, § 314(a). Again, the

16

§ 315(b) time bar inquiry is different. As Judge Reyna observed in his concurring opinion in the vacated panel opinion in this case, "the time bar question is immaterial to the Board's initial determination of whether there is a reasonable likelihood the petitioner would prevail on the merits." *Wi-Fi One*, 837 F.3d at 1341 (Reyna, J., concurring); *see also Click-to-Call*, 2016 WL 6803054, at *7 (Taranto, J., concurring) ("A § 315(b) determination is not like the kind of initial determination at issue [in *Cuozzo*]—that there is a reasonable likelihood that the claims are unpatentable on the grounds asserted.") (internal quotations omitted).

Limiting the § 314(d) non-reviewability provision to the determinations under § 314 only, and thus allowing judicial review of the Board's § 315(b) time bar determination, is consistent with *Cuozzo*.

## III.    Public policy favors judicial review of the Board's § 315(b) determinations.

Several policy considerations favor judicial review of the Board's compliance with the § 315(b) time bar. Judicial review will bring needed consistency and guidance to this area of the law. Increased clarity is critical to protect both Congress' statutory scheme and public and private interests. Otherwise, the § 315(b) time bar will not achieve Congress' goal of "quiet[ing] title to patent owners to ensure continued investment resources." H.R. Rep. No. 112-98, at 48 (2011) (Conf. Rep.). Rather than using IPRs as a "tool[] for harassment" by "repeated . . . administrative attacks on the validity of a patent,"

*id.*, which could indefinitely prevent patent owners from enforcing their rights, challengers and the Patent Office should instead use ex parte reexamination, which Congress left intact when passing the AIA. Finally, whether judicial review is available in this case may have implications for other statutory provisions, and it is therefore important for this Court to signal that these other statutory provisions will be protected from inconsistent application.

### A.    This Court's review of the Board's § 315(b) determinations will bring needed consistency to the law.

Through a series of non-precedential decisions, the Board has inconsistently applied the § 315(b) time bar. Judicial review of these decisions will bring needed consistency to the law by providing precedential guideposts for the Board to follow. Such consistency is critical to protect the interests and expectations of litigants and the public.

The inconsistency of the Board's application of the § 315(b) time bar spans multiple issues. Sometimes this inconsistency relates to the interpretation of the "petitioner, real party in interest, or privy of the petitioner" language of § 315(b) at issue in this case and in *Achates*. Other times, the inconsistency relates to the "served with a complaint" language of § 315(b) at issue in *Click-to-Call*. While the former may be difficult to spot given the highly fact-dependent nature of "real party in interest" and "privy" determinations, the latter is often readily apparent.

18

In attempting to apply § 315(b), the Board sometimes institutes an IPR despite the fact that the petition was filed more than one year after the date on which the complaint was served. *E.g.*, *Macauto U.S.A. v. BOS GmbH & KG*, IPR2012-00004, Paper 18 at 15-16 (P.T.A.B. Jan. 24, 2013); *BAE Systems Information and Electronic Systems Integration, Inc. v. Cheetah Omni, LLC*, IPR2013-00175, Paper 15 at 3-4 (P.T.A.B. Jul. 3, 2013).

For example, in *Macauto*, the Board instituted an IPR after concluding the dismissal without prejudice of an earlier action against the alleged real party in interest or privy of the petitioner nullified the effect of the alleged service of the complaint. *Macauto*, Paper 18 at 15-16. And in *BAE Systems*, the Board similarly instituted an IPR after concluding the dismissal without prejudice of an earlier action against the petitioner nullified the effect of the alleged service of the complaint. *BAE Systems*, Paper 15 at 3-4.

Other times, according to the Board, the later dismissal without prejudice changes nothing. *See, e.g.*, *eBay, Inc. v. Advanced Auctions LLC*, IPR2014-00806, Paper 14 at 7-8 (P.T.A.B. Sept. 25, 2014). For example, in *eBay*, the Board denied institution of an IPR despite the dismissal without prejudice of an earlier action against the petitioner because following the dismissal, the parties were not left in the same legal position as if the underlying complaint had never been served. *Id*.

19

The result is a tangle of non-precedential Board decisions rendering the Board's treatment of the "served with a complaint" language highly unpredictable and its application of § 315(b) unnecessarily complex. This creates uncertainty for patent owners, petitioners, and the public, and threatens Congress' statutory scheme. Judicial review of the Board's compliance with the § 315(b) time bar will bring uniformity to the law and provide predictability to litigants and the public.

### B.    The Patent Office has other tools to address patents challenged in time-barred IPRs.

Judicial review of, and adherence to, the § 315(b) time bar will not leave the Patent Office without recourse to review patents challenged in time-barred petitions. The Office has other options. If the Board lacks the authority to institute an IPR of a patent under § 315(b) but believes there may be a problem with the patent, the Board should refer the matter to the Director of the Patent Office for reexamination to consider a "substantial new question of patentability." 35 U.S.C. § 303(a). "On his own initiative, and any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of section 301 or 302." *Id.* In enacting the AIA, Congress did not remove the Director's power to initiate reexaminations sua sponte to address bad patents, and the Director could thus do so if she agreed with the Board that there may be a problem with the challenged patent.

Although the Patent Office characterizes Director-initiated reexaminations as "rare," Manual of Patent Examining Procedure ("MPEP") § 2239 (9th ed. rev. 07.2015), they are not a mere theoretical possibility. The Director has initiated at least 167 reexaminations sua sponte since 1981. United States Patent and Trademark Office, *Ex Parte Reexamination Filing Data* 1 (Sept. 30, 2013), https://www.uspto.gov/patents/stats/ex_parte_historical_stats_roll_up_EOY2013.pdf. Some of these reexaminations have involved patents in litigation, and the Director has initiated them in response to the actions of individuals outside the Patent Office. Amy L. Magas, Comment, *When Politics Interfere with Patent Reexamination*, 4 J. Marshall Rev. Intell. Prop. L. 160, 169-72 (2004).

There is no reason the Director could not similarly initiate reexaminations based on art brought to her attention through time-barred IPRs. And that is what she should do.

**C.     A ban on judicial review of the Board's compliance with the § 315(b) time bar may have negative implications beyond § 315(b).**

The Court should review the Board's application of the § 315(b) time bar limitation not only to protect the limitation itself, but also to signal that it will protect other limitations in Congress' statutory scheme.

For example, the timing for the IPR time bar under § 315(b) is based on when the petitioner was "served with a complaint" alleging infringement in district

21

court. A counterpart provision in § 325(a)(1) imposes a PGR/CBM time bar, which begins when the petitioner "file[s] a civil action challenging the validity of a claim of the patent." Inconsistent non-precedential Board decisions addressing the operation of the time bar for instituting IPRs have spawned inconsistent non-precedential Board decisions addressing the operation of the time bar for instituting PGRs/CBMs, leading to uncertainty about the limits of the Board's authority to institute multiple types of AIA trials. *Compare Callidus Software Inc. v. Versata Software Inc.*, CBM2013-00053, Paper 22 at 4 (P.T.A.B. Apr. 9, 2014) (denying request for rehearing of institution of CBM after concluding dismissal without prejudice of earlier declaratory judgment action rendered the earlier declaratory judgment action a nullity that never existed in the context of § 325(a)(1)) *with CQG, Inc. v. Trading Techs. Int'l, Inc.*, CBM2015-00057, Paper 13 at 9 (P.T.A.B. Jul. 10, 2015) (denying institution of CBM despite dismissal without prejudice of earlier action challenging the patent because following the dismissal, the legal positions of petitioner effectively continued in another action).

Judicial review of the Board's application of § 315(b) is important because it will signal to patent owners, petitioners, and the public that inconsistent application of statutory limitations for addressing the validity of patents in other AIA proceedings will not be tolerated. The *Cuozzo* majority expressly stated that its decision does not categorically preclude due process challenges arising out of a

22

petition that gives insufficient notice, or ultra vires challenges where the agency acts outside of its statutory authority. "Such 'shenanigans' may be properly reviewable in the context of § 319 and under the Administrative Procedure Act," according to the Court. *Cuozzo*, 136 S. Ct. at 2141-42 (citing 5 U.S.C. §§ 706(2)(A)-(D)). This Court can thus review the Board's application of the § 315(b) time bar limitation. It should do so to protect the balance struck by Congress between guarding the interests of stakeholders and maintaining the integrity of the patent system as a whole.

## CONCLUSION

For the foregoing reasons, the Court should overrule *Achates* and hold that judicial review is available for a patent owner to challenge the PTO's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b) governing the filing of petitions for inter partes review.

Date: February 23, 2017

Respectfully submitted,

/s/Erika H. Arner

MARK L. WHITAKER
*AIPLA PRESIDENT*
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave, NW
Washington, DC 20006-1888
(202) 887-1507

ERIKA H. ARNER
JOSHUA L. GOLDBERG
DANIEL C. TUCKER
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700

*Attorneys for Amicus Curiae*

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 23, 2017, this BRIEF OF AMICUS CURIAE AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF NEITHER PARTY was filed electronically using the CM/ECF system and served via the CM/ECF system on registered counsel.

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the BRIEF OF AMICUS CURIAE AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF NEITHER PARTY will be filed in accordance with the Federal Circuit Rules.

/s/Erika H. Arner

ERIKA H. ARNER
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700

25

## **CERTIFICATE OF COMPLIANCE**

I certify that, based on the processing software used to create this BRIEF OF AMICUS CURIAE AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF NEITHER PARTY, the word count is 5,436 words, excluding those portions exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), and therefore complies with the type-volume limitation set forth in Fed. R. App. P. 29(a)(5).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font, Times New Roman.

February 23, 2017

Respectfully submitted,

/s/Erika H. Arner
Erika H. Arner