**Nos. 2015-1944, -1945, -1946**

## IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WI–FI ONE, LLC,

Plaintiff-Appellant,

v.

BROADCOM CORPORATION,

Defendant-Appellee,

MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,

Intervenor.

On Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board

## EN BANC BRIEF FOR INTERVENOR MICHELLE K. LEE, DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE

*Of Counsel:*

NATHAN K. KELLEY
  *Solicitor*

THOMAS W. KRAUSE
  *Deputy Solicitor*

BENJAMIN T. HICKMAN
KAKOLI CAPRIHAN
FRANCES M. LYNCH
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and Trademark Office*
  *Mail Stop 8, P.O. Box 1450*
  *Alexandria, VA 22313*

JOYCE R. BRANDA
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
NICOLAS Y. RILEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7231*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4814*

**TABLE OF CONTENTS**

<u>**Page**</u>

STATEMENT OF RELATED CASES

INTRODUCTION ..................................................................................................1

STATEMENT OF THE ISSUE...........................................................................2

STATEMENT OF THE CASE...........................................................................2

    A.    Statutory Background...........................................................................2

    B.    Factual and Procedural History .........................................................5

        1.    Proceedings before the USPTO .........................................5

        2.    Proceedings in this Court...................................................6

SUMMARY OF ARGUMENT............................................................................8

STANDARD OF REVIEW ............................................................................... 11

ARGUMENT ...................................................................................................... 12

I.    THE USPTO'S DETERMINATION THAT BROADCOM
    SATISFIED THE REQUIREMENTS OF SECTION 315(b) IS
    FINAL AND NONAPPEALABLE. ................................................... 12

    A.    The plain language of the Patent Act precludes judicial review of
        questions relevant only to the USPTO's decision to institute an
        inter partes review..............................................................................13

    B.    *Cuozzo* confirms that Congress precluded judicial review of
        statutory questions relevant only to the USPTO's decision to
        institute an inter partes review. ..................................................17

    C.    Section 315(b) exemplifies a statute relevant only to the USPTO's
        decision whether to institute an inter partes review. ...............20

II. WI-FI ONE MISUNDERSTANDS THE RELEVANT PRINCIPLES OF JUDICIAL REVIEW AND MISINTERPRETS THE SUPREME COURT'S DECISION IN *CUOZZO*. .................................................... 23

    A.    Wi-Fi One misunderstands the governing principles of judicial review of agency action. ................................................................23

    B.    Wi-Fi One misinterprets *Cuozzo*. ................................................30

    C.    Section 315 does not create unique or essential limitations on inter partes review that specially warrant judicial scrutiny. ................................40

CONCLUSION ......................................................................................... 44

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ..................................................................................26

*Achates Reference Publ'g, Inc. v. Apple Inc.*,
   803 F.3d 652 (Fed. Cir. 2015) ...........................................................*passim*

*Automated Merch. Sys., Inc. v. Lee*,
   782 F.3d 1376 (Fed. Cir. 2015) ............................................... 13, 35-36

*Block v. Community Nutrition Inst.*,
   467 U.S. 340 (1984) ............................................... 10, 25, 26, 27

*Bowen v. Michigan Acad. of Family Physicians*,
   476 U.S. 667 (1986) ..................................................................................28

*Click-to-Call Techs., LP v. Oracle Corp.*,
   No. 2015-1242, 2016 WL 6803054 (Fed. Cir. Nov. 17, 2016) .....................................41

*Cuozzo Speed Techs., LLC v. Lee*,
   136 S. Ct. 2131 (2016) ...........................................................*passim*

*Dalton v. Specter*,
   511 U.S. 462 (1994) ...........................................................13, 23, 28

*Ericsson Inc. v. D-Link Sys., Inc.*,
   No. 10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013),
   *aff'd in part, vacated in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) .........................5

*FTC v. Standard Oil Co.*,
   449 U.S. 232 (1980) ............................................................... 13, 14

*Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*,
   838 F.3d 1236 (Fed. Cir. 2016) ...........................................................12, 33, 42

*Johnson v. Robison*,
   415 U.S. 361 (1974) ...............................................................20, 37

*Lindahl v. Office of Pers. Mgmt.*,
   470 U.S. 768 (1985) ............................................................... 19, 29

*Litecubes, LLC v. Northern Light Prods., Inc.*,
   523 F.3d 1353 (Fed. Cir. 2008) ......................................................................11

*Mach Mining, LLC v. EEOC*,
   135 S. Ct. 1645 (2015) ....................................................................................26

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
   812 F.3d 1284 (Fed. Cir. 2015) ......................................................................37

*NLRB v. Cheney Cal. Lumber Co.*,
   327 U.S. 385 (1946) .........................................................................................23

*In re Telefonaktiebolaget LM Ericsson*,
   564 F. App'x 585 (Fed. Cir. 2014) ............................................................. 6, 40

*Traynor v. Turnage*,
   485 U.S. 535 (1988) .................................................................................. 20, 32

*Versata Dev. Group, Inc. v. SAP America, Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2510 (2016)................38

*Webster v. Doe*,
   486 U.S. 592 (1988) .........................................................................................37

**U.S. Constitution:**

Art. III, § 1....................................................................................................23

**Statutes:**

Act of Dec. 12, 1980, Pub L. No. 96-517, 94 Stat. 3015
   (codified as amended at 35 U.S.C. §§ 301-307) ..........................................2

Administrative Procedure Act.......................................................................24
   5 U.S.C. § 701(a)(1) .......................................................................................24
   5 U.S.C. § 702.................................................................................................24
   5 U.S.C. § 704........................................................................................13, 14, 29

America Invents Act, Pub L. No. 112-29,
  125 Stat. 284 (codified as amended at 35 U.S.C. § 311 *et seq.*) ........................................3
    35 U.S.C. §§ 311-319 ................................................................................3
    35 U.S.C. § 312(a) (2006) ........................................................................35
    35 U.S.C. § 312(a) ...................................................................................15
    35 U.S.C. § 312(a)(3) ...................................................................7, 18, 34
    35 U.S.C. § 312(c) (2006) .................................................................10, 35
    35 U.S.C. § 313 ..........................................................................................4
    35 U.S.C. § 314 ........................................................................................15
    35 U.S.C. § 314(a) ...........................................................................3, 4, 15
    35 U.S.C. § 314(b) ................................................................................4, 22
    35 U.S.C. § 314(d) .............................................................................*passim*
    35 U.S.C. § 315 ........................................................................................41
    35 U.S.C. § 315(a) ...................................................................................15
    35 U.S.C. § 315(a)(1) ..............................................................................41
    35 U.S.C. § 315(a)(2) ..............................................................................41
    35 U.S.C. § 315(b) .............................................................................*passim*
    35 U.S.C. § 315(c) .............................................................................41, 42
    35 U.S.C. § 315(d) ..................................................................................41
    35 U.S.C. § 315(e) ..................................................................................41
    35 U.S.C. § 316(a)(11) ..............................................................................4
    35 U.S.C. § 317 (2006) ...........................................................................35
    35 U.S.C. § 317(a) .............................................................................18, 43
    35 U.S.C. § 318(a) .........................................................................4, 14, 15
    35 U.S.C. § 319 ...................................................................................*passim*

5 U.S.C. § 8128(b)(2) .....................................................................................24

8 U.S.C. § 1158(a)(3) .....................................................................................24

8 U.S.C. § 1252(a)(2) .....................................................................................24

10 U.S.C. § 2735 ............................................................................................24

12 U.S.C. § 4617(b)(5)(E) ..............................................................................24

12 U.S.C. § 4617(b)(11)(D) ............................................................................24

15 U.S.C. § 1071(a) ........................................................................................13

28 U.S.C. § 1651 ............................................................................................39

35 U.S.C. § 112 ..............................................................................................38

35 U.S.C. § 141(a) ............................................................................................................13

35 U.S.C. § 141(b)............................................................................................................13

35 U.S.C. § 141(c) ............................................................................... 4, 8, 14, 26, 28

35 U.S.C. § 303(a) ............................................................................................................17

38 U.S.C. § 511................................................................................................................24

42 U.S.C. § 1395*l*(t)(12)..................................................................................................25

42 U.S.C. § 1395*l*(t)(21)(E) ...........................................................................................25

42 U.S.C. § 1395*l*(u)(4)(E) ............................................................................................25

42 U.S.C. § 1395*l*(x)(4) ..................................................................................................25

42 U.S.C. § 1395w-4(i)(1) ..........................................................................................24-25

**Rule:**

Fed. R. App. P. 21 ...........................................................................................................39

**Regulation:**

37 C.F.R § 42.4(a) ............................................................................................................3

**Legislative Material:**

H.R. Rep. No. 98, pt. 1, 112th Cong., 1st Sess. (2011).......................................................3

**Other Authority:**

157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) .................................................................3

## STATEMENT OF RELATED CASES

The following three cases have been consolidated for the purposes of this en banc proceeding: *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1944; *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1945; *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1946. All three cases were decided by the same panel (Dyk, Bryson, and Reyna, JJ.) on September 16, 2016. The panel opinions appear at: *Wi-Fi One*, 837 F.3d 1329 (Fed. Cir. 2016) (No. 2015-1944); *Wi-Fi One*, 2016 WL 4933344 (Fed. Cir. 2016) (per curiam) (No. 2015-1945); and *Wi-Fi One*, 2016 WL 4933418 (Fed. Cir. 2016) (per curiam) (No. 2015-1946).

In 2014, while the inter partes review proceedings in these cases were still pending, Wi-Fi One's predecessor in interest filed a petition for a writ of mandamus asking this Court to direct the Patent Trial and Appeal Board to permit discovery on certain issues. This Court denied the petition. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014). The Director is not aware of any other appeal filed in connection with these inter partes review proceedings, nor any other related cases within the meaning of Federal Circuit Rule 47.5(b).

## INTRODUCTION

This case concerns the proper scope of this Court's jurisdiction in an appeal under 35 U.S.C. § 319 from a final decision of the U.S. Patent and Trademark Office (USPTO) in an inter partes review. The answer to that question depends on the terms of the federal statutes that establish this Court's jurisdiction. Those statutes limit this Court's review to the Patent Trial and Appeal Board's final written decision with respect to the patentability of the challenged claims. *See* 35 U.S.C. §§ 141(c), 319. And they preclude judicial review of the USPTO's interpretation and application of statutory provisions that bear only on the agency's threshold decision whether to institute an inter partes review. *See id.* § 314(d).

Applying these provisions, this Court correctly held in *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), that the Patent Act "prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of [35 U.S.C.] § 315(b)." *Id.* at 658. That conclusion follows directly from the text of the Patent Act, and the Supreme Court's decision in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), confirms that it is correct. As the Supreme Court "emphasize[d]," section 314(d) applies "where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." 136 S. Ct. at 2141. Section 315(b) is plainly one such "statut[e] related to the Patent

Office's decision to initiate inter partes review." *Id.* Indeed, that is the *only* question to which section 315(b) relates: it provides that, if the USPTO determines that the requirements of the provision are not satisfied, "[a]n inter partes review may not be instituted." 35 U.S.C. § 315(b).

The en banc Court should reaffirm what the plain language of the statute and the Supreme Court's reasoning in *Cuozzo* make clear: the USPTO's interpretation and application of the provisions of the Patent Act that bear only on the institution decision, such as section 315(b), is final and nonappealable.

## STATEMENT OF THE ISSUE

The Court granted rehearing en banc to decide the following question:

> Should the Court overrule *Achates Reference Publishing, Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) and hold that judicial review is available for a patent owner to challenge the PTO's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b) governing the filing of petitions for inter partes review?

## STATEMENT OF THE CASE

### A.     Statutory Background

The Court is by now well familiar with the inter partes review scheme and the history of administrative proceedings that preceded its creation. Since 1980, Congress has authorized the USPTO to review previously issued patents and to cancel patent claims that the agency determines were improperly approved. *See, e.g.*, Act of Dec. 12, 1980, Pub L. No. 96-517, 94 Stat. 3015 (codified as amended at 35 U.S.C. §§ 301-307)

(creating ex parte reexamination procedure). With the enactment of the America Invents Act (AIA) in 2011, Congress substantially expanded the procedures by which the USPTO could reconsider the patentability of claims in issued patents. Pub L. No. 112-29, 125 Stat. 284 (codified as amended at 35 U.S.C. § 311 *et seq.*).

Among other new procedures, the AIA created inter partes review, a proceeding in which members of the public can challenge the patentability of issued patents before the USPTO. *See* 35 U.S.C. §§ 311-319. The proceeding was designed to serve as a "quick and cost effective alternative[] to litigation," and to help "improve patent quality and restore confidence in the presumption of validity that comes with issued patents in court." H.R. Rep. No. 98 pt. 1, 112th Cong., 1st Sess. 45, 48 (2011).[1]

Inter partes review proceedings unfold in two phases. At the first phase, the Patent Trial and Appeal Board, acting on behalf of the Director, decides whether to "institute" an inter partes review.[2] 35 U.S.C. § 314(a). Before deciding whether to institute such a review, the agency must give the owner of the challenged patent an opportunity to respond to the petition and identify any "reasons why no inter partes review should be instituted based upon the failure of the petition to meet any

---

[1] Inter partes review was designed to replace the old inter partes reexamination process, which had proven both time consuming and inefficient. As one of the AIA's co-sponsors explained, the new procedure was conceived to "substantially accelerate the resolution of inter partes cases." 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

[2] The Director has delegated the institution decision to the Patent Trial and Appeal Board. *See* 37 C.F.R § 42.4(a).

requirement of this chapter." *Id.* § 313. After reviewing the petition and any response it receives, the Board determines whether "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a). If the Board concludes that the petitioner is likely to prevail on any claim, and if there is no other reason to deny the petition, it may institute the proceedings. By statute, the Board must decide whether or not to institute within three months of the date that the patent holder files (or could have filed) its response to the petition. *Id.* § 314(b).

If the USPTO institutes a review, the parties then proceed to the second phase of the process: a trial to determine whether any of the patent claims at issue in the proceeding should be canceled. The trial is held before the Board, which is responsible for issuing the agency's final decision addressing the patentability of every claim at issue. 35 U.S.C. § 318(a). The Board is generally required to issue its final decision, in writing, within a year of the agency's initial decision to institute proceedings. *Id.* § 316(a)(11).

Congress provided that the Board's "final written decision" on patentability may be appealed directly to this Court. 35 U.S.C. §§ 319, 141(c). It further provided, however, that the USPTO's threshold decision "whether to institute an inter partes review . . . shall be final and nonappealable." *Id.* § 314(d).

4

### B.    Factual and Procedural History

### 1.    Proceedings before the USPTO

In 2013, Broadcom petitioned for inter partes review of claims in three patents owned by Wi-Fi One,[3] each concerning wireless telecommunications technology. Wi-Fi One responded by asserting that 35 U.S.C. § 315(b) barred the USPTO from granting Broadcom's petitions. Section 315(b) provides that an inter partes review "may not be instituted if" the petitioner, or its real party in interest or privy, was "served with a complaint alleging infringement of the patent" more than one year earlier. 35 U.S.C. § 315(b). Wi-Fi One argued that Broadcom's petitions were time-barred under this provision because, according to Wi-Fi One, Broadcom was in privity with the defendants in a 2010 lawsuit filed in Texas alleging infringement of the three patents.[4]

To show that Broadcom was in privity with the defendants in the Texas lawsuit, Wi-Fi One asked the USPTO to order broad-ranging discovery "regarding indemnity agreements, defense agreements, payments, and email, or other

---

[3] The three patents (U.S. Patent Nos. 6,772,215; 6,466,568; and 6,424,625) were originally owned by Telefonaktiebolaget LM Ericsson, but the company transferred its ownership of the patents to Wi-Fi One during the proceedings before the USPTO. To avoid unnecessary confusion, this brief adheres to the convention employed by Wi-Fi One in its opening brief and refers to Wi-Fi One as the relevant patent holder.

[4] *See Ericsson Inc. v. D-Link Sys., Inc.*, No. 10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014).

communications, between Broadcom and [those] defendants." A76 (No. 15-1944). The USPTO denied the request, concluding that Wi-Fi One had "fail[ed] to show that the sought-after discovery would have more than a mere possibility of producing useful privity information." A89 (No. 15-1944). The agency further explained that Wi-Fi One had failed to show "that there is more than a mere possibility that [some of] the sought-after discovery even exists." A90 (No. 15-1944). Wi-Fi One then filed a mandamus petition in this Court, seeking to compel the USPTO to grant the discovery request, but this Court denied the petition. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014).

In March 2014, the USPTO instituted inter partes reviews of the three Wi-Fi One patents. A107-130 (No. 15-1944); A131-151 (No. 15-1945); A136-137 (No. 15-1946). The parties then proceeded to trials before the Board on each patent. On March 6, 2015, the Board issued its final written decision in each proceeding, holding that each patent contained unpatentable claims. A1-28 (No. 15-1944); A1-35 (No. 15-1945); A1-37 (No. 15-1946). Wi-Fi One timely appealed those decisions to this Court.

### 2.    Proceedings in this Court

A three-judge panel of this Court affirmed the Board's final decisions in all three proceedings. *See Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329 (Fed. Cir. 2016) (No. 15-1944); *Wi-Fi One, LLC v. Broadcom Corp.*, 2016 WL 4933344 (Fed. Cir.

6

2016) (per curiam) (No. 15-1945); and *Wi-Fi One, LLC v. Broadcom Corp.*, 2016 WL 4933418 (Fed. Cir. 2016) (per curiam) (No. 15-1946).

The panel held that Wi-Fi One had not only failed to identify any basis for overturning the Board's patentability decisions, but was also barred from challenging the USPTO's threshold decision to institute proceedings on the ground that Broadcom's petitions were untimely.  The panel explained that the agency's decisions to institute proceedings were not subject to judicial review because 35 U.S.C. § 314(d) explicitly made those decisions "final and nonappealable."  In reaching that conclusion, the panel relied on this Court's decision in *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652, 658 (Fed. Cir. 2015), which held that section 314(d) precludes judicial review of the USPTO's determination that a petition for inter partes review is timely under section 315(b).  *See Wi-Fi One*, 837 F.3d at 1333.

The panel also based its conclusion on the Supreme Court's recent decision in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016).  In *Cuozzo*, the Supreme Court held that section 314(d) barred a patent holder from challenging the adequacy of an inter partes review petition under another AIA provision, 35 U.S.C. § 312(a)(3), which requires petitioners to identify each challenged patent claim "in writing and with particularity."  The Court reasoned that section 314(d) barred judicial review—both at the interlocutory stage and after a final agency decision—of every issue "closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review."  136 S. Ct. at 2141.

7

Wi-Fi One petitioned for rehearing en banc of the panel's decisions, urging this Court to reconsider the holding of *Achates* in light of the Supreme Court's decision in *Cuozzo*. In January 2017, this Court granted the petitions for rehearing en banc, consolidated the three cases, and invited the Director of the USPTO to submit her views on whether *Achates* should be reconsidered. The Director subsequently intervened.

**SUMMARY OF ARGUMENT**

This Court should reaffirm the holding of *Achates* that the USPTO's interpretation and application of section 315(b) in determining whether to institute an inter partes review is final and nonappealable.

1. By granting this Court jurisdiction to review only the Board's final written decision as to patentability, 35 U.S.C. §§ 141(c), 319, and expressly deeming the USPTO's institution decision "final and nonappealable," *id.* § 314(d), Congress expressed its intent that this Court should focus its review on the critical question at the heart of every inter partes review: whether the Board's patentability decision was correct. That is the question that defines the parties' substantive rights and affects the public interest. Section 314(d) reflects Congress's pragmatic judgment that the Board's correct resolution of a contested question of patentability should not be set aside merely because the agency mistakenly resolved a threshold issue that does not bear on the ultimate question of patentability.

8

Section 315(b) exemplifies the kind of institution-specific determination for which Congress intended to foreclose appeals.  The statute specifies a circumstance in which, if the USPTO determines that particular conditions are present, "[a]n inter partes review may not be instituted."  35 U.S.C. § 315(b).  That is the only role of section 315(b) in the statutory scheme:  to inform the USPTO's determination whether to institute a review.  And that is precisely the determination that Congress placed outside of this Court's purview on appeal.

The Supreme Court's decision in *Cuozzo* underscores that conclusion.  The Court "emphasize[d]" in *Cuozzo* that section 314(d) applies, at a minimum, "where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review."  136 S. Ct. at 2141.  As the panel in this case correctly explained, section 315(b) is such a statute.

2.  Wi-Fi One identifies no persuasive basis in the statute or the Supreme Court's decision in *Cuozzo* to doubt that conclusion.  Wi-Fi One's arguments rest instead on a fundamental misunderstanding of the relevant principles of judicial review of agency action.  In particular, contrary to Wi-Fi One's view, Congress is not required to abrogate the presumption of judicial review of agency action with respect to each "point of error" a party could raise.  Br. 40.  Congress's constitutional power to control the jurisdiction of the federal courts is not subject to any impediment of that kind.  To the contrary, the Supreme Court has held that Congress can foreclose

judicial review of administrative action implicitly, without identifying any "point of error" at all.  All that is necessary is that it be "fairly discernible in the statutory scheme" that Congress intended to preclude judicial review of the agency action at issue.  *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351 (1984).  As the Supreme Court recognized in *Cuozzo*, that standard is met here by the plain language of the Patent Act provisions establishing and circumscribing this Court's jurisdiction.

Wi-Fi One also misunderstands the Supreme Court's decision in *Cuozzo*.  The Court repeatedly framed its holding in terms that encompass any allegation that the USPTO violated a provision of the Patent Act that addresses when the agency may institute an inter partes review, including section 315(b).  Justice Alito, in dissent, understood the majority's decision to have exactly that effect.  Yet without grappling with the language or reasoning in the Supreme Court's decision that refutes its view, Wi-Fi One insists that the Court in *Cuozzo* interpreted section 314(d) as essentially limited to the Director's threshold likelihood-of-success finding under section 314(a).

That contention is untenable.  Wi-Fi One's argument disregards not only the Court's holding and reasoning in *Cuozzo*, but also the history of Congress's revisions to the Patent Act.  The former inter partes reexamination statute precluded appeals only of the Director's threshold determination "under subsection (a)" that a substantial new question of patentability existed.  35 U.S.C. § 312(c) (2006).  Congress repealed that provision in the AIA and replaced it with section 314(d), which broadly precludes appeal of the Director's decision "whether to institute" inter partes review.

10

As the Court explained in *Cuozzo*: "Congress has told the *Patent Office* to determine whether inter partes review should proceed, and it has made the agency's decision 'final' and 'nonappealable.' Our conclusion that courts may not revisit this initial determination gives effect to this statutory command." *Cuozzo*, 136 S. Ct. at 2141 (citation omitted).

In sum, section 315(b) is one of a handful provisions of the Patent Act that operate only at the institution phase of an inter partes review. The plain import of section 314(d) is that Congress intended to insulate the USPTO's administration of such statutes from challenge on appeal. The Supreme Court's decision in *Cuozzo* confirms that understanding. The en banc Court should therefore reaffirm the Court's holding in *Achates* that the USPTO's determination that a petitioner satisfied the requirements of section 315(b) is final and nonappealable.

## STANDARD OF REVIEW

This Court reviews its own jurisdiction de novo. *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008).

11

## ARGUMENT

### I.     THE USPTO'S DETERMINATION THAT BROADCOM SATISFIED THE REQUIREMENTS OF SECTION 315(b) IS FINAL AND NONAPPEALABLE.

The Court granted rehearing en banc to address the proper scope of the Court's jurisdiction in an appeal under 35 U.S.C. § 319. That is a statutory question, and it is answered by the text and structure of the Patent Act. Congress provided that the USPTO's decision to institute an inter partes review shall be "final and nonappealable." 35 U.S.C. § 314(d). There is no question that Congress has the authority to limit this Court's review in that manner. Nor is there any ambiguity in the terms of the statute it enacted. As the Supreme Court confirmed in *Cuozzo*, section 314(d) precludes review of the USPTO's interpretation and application of the provisions of the Patent Act that address the agency's decision "whether to institute" an inter partes review.

That express limitation on this Court's jurisdiction encompasses the USPTO's privity and timeliness determinations under 35 U.S.C. § 315(b). As the panel explained, nothing in *Cuozzo* casts doubt on this Court's conclusion that the Patent Act "prohibits this [C]ourt from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of § 315(b)." *Achates*, 803 F.3d at 658; *accord Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1244 (Fed. Cir. 2016). To the contrary, *Cuozzo* confirms the plain meaning and effect of section 314(d). The panel properly gave effect to that legislative judgment. As the

12

Supreme Court has stressed, "[t]he judicial power of the United States conferred by Article III of the Constitution is upheld just as surely by withholding judicial relief where Congress has permissibly foreclosed it, as it is by granting such relief where authorized by the Constitution or by statute." *Dalton v. Specter*, 511 U.S. 462, 477 (1994). The panel's decision is correct and should be reaffirmed by the en banc Court.

**A.    The plain language of the Patent Act precludes judicial review of questions relevant only to the USPTO's decision to institute an inter partes review.**

This Court has only the jurisdiction that Congress confers upon it. In most contexts, this Court possesses broad jurisdiction to hear appeals from final decisions of the USPTO, *see, e.g.,* 35 U.S.C. § 141(a), (b), (d); 15 U.S.C. § 1071(a), including all interlocutory rulings underlying those final decisions, *see* 5 U.S.C. § 704. Congress provided without limitation, for example, that a patent owner may obtain judicial review in this Court of "the final decision" of the Board in an ex parte reexamination. 35 U.S.C. § 141(b). In such an appeal, the patent owner may seek this Court's review of all questions of fact and law implicated by the agency's final decision, including the agency's resolution of threshold objections to the conduct of the proceeding itself. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-43 (1980); *see also Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015) (USPTO's interlocutory decision refusing to terminate an inter partes reexamination was reviewable only on appeal from a final Board decision).

13

In enacting the inter partes review scheme, Congress could have followed the same model.  It could have simply granted this Court jurisdiction to review any "final decision" of the Board in an inter partes review, just as it has done for reexaminations and ex parte appeals.  And if it had done so, there would have been no question that the USPTO's application of 35 U.S.C. § 315(b)—and similar provisions relevant only to the agency's interlocutory decision to institute an inter partes review—would have been reviewable on appeal from the agency's final decision.  *See* 5 U.S.C. § 704; *Standard Oil*, 449 U.S. at 239-43.

But Congress did not do so.  Instead, Congress expressly precluded judicial review of the USPTO's decision to institute an inter partes review.  It did so in two ways.

First, Congress specified what this Court *is* authorized to review:  only the Board's "final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)."  35 U.S.C. § 318(a).  In contrast to the broader grants of appellate jurisdiction discussed above, Congress authorized judicial review in this Court only of "the final written decision of the Patent Trial and Appeal Board *under section 318(a).*"  35 U.S.C. § 141(c) (emphasis added).  And Congress repeated the same limitation in chapter 31 of the Patent Act, which establishes the inter partes review procedure. Section 319, titled "Appeal," provides that "[a] party dissatisfied with the final written decision of the Patent Trial and Appeal Board *under section 318(a)* may appeal the decision" under

14

section 141. 35 U.S.C. § 319 (emphasis added). No other provision in the Patent Act authorizes an appeal to this Court from an inter partes review.

Second, Congress specified what this Court does *not* have jurisdiction to review: the USPTO's decision to institute an inter partes review. 35 U.S.C. § 314(d). In general, section 314 authorizes the Director to institute an inter partes review when the Director determines that review is appropriate and warranted. *See id.* § 314. To make that determination, the Director must interpret and apply multiple provisions of the Patent Act that bear only on the decision to institute. Among other things, the Director must consider the form and content of the petition, *id.* § 312(a); the strength of the petitioner's threshold showing on the merits, *id.* § 314(a); and the relationship of the proposed inter partes review to any pending judicial proceedings concerning the same patent, *id.* § 315(a), (b). Congress made clear, however, that it did not intend for this Court—or any other—to review the Director's decision on those questions:

> **(d) No appeal**. — The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

35 U.S.C. § 314(d).

Taken together, these provisions limit this Court's review to the outcome of an instituted review on the merits—that is, to the Board's "final written decision with respect to the patentability" of the patent claims at issue in the proceeding. 35 U.S.C. § 318(a). Congress specified not only the specific USPTO decisions that are subject to this Court's review ("final written decision[s]"), but also the relevant respects in

15

which those decisions are subject to review ("with respect to the patentability of any patent claim"). And Congress expressly removed from this Court's purview a class of interlocutory legal determinations—those concerning "whether to institute" the proceeding—that would otherwise have been reviewable in conjunction with such an appeal. The agency's resolution of those questions, Congress determined, shall be "final and nonappealable." *Id.* § 314(d).[5]

By confining the grounds for appeal in this way, Congress focused this Court's jurisdiction on the question at the heart of every inter partes review: whether the Board's patentability decision was correct. That is the question that defines the parties' substantive rights, affects the public interest, and shapes the path of industries. Section 314(d) reflects Congress's pragmatic judgment that the Board's correct resolution of a contested question of patentability should not be set aside just because the agency mistakenly resolved a threshold question that does not bear on the ultimate question of patentability.

---

[5] As this Court explained in *Achates*, the agency's "determination . . . whether to institute an inter partes review" is "final and nonappealable" even when, as in this case, the Board reaffirms the reasons for its institution decision in its final written decision as to patentability. *See Achates*, 803 F.3d at 658. Section 314(d)'s bar against appeals of institution decisions applies without regard to whether or where the Board memorializes its reasons for granting institution. And as the Court noted in *Achates*, "the Board is always entitled to reconsider its own decisions." *Id.*

And that makes sense. For the individual parties involved, of course, the agency's decision whether to institute a proceeding carries significant consequences. But from the perspective of the patent system as a whole, it is the patentability decision that matters. Indeed, Congress was sufficiently unconcerned about the possibility of USPTO error in *denying* institution that it committed the choice to deny review entirely to the agency's discretion. *See Cuozzo*, 136 S. Ct. at 2140. The only consequence of an erroneous decision to *grant* institution, likewise, is that the Board will consider whether the challenged patent claims were properly granted in the first place—something that, in analogous circumstances, the agency could have done anyway. *See* 35 U.S.C. § 303(a) ("On [her] own initiative, and any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by [her] . . . ."). Congress recognized that it is not the USPTO's decision to commence an inter partes review, but rather the Board's patentability decision on the merits that determines the rights of the parties and the public. That is the question on which Congress wanted this Court to focus its review.

**B.**    ***Cuozzo* confirms that Congress precluded judicial review of statutory questions relevant only to the USPTO's decision to institute an inter partes review.**

The Supreme Court's decision in *Cuozzo* confirms that Congress intended to preclude judicial review of the USPTO's interpretation of statutory provisions that bear only on the institution decision. As the Court explained: "The text of the 'No Appeal' provision, along with its place in the overall statutory scheme, its role

alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review, all point in favor of precluding review of the Patent Office's institution decisions." *Cuozzo*, 136 S. Ct. at 2141.

*Cuozzo* involved an appeal from the USPTO's final written decision canceling several patent claims during an inter partes review. 136 S. Ct. at 2138. Cuozzo, the patent owner, argued that the USPTO had erred in instituting the proceeding because the petition had not identified "with particularity" all of the patent claims on which the agency instituted review. *See* 35 U.S.C. § 312(a)(3) (specifying that a petition for inter partes review "may be considered only if" the petition "identifies, in writing and with particularity, each claim challenged").

The Supreme Court affirmed this Court's conclusion that section 314(d) precluded judicial review of Cuozzo's challenge to the institution decision. "For one thing, that is what § 314(d) says." 136 S. Ct. at 2139. "For another," the Court explained, Cuozzo's challenge to the institution decision was simply "an ordinary dispute about the application of certain relevant patent statutes concerning the Patent Office's decision to institute inter partes review." *Id.* Emphasizing that Congress had authorized the USPTO to issue patentability decisions "even after the original petitioner settles and drops out," *id.* at 2140 (citing 35 U.S.C. § 317(a)), the Supreme Court reasoned that Congress had intended to prioritize the "important congressional objective" in the AIA: to promote patent quality. *Id.* at 2139. "We doubt that

18

Congress would have granted the Patent Office this authority . . . if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review." *Id.* at 2141.

The Court rejected Cuozzo's argument, echoed by Justice Alito in dissent, that section 314(d) should be read narrowly to preclude only interlocutory appeals. *See* 136 S. Ct. at 2140 (explaining that this interpretation would make section 314(d) redundant of ordinary principles of finality under the APA). The majority further rejected Justice Alito's reliance on *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985), explaining that the point of that decision was to "preserve[] the agency's primacy over its core statutory function in accord with Congress' intent." *Cuozzo*, 136 S. Ct. at 2141. The Court reasoned: "Our interpretation of the 'No Appeal' provision here has the same effect. Congress has told the *Patent Office* to determine whether inter partes review should proceed, and it has made the agency's decision 'final' and 'nonappealable.'" *Id.* (quoting 35 U.S.C. § 314(d)) (emphasis in original). "Our conclusion that courts may not revisit this initial determination gives effect to this statutory command." *Id.*

The Court emphasized that its interpretation of section 314(d) "applies where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at

19

2141. The Court concluded, therefore, that "we need not, and do not, decide the precise effect of § 314(d)" in other circumstances, such as when the challenge to the institution decision "implicate[s] constitutional questions" or "depend[s] on other less closely related statutes." *Id.* (citing *Johnson v. Robison*, 415 U.S. 361, 367 (1974), and *Traynor v. Turnage*, 485 U.S. 535, 544 (1988)). In addition, the Court rejected Justice Alito's contention that its decision would permit the agency to engage in "shenanigans" by acting outside its statutory limits in its patentability decisions, such as by "canceling a patent claim for 'indefiniteness under § 112' in inter partes review." *Id.* at 2141-42 (quoting *id.* at 2155 (Alito, J., dissenting)). That kind of decision, the Court concluded, "may be properly reviewable in the context of § 319 and under the Administrative Procedure Act." *Id.* at 2142.

> **C.    Section 315(b) exemplifies a statute relevant only to the USPTO's decision whether to institute an inter partes review.**

The USPTO's application of section 315(b) exemplifies the sort of question that section 314(d) bars a petitioner from appealing. The Supreme Court "emphasize[d]" in *Cuozzo* that section 314(d) encompasses, at a minimum, "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141. As the panel in this case explained, section 315(b) "is just such a statute." 837 F.3d at 1334.

Titled "Patent owner's action," section 315(b) provides that "[a]n inter partes review *may not be instituted if* the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) (emphasis added). By its plain terms, the statute addresses only the institution decision: it specifies a circumstance in which an inter partes review "may not be instituted." The statute has no bearing on any substantive issue of patentability. No invention becomes patentable or unpatentable based on the USPTO's rulings about privity, let alone whether to allow discovery concerning privity. The only function of section 315(b) is to require the USPTO to decide particular questions when determining under section 314 "whether to institute" an inter partes review—precisely the determination that Congress specified shall be "final and nonappealable." 35 U.S.C. § 314(d). It is difficult to imagine how a statute could be more "closely tied" to the institution decision.

This case aptly illustrates the reasons why Congress precluded relitigation of such questions. The Board instituted three inter partes reviews and, after considering the evidence and the arguments submitted by the parties, concluded that various of Wi-Fi One's patent claims were either anticipated or obvious. A panel of this Court agreed with the Board's patentability determinations and affirmed the cancellation of Wi-Fi One's claims. *See* 837 F.3d at 1335-40; 2016 WL 4933344; 2016 WL 4933418. Without demonstrating any error in that conclusion, Wi-Fi One now seeks to restore

21

its unpatentable claims—presumably so that it may continue to assert infringement of those claims—on the ground that the USPTO should have allowed discovery at the institution phase as to whether Broadcom was in privity with the defendants in an earlier-filed infringement action.

Whether Broadcom was in privity with those defendants has no substantive relevance to whether Wi-Fi One's claims are patentable. Section 314(d) reflects Congress's judgment that it should not have dispositive procedural relevance either. Congress sensibly determined that skirmishes like this one—whether certain discretionary discovery should have been allowed in the disposition of a threshold procedural question—should not provide a basis for setting aside the Board's final written decisions addressing the patentability of Wi-Fi One's claims.

The deadlines that Congress imposed in the AIA confirm that conclusion. Congress imposed a three-month cap on the USPTO's decision-making process at the institution phase, *see* 35 U.S.C. § 314(b), because it expected and intended the agency simply to make a judgment call and move on. It is hard to imagine that Congress would have imposed such a short deadline if it had intended disputes over the sufficiency of discovery at the institution phase to provide a basis for overturning the results of the entire proceeding on appeal. Precluding relitigation of such questions promotes the "important congressional objective" of providing an efficient mechanism for improving patent quality and restoring confidence in the presumption of validity that attends issued patents. *Cuozzo*, 136 S. Ct. at 2139-40.

22

## II.    WI-FI ONE MISUNDERSTANDS THE RELEVANT PRINCIPLES OF JUDICIAL REVIEW AND MISINTERPRETS THE SUPREME COURT'S DECISION IN *CUOZZO*.

As we have explained, this Court's holding in *Achates* follows directly from the statutory text, and the Supreme Court's decision in *Cuozzo* only underscores that *Achates* was correctly decided. Wi-Fi One's arguments to the contrary reflect a fundamental misunderstanding of the relevant principles of judicial review of agency action and a selective reading of the Supreme Court's *Cuozzo* opinion.

### A.    Wi-Fi One misunderstands the governing principles of judicial review of agency action.

Congress has the exclusive power to determine the subject-matter jurisdiction of the lower federal courts. U.S. Const. art. III, § 1. That includes the power to prescribe the scope of appellate review of agency action. As the Supreme Court has explained: "When judicial review is available and under what circumstances, are questions (apart from whatever requirements the Constitution may make in certain situations) that depend on the particular Congressional enactment under which judicial review is authorized." *NLRB v. Cheney Cal. Lumber Co.*, 327 U.S. 385, 388 (1946). Absent any constitutional question—and there is none here—a federal court is no more authorized than a federal agency to act in derogation of a statutory limit on its lawful authority. *See, e.g., Dalton*, 511 U.S. at 477 ("[O]ur conclusion that judicial review is not available for respondents' claim follows from our interpretation of an Act of Congress, by which we and all federal courts are bound.").

23

Wi-Fi One misunderstands the relevant principles of judicial review of agency action. It repeatedly invokes the Administrative Procedure Act (APA), for example, in support of its contention that it is entitled to judicial review of the USPTO's institution decision notwithstanding section 314(d). Wi-Fi One emphasizes that section 702 of the APA provides that persons aggrieved by agency action are "entitled to judicial review thereof." Br. 14 (quoting 5 U.S.C. § 702). The immediately preceding provision of the APA, however, makes clear that section 702 does *not* apply where Congress has precluded judicial review by statute: "This chapter applies, according to the provisions thereof, except to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1).

As section 701(a)(1) of the APA reflects, Congress can and does enact statutes, such as section 314(d), that preclude judicial review of particular administrative determinations. Such statutes, which vary widely in their scope and terminology, may be found throughout the U.S. Code. *See, e.g.,* 5 U.S.C. § 8128(b)(2) (Department of Labor's determinations concerning workers-compensation benefits); 8 U.S.C. §§ 1252(a)(2), 1158(a)(3) (certain determinations by the Attorney General during removal and asylum proceedings); 10 U.S.C. § 2735 (settlement of claims for certain noncombat injuries and losses by Secretaries of Army, Navy, or Air Force); 12 U.S.C. § 4617(b)(5)(E) and (b)(11)(D) (decisions of Federal Housing Finance Agency in its role as conservator for regulated financial institutions); 38 U.S.C. § 511 (certain aspects of Department of Veterans Affairs' benefits determinations); 42 U.S.C.

24

§§ 1395w-4(i)(1), 1395*l*(t)(12), (t)(21)(E), (u)(4)(E), and (x)(4) (certain determinations by Centers for Medicare and Medicaid Services concerning payment methods and rates for healthcare providers).

Such statutes, like any other, must be given effect according to their terms. There is no "magic words" requirement:  Congress need not use any special formulation or incantation to preclude judicial review.  To the contrary, the Supreme Court has emphasized that Congress can preclude review of administrative decisions without enacting any specific provision to that effect at all.  *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984).  The "congressional intent necessary" to preclude judicial review may be "inferred from contemporaneous judicial construction barring review and the congressional acquiescence in it, or from the collective import of legislative and judicial history behind a particular statute," or simply from "the statutory scheme as a whole." *Id.* (citation omitted).  In *Block*, for example, the Supreme Court unanimously concluded, based on the structure of the statutory scheme, that Congress had implicitly precluded consumers from seeking judicial review of agricultural marketing orders.  *Id.* at 348.  Wi-Fi One does not acknowledge *Block*, let alone distinguish it.

Wi-Fi One is thus mistaken in its repeated invocation of the general presumption in favor of judicial review of agency action (Br. 15-20, 35-40).  That presumption operates to ensure judicial review in situations where Congress has not expressed its intention, either expressly or implicitly, to preclude it.  But "[t]he

25

presumption favoring judicial review of administrative action is just that—a presumption. This presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Block*, 467 U.S. at 349. "[T]he Court has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Id.* at 351 (quotation marks omitted). Consequently, the presumption "fails when a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (observing that the APA reflects a presumption of judicial review "so long as no statute precludes such relief").

Here, it is more than "fairly discernible in the statutory scheme" that Congress intended to preclude judicial review of the USPTO's institution decisions. Indeed, the Supreme Court applied *Block* and came to that conclusion in *Cuozzo*. 136 S. Ct. at 2140-41 (concluding that the *Block* standard "is met here"). By deeming the USPTO's institution decision "final and nonappealable," 35 U.S.C. § 314(d), and limiting this Court's jurisdiction to the Board's final written decision as to patentability, 35 U.S.C. §§ 141(c), 319, Congress unambiguously expressed its intent that the USPTO should "police its own conduct" at the institution phase of an inter partes review. *Mach Mining*, 135 S. Ct. at 1651. Nothing more was required.

Wi-Fi One compounds its error by insisting that the USPTO must show by "clear and convincing indications" that Congress intended to preclude review, not merely of the institution decision, but of the "specific points of error raised by Wi-Fi One in this appeal." Br. 44 (capitalization modified). That contention is doubly mistaken. First, the Supreme Court has explained that the "clear and convincing" standard for preclusion of judicial review is "not a rigid evidentiary test," but simply "a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block*, 467 U.S. at 351. Just as in *Block* itself, that presumption "does not control in cases such as this one . . . since the congressional intent to preclude judicial review is 'fairly discernible' in the detail of the legislative scheme." *Id.* It is thus unsurprising that the Supreme Court concluded in *Cuozzo* that the "clear and convincing" standard "is met here." 136 S. Ct. at 2140-41.

Second, neither the background presumption of judicial review nor any other principle of law or logic requires Congress to predict every "specific point[] of error" a party may seek to raise. Congress's constitutional authority to control the jurisdiction of the lower federal courts is not subject to any such requirement. Indeed, as already discussed, the Supreme Court has recognized in *Block* and other cases that Congress can preclude judicial review of agency action implicitly—that is, without identifying any "specific point[] of error" for preclusion at all. *Block*, 467 U.S. at 349.

Here, Congress provided that the USPTO's decision "whether to institute" inter partes review is "final and nonappealable." 35 U.S.C. § 314(d). As the Supreme Court recognized in *Cuozzo*, that provision precludes appeal, at a minimum, of all "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141. Not just of a single question or of a single statute, but of all "*questions*" related to the "application and interpretation of *statutes*" related to institution. The unambiguous language of section 314(d) distinguishes it from the ambiguous Medicare Act provision at issue in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), which Wi-Fi One cites for support. Unlike the provision at issue in *Bowen*—which "on its face [was] an explicit *authorization* of judicial review, not a bar," *id.* at 674 (emphasis added)—section 314(d) delineates a specific category of statutory questions that Congress sought to insulate from appeal. Wi-Fi One identifies no proper basis for disregarding that clear statutory command. *See Dalton*, 511 U.S. at 477 ("The judicial power of the United States conferred by Article III of the Constitution is upheld just as surely by withholding judicial relief where Congress has permissibly foreclosed it, as it is by granting such relief where authorized by the Constitution or by statute.").

It bears emphasizing, moreover, that Congress has not sought to preclude judicial review of the Board's patentability decision on the merits. *See* 35 U.S.C. §§ 141(c), 319. This case is thus fundamentally unlike *Lindahl*, on which Wi-Fi One

28

also relies. In that case, the question was whether Congress had precluded any opportunity for judicial review at all. *See Lindahl*, 470 U.S. at 771 (discussing whether Congress had "bar[red] judicial review *altogether*" of an agency's decision to deny a federal employee's claim for retirement benefits (emphasis added)); *see also Cuozzo*, 136 S. Ct. at 2141 (distinguishing *Lindahl*).

Here, by contrast, Congress has only acted to preclude review of a set of threshold issues concerning the commencement of the proceeding. All other interlocutory, ancillary, and procedural rulings in an inter partes review remain subject to this Court's review in an appeal under section 319, consistent with ordinary principles of administrative law. *See* 5 U.S.C. § 704. For example, no one disputes that this Court properly reviews issues of claim construction embodied in the Board's final written decision under section 318(a). Likewise, the Court properly reviews any evidentiary or discovery-related questions that bear on patentability, as well as the Board's disposition of motions to amend or substitute claims. And the Court may review, as part of an appeal from a final written decision under section 318(a), the validity of any regulations applied by the USPTO in conducting the review on the merits. In *Cuozzo*, for example, the validity of the USPTO's "broadest reasonable interpretation" rule was properly before the Court because the Board had applied that rule in its final written decision holding the petitioner's claims unpatentable. The only elements of the USPTO's inter partes review proceedings that are *not* reviewable are those that relate solely to the agency's decision to institute proceedings.

### B.    Wi-Fi One misinterprets *Cuozzo.*

Apart from emphasizing the presumption of judicial review, Wi-Fi One's challenge to *Achates* rests largely on selective quotations from two paragraphs of the Supreme Court's decision in *Cuozzo.* As the panel correctly explained, however, there is "nothing in the *Cuozzo* decision that suggests *Achates* has been implicitly overruled." 837 F.3d at 1334.

The Supreme Court repeatedly framed its holding in *Cuozzo* in terms that encompass any allegation that the USPTO violated a provision of the Patent Act, such as section 315(b), that addresses when the agency may institute an inter partes review. *See, e.g.*, 136 S. Ct. at 2139 ("For one thing, that is what § 314(d) says."); *id.* at 2140 (Congress did not intend "that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review"); *id.* at 2141 ("Congress has told the *Patent Office* to determine whether inter partes review should proceed, and it has made the agency's decision 'final' and 'nonappealable.' Our conclusion that courts may not revisit this initial determination gives effect to this statutory command." (emphasis in original; citation omitted)); *id.* (concluding that "the text of the 'No Appeal' provision, along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review, all point in favor of precluding review of the Patent Office's institution decisions"); *id.* ("[W]e emphasize that our interpretation applies

30

where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review."). Each of these formulations readily encompasses the question whether the petition was timely under section 315.

Justice Alito, in dissent, understood the majority's decision to have precisely that effect. He explained that the majority's reasoning would preclude judicial review of the USPTO's application of section 315. *See Cuozzo*, 136 S. Ct. at 2154 (discussing potential USPTO errors in applying section 315 and objecting that the majority's decision renders courts "powerless" to review them); *id.* at 2155 (observing that "the petition's timeliness, no less than the particularity of its allegations, is 'closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate . . . review,' and the Court says that such questions are unreviewable."). While the majority took pains to disclaim some of the dissent's predictions about the effect of its holding, the majority did not dispute that the dissent correctly understood the import of the Court's reasoning concerning section 315.

Wi-Fi One makes no serious attempt to grapple with the Supreme Court's reasoning on this score. It insists that USPTO's privity and timeliness decisions under section 315 are "in no way 'closely related' to the Director's decision under § 314(a)." Br. 46. But as the Supreme Court explained in *Cuozzo*, the correct question is whether section 315(b) is one of the "statutes related to the Patent Office's decision to initiate

inter partes review." 136 S. Ct. at 2141. Plainly it is. As already discussed, section 315(b) is relevant *only* to the institution decision. *See* 35 U.S.C. § 315(b) (specifying circumstances in which "[a]n inter partes review may not be instituted"). The USPTO's application of that statute thus exemplifies a question "closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141.

Indeed, the Supreme Court strongly suggested in *Cuozzo* that the statutes "closely related" to the institution decision include *all* relevant provisions of the Patent Act, as distinguished from other, unrelated federal statutes that might also bear on the USPTO's decisions. In explaining that the Court need not decide the effect of section 314(d) in appeals "that depend on other less closely related statutes," 136 S. Ct. at 2141, the Supreme Court cited *Traynor v. Turnage*, 485 U.S. 535 (1988). The question in *Traynor* was whether a statute that barred judicial review of veterans' benefits determinations also barred a claim that the agency had impermissibly discriminated against disabled persons in violation of section 504 of the Rehabilitation Act, "a statute applicable to all federal agencies." 485 U.S. at 543. The Court held that the Rehabilitation Act claim was not precluded. *Id.* at 543-44. It emphasized that the case involved "no challenge to the Veterans' Administration's construction of any statute dealing with veterans' benefits," but rather "a subsequent statute whose enforcement is not the exclusive domain of the Veterans' Administration." *Id.* at 544. The Supreme Court's citation to *Traynor* in declining to address whether section

32

314(d) precludes review of the USPTO's application of "less closely related statutes," *Cuozzo*, 136 S. Ct. at 2141, strongly implies that the Court had in mind federal statutes of general applicability such as the Rehabilitation Act—not the very provisions of the Patent Act that establish and govern the inter partes review process. *See Husky Injection Molding*, 838 F.3d at 1246 (explaining that "the statutes 'closely related' to the decision whether to institute are necessarily, and at least, those that define the metes and bounds of the inter partes review process").

Wi-Fi One nevertheless construes *Cuozzo* as giving section 314(d) vanishingly little effect. According to Wi-Fi One (Br. 41), the Supreme Court interpreted section 314(d) as precluding review only of (i) the Director's substantive patentability determination under section 314(a), and (ii) other requirements within what Wi-Fi One calls the "penumbra" of section 314(a)—a category that evidently includes only section 312(a)(3), the provision at issue in *Cuozzo* itself.

That construction lacks any mooring either in the statutory text or in the Supreme Court's decision. As an initial matter, the holding of *Cuozzo*—that the USPTO's application of the particularity requirement in section 312(a)(3) was final and nonappealable—forecloses any argument that section 314(d) precludes review only of the agency's threshold assessment of the merits of the patentability issues. As the panel in this case explained, "[t]he Supreme Court extended the preclusion of judicial review to statutes related to the decision to institute; it did not limit the rule of

33

preclusion to substantive patentability determinations made at the institution stage, as the facts of *Cuozzo* itself make clear." 837 F.3d at 1334.

Wi-Fi One's suggestion that the bar on appeals of institution decisions extends only to patentability determinations under section 314(a) and an unspecified subset of issues within its "penumbra" (Br. 41) is equally unfounded. There is no "penumbra" in the statutory text; there is only the Director's institution decision and a host of statutory requirements that bear upon it. Section 312(a)(3) is no more in the "penumbra" of section 314 than is section 315(b) or any other provision of the Patent Act that relates only to the USPTO's decision whether to institute an inter partes review. If anything, it is section 315(b) that more directly addresses the institution decision: a petition "may be considered only if" it meets the requirements of section 312(a)(3), *see* 35 U.S.C. 312(a)(3), but an inter partes review "may not be *instituted* if" the requirements of section 315(b) are not satisfied, *id.* § 315(b) (emphasis added).

Wi-Fi One appears to base its "penumbra" notion on the Supreme Court's remark in *Cuozzo* that the patent owner's challenge to the USPTO's institution decision on the facts of that case was "little more than a challenge to the Patent Office's conclusion, under § 314(a), that the 'information presented in the petition' warranted review." 136 S. Ct. at 2142. In other words, *Cuozzo* was an easy case for the application of section 314(d). But it does not follow that the Court limited section 314(d) to such claims. As the majority itself "emphasize[d]"—and as Justice Alito's dissent acknowledged—the Court's interpretation of section 314(d) "applies where

34

the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." 136 S. Ct. at 2141. That formulation—consistent with the plain text of section 314(d)—encompasses any challenge to a USPTO institution decision predicated on a Patent Act provision applicable only at the institution phase, including section 315(b).

Wi-Fi One's attempt to limit section 314(d) to the Director's substantive patentability decision under section 314(a) also disregards the text and history of the Patent Act. As the government explained in its brief in *Cuozzo*, the meaning of section 314(d) is illuminated by the provision that it superseded. Under the former inter partes reexamination statute, the Director could commence a reexamination if she concluded that the petition raised a "substantial new question of patentability affecting any claim of the patent concerned." 35 U.S.C. § 312(a) (2006). Former section 312(c), in turn, had specified that "[a] determination by the Director *under subsection (a)* shall be final and nonappealable." 35 U.S.C. § 312(c) (2006) (emphasis added). Accordingly, a party could still appeal the Director's decision to institute an inter partes reexamination on the ground that it was inconsistent with some other limitation in the Patent Act—for example, former section 317, which barred a third-party requester from seeking reexamination if it had previously lost a civil action challenging the patent's validity. *See* 35 U.S.C. § 317 (2006); *cf. Automated Merch. Sys.*,

35

782 F.3d at 1381 (noting that such questions were appealable following a final Board decision).

If Congress had intended section 314(d) to preclude appeals only of determinations about reasonable likelihood under section 314(a), therefore, it could simply have preserved the language from the prior inter partes reexamination scheme. Instead, Congress repealed the phrase "under subsection (a)" and replaced it with a provision broadly precluding judicial review of the USPTO's decision "whether to institute" inter partes review. 35 U.S.C. § 314(d). The government highlighted this point in its merits brief in *Cuozzo*, *see* U.S. Br., 2016 WL 1165967, at *47-48, and the Supreme Court credited it in its opinion, *see* 136 S. Ct. at 2140 (explaining that the history of related provisions in the Patent Act "reinforces our conclusion" and citing, *inter alia*, former section 312(c)). Wi-Fi One makes no attempt to reconcile its interpretation with this history.

Wi-Fi One's remaining arguments based on *Cuozzo* are equally meritless. Wi-Fi One notes that the Supreme Court declined to interpret section 314(d) to preclude constitutional claims. But that is unremarkable: there were no constitutional claims at issue in *Cuozzo*, and the government has never suggested that section 314(d) precludes review of such claims.[6] The Supreme Court has long held that a statute that precludes

---

[6] Wi-Fi One mistakenly attributes to the USPTO the view that section 314(d) precludes "even judicial review for constitutional issues" or "serious due process violations." Br. 5. The government has never taken that position. To the contrary, in

36

judicial review of statutory claims will not normally be interpreted to preclude judicial review of colorable constitutional claims as well. *See, e.g.*, *Webster v. Doe*, 486 U.S. 592 (1988); *Johnson v. Robison*, 415 U.S. 361 (1974). That is in part because a statute that prohibits judicial review of a class of administrative decisions typically does not, as a plain-text matter, encompass review of the constitutional validity of the statutory scheme under which those decisions are made. *See Johnson*, 415 U.S. at 367. That is the principle to which the Supreme Court was referring in *Cuozzo* when it observed that section 314(d)'s preclusion of review does not extend beyond decisions made "under this section"—that is, institution decisions under the Patent Act. *See Cuozzo*, 136 S. Ct. at 2141 (citing *Johnson*, 415 U.S. at 367). The Court's point was simply that, by precluding review of decisions "under" section 314, Congress did not preclude constitutional challenges to the existence or operation of section 314.

Wi-Fi One and amici also highlight the Supreme Court's statement in *Cuozzo* that its interpretation of section 314(d) would not enable the USPTO to cancel a

---

Board appeals in which constitutional questions have arisen, the government has defended those claims on the merits. *See, e.g.*, *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284 (Fed. Cir. 2015) (Article III and Seventh Amendment challenge to inter partes review). Although Wi-Fi One asserts that it has raised "issues of constitutional due process" in its appeals in these cases, it cites only routine APA arguments in support of that assertion. Br. 52. Such contentions, without more, do not state a colorable constitutional claim. But if the Court were to conclude that Wi-Fi One has raised and preserved constitutional objections to the USPTO's institution decisions in this case, the government would agree that section 314(d) does not bar review of those issues on appeal.

claim for indefiniteness under 35 U.S.C. § 112. *See Cuozzo*, 136 S. Ct. at 2141-42. The

Court explained that "[s]uch 'shenanigans' may be properly reviewable in the context

of § 319 and under the Administrative Procedure Act." *Id.* at 2142 (quoting *id.* at

2155 (Alito, J., dissenting)). That too is unsurprising: an impermissible substantive

patentability ruling by the Board would be reviewable as part of a regular appeal under

section 319 from the Board's final written decision as to patentability.[7] As already

discussed, this Court's jurisdiction in an appeal under section 319 encompasses all

questions of law and fact underlying the Board's patentability decision, apart from the

specific subset of USPTO institution determinations that section 314(d) deems final

and nonappealable. That is why in *Cuozzo* the validity of the USPTO's "broadest

reasonable interpretation" rule was properly before the Court: the agency had applied

that rule in the institution decision, but it had *also* applied the rule in its final

patentability decision on the merits. The patent owner's challenge to that rule was

therefore not a challenge solely to the institution decision, and the government did

not dispute that this Court and the Supreme Court had jurisdiction to address it. The

---

[7] Wi-Fi One incorrectly states (Br. 5 n.4) that the government took a conflicting position before this Court in *Versata Development Group, Inc. v. SAP America, Inc.*, 793 F.3d 1306, 1318 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2510 (2016), with respect to whether 35 U.S.C. § 101 is a permissible basis for the USPTO to cancel a patent claim in a covered business method review. Contrary to Wi-Fi One's suggestion, the government did not argue in *Versata* that this Court lacked jurisdiction to review that question. The *Versata* court itself recognized that the "Government [did] not expressly make that contention" and that "[i]ts nonreviewability argument [was] limited" to other questions in the case. 793 F.3d at 1318.

USPTO's interpretation of section 315(b), by contrast, bears only on the institution decision. It is therefore "final and nonappealable" under section 314(d).

Finally, expanding on the "shenanigans" imagined by Justice Alito in dissent, Wi-Fi One and amici hypothesize various farfetched examples of *ultra vires* acts by the USPTO in institution decisions under the AIA. *See, e.g.*, Br. 37 n.9 (hypothesizing that the USPTO could grant "covered business method" review of a pharmaceutical patent). Hyperbole of this kind does not advance Wi-Fi One's cause. It is of course true that a provision like section 314(d) can sometimes insulate erroneous decisions from judicial review. That is the point of such provisions: Congress would have no need to enact statutes precluding judicial review if they precluded review only of correct decisions. But it does not follow that the USPTO is free to disregard the laws that Congress has enacted. In a case of clear abuse or manifest disregard for the law, a petitioner could seek mandamus relief from this Court to stop the Board from conducting an inter partes review. *See* Fed. R. App. P. 21. And if the circumstances were extraordinary enough to warrant such relief—*e.g.*, post-grant review instituted fifteen years after the patent was granted—we have little doubt the Court would issue the writ.[8] *Cf. Cuozzo*, 136 S. Ct. at 2151 n.5 (Alito, J., dissenting) (acknowledging the

---

[8] That result is not inconsistent with section 314(d) because a petition for a writ of mandamus is not an "appeal," but rather an original action in the court of appeals. *See* 28 U.S.C. § 1651; Fed. R. App. P. 21. Any petition for a writ of mandamus would have to filed at the time of the allegedly unlawful institution decision and subject to the requirements of Rule 21.

possibility that "in extraordinary cases a patent owner might seek mandamus to stop an inter partes review before the proceeding concludes"). But the possibility that mandamus may be appropriate in an extreme case is not a basis for refusing to interpret the language enacted by Congress according to its terms.

It is revealing, moreover, that neither Wi-Fi One nor amici has identified an actual example of the farfetched circumstances they imagine. Many parties in inter partes reviews have sought mandamus from this Court to challenge institution decisions, but the Court has denied all of those petitions, and correctly so. Wi-Fi One's predecessor in interest filed a mandamus petition in this very case, which the Court denied. *In re Telefonaktiebolaget LM Ericsson*, 564 F. App'x 585 (Fed. Cir. 2014). What Wi-Fi One must defend is not just the proposition that *extraordinary* cases may warrant review of some kind, but that *ordinary* cases like this one—a dispute over whether the USPTO should have granted discovery related to a fact-bound privity question—are outside the scope of section 314(d). Wi-Fi One has not made and cannot make that showing.

**C.    Section 315 does not create unique or essential limitations on inter partes review that specially warrant judicial scrutiny.**

Underlying all of Wi-Fi One's arguments is the premise that section 315(b) imposes requirements that are somehow special or uniquely important in the context of the Patent Act. Members of this Court have elaborated on this theme, suggesting that the identity of the petitioner in an inter partes review may be an "essential"

statutory feature that is specially deserving of judicial review. *See, e.g., Click-to-Call Techs., LP v. Oracle Corp.*, No. 2015-1242, 2016 WL 6803054, at *6 (Fed. Cir. Nov. 17, 2016) (Taranto, J., concurring).

That notion has no anchor in the text or structure of the Act. Titled "Relation to other proceedings or actions," section 315 spells out a series of rules governing how inter partes reviews shall relate to district-court infringement actions, other USPTO proceedings, and ITC investigations. *See generally* 35 U.S.C. § 315. Some of those rules restrict the circumstances in which inter partes reviews may proceed. *See* 35 U.S.C. §§ 315(a)(1) ("Inter partes review barred by civil action"), 315(b) ("Patent owner's action"), 315(e) ("Estoppel"). Others facilitate the USPTO's conduct of inter partes reviews. *See* 35 U.S.C. §§ 315(a)(2) ("Stay of civil action"), 315(c) ("Joinder"), 315(d) ("Multiple proceedings").

These are workaday rules that guide the USPTO in carrying out a federal administrative procedure that must coexist with other judicial and administrative processes. They are important for that purpose: if Congress had not enacted section 315, the courts would have been required to decide how inter partes reviews, infringement actions, other USPTO proceedings, and section 337 investigations should coexist. But section 315's requirements are not somehow more fundamental or more important than the particularity requirement of section 312(a)(3), which was at issue in *Cuozzo. Cf. Cuozzo*, 136 S. Ct. at 2154 (Alito, J., dissenting) (emphasizing the importance of section 312(a)(3)'s particularity requirement to the statutory

41

scheme). Nor is section 315(b) more important than any other provision that delimits the circumstances in which the USPTO may institute an inter partes review. Congress assigned no rank or priority among the several provisions that bear on the institution decision. Neither section 314(d) nor the Supreme Court's reasoning in *Cuozzo* draws any such distinction. *See Husky Injection Molding*, 838 F.3d at 1246 (explaining that "the statutes 'closely related' to the decision whether to institute are necessarily, and at least, those that define the metes and bounds of the inter partes review process").

If anything, the text and structure of the AIA refute the notion that Congress regarded the identity of the petitioner as especially important in inter partes reviews. Congress provided in section 315(b) that an inter partes review may not be instituted if the petitioner (or its real party in interest or privy) was served with a complaint alleging infringement more than one year earlier. 35 U.S.C. § 315(b). But in virtually the same breath, Congress provided that this time limitation "shall not apply to a request for joinder under subsection (c)." *Id.* Section 315(c), in turn, grants the Director, "in his or her discretion," the option simply to add any party who files an appropriate petition to an already-pending proceeding related to the same patent, provided that the petition otherwise "warrants the institution of an inter partes review under section 314." 35 U.S.C. § 315(c). In other words, even an indisputably time-barred petitioner can have its petition for inter partes review granted. And if other petitioners settle or drop out of the case, that time-barred petitioner may be the only party left to pursue judicial review of an adverse Board decision, or defend a favorable

42

one.  Wi-Fi One does not explain how that possibility is consistent with its view that section 315(b)'s timeliness requirements are uniquely important to the integrity of the statutory scheme.

Likewise, in section 317, Congress provided that the USPTO may elect to continue with an inter partes review and issue a final written decision addressing the patentability of the challenged claims even when every petitioner in the review has settled or dropped out.  *See* 35 U.S.C. § 317(a) ("If no petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a).").  That provision unequivocally expresses Congress's judgment that the presence of a statutorily proper petitioner is *not* essential to the USPTO's ability to render a final patentability decision in an inter partes review.  And as the Supreme Court observed in *Cuozzo*, it is doubtful "that Congress would have granted the Patent Office this authority [under section 317] . . . if it had thought that the agency's final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review."  136 S. Ct. at 2140.

**CONCLUSION**

For the foregoing reasons and the reasons stated by the panel, the Patent Trial and Appeal Board's final decisions should be affirmed.

Respectfully submitted,

*Of Counsel:*

NATHAN K. KELLEY
   *Solicitor*

THOMAS W. KRAUSE
   *Deputy Solicitor*

BENJAMIN T. HICKMAN
KAKOLI CAPRIHAN
FRANCES M. LYNCH
   *Associate Solicitors*
   *Office of the Solicitor*
   *U.S. Patent and Trademark Office*
   *Mail Stop 8, P.O. Box 1450*
   *Alexandria, VA 22313*

JOYCE R. BRANDA
   *Deputy Assistant Attorney General*

**s/ Mark R. Freeman**
_____

MARK R. FREEMAN
NICOLAS Y. RILEY
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7231*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4814*

MARCH 2017

44

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Mark R. Freeman*
MARK R. FREEMAN

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a), including the type-volume requirements of Rule 32(a)(7). This brief was prepared using 14-point Garamond, a proportionally spaced font. Excluding the items permitted to be excluded under Rule 32(g), the brief contains **11,058** words according to the count of Microsoft Word.

*s/ Mark R. Freeman*
MARK R. FREEMAN

**ADDENDUM**

# TABLE OF CONTENTS

35 U.S.C. § 141..................................................................................................A1

35 U.S.C. § 311..................................................................................................A2

35 U.S.C. § 312..................................................................................................A3

35 U.S.C. § 314..................................................................................................A4

35 U.S.C. § 315..................................................................................................A5

35 U.S.C. § 316..................................................................................................A7

35 U.S.C. § 317..................................................................................................A9

35 U.S.C. § 318................................................................................................ A10

35 U.S.C. § 319................................................................................................ A11

**35 U.S.C. § 141.   Appeal to Court of Appeals for the Federal Circuit.**

**(a) Examinations**.--An applicant who is dissatisfied with the final decision in an appeal to the Patent Trial and Appeal Board under section 134(a) may appeal the Board's decision to the United States Court of Appeals for the Federal Circuit. By filing such an appeal, the applicant waives his or her right to proceed under section 145.

**(b) Reexaminations**.--A patent owner who is dissatisfied with the final decision in an appeal of a reexamination to the Patent Trial and Appeal Board under section 134(b) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

**(c) Post-grant and inter partes reviews**.--A party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) or 328(a) (as the case may be) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

**(d) Derivation proceedings**.--A party to a derivation proceeding who is dissatisfied with the final decision of the Patent Trial and Appeal Board in the proceeding may appeal the decision to the United States Court of Appeals for the Federal Circuit, but such appeal shall be dismissed if any adverse party to such derivation proceeding, within 20 days after the appellant has filed notice of appeal in accordance with section 142, files notice with the Director that the party elects to have all further proceedings conducted as provided in section 146. If the appellant does not, within 30 days after the filing of such notice by the adverse party, file a civil action under section 146, the Board's decision shall govern the further proceedings in the case.

**35 U.S.C. § 311.   Inter Partes Review.**

**(a) In general**.--Subject to the provisions of this chapter, a person who is not the owner of a patent may file with the Office a petition to institute an inter partes review of the patent. The Director shall establish, by regulation, fees to be paid by the person requesting the review, in such amounts as the Director determines to be reasonable, considering the aggregate costs of the review.

**(b) Scope**.--A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.

**(c) Filing deadline**.--A petition for inter partes review shall be filed after the later of either--

    **(1)** the date that is 9 months after the grant of a patent; or

    **(2)** if a post-grant review is instituted under chapter 32, the date of the termination of such post-grant review.

**35 U.S.C. § 312.   Petitions.**

**(a) Requirements of petition**.--A petition filed under section 311 may be considered only if--

> **(1)** the petition is accompanied by payment of the fee established by the Director under section 311;
>
> **(2)** the petition identifies all real parties in interest;
>
> **(3)** the petition identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim, including--
>
> > **(A)** copies of patents and printed publications that the petitioner relies upon in support of the petition; and
> >
> > **(B)** affidavits or declarations of supporting evidence and opinions, if the petitioner relies on expert opinions;
>
> **(4)** the petition provides such other information as the Director may require by regulation; and
>
> **(5)** the petitioner provides copies of any of the documents required under paragraphs (2), (3), and (4) to the patent owner or, if applicable, the designated representative of the patent owner.

**(b) Public availability.**--As soon as practicable after the receipt of a petition under section 311, the Director shall make the petition available to the public.

A3

**35 U.S.C. § 314.   Institution of inter partes review.**

**(a) Threshold.**--The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

**(b) Timing.**--The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after--

    **(1)** receiving a preliminary response to the petition under section 313; or

    **(2)** if no such preliminary response is filed, the last date on which such response may be filed.

**(c) Notice.**--The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable. Such notice shall include the date on which the review shall commence.

**(d) No appeal.**--The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

**35 U.S.C. § 315.   Relation to other proceedings or actions.**

**(a) Infringer's civil action.--**

    **(1) Inter partes review barred by civil action**.--An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent.

    **(2) Stay of civil action**.--If the petitioner or real party in interest files a civil action challenging the validity of a claim of the patent on or after the date on which the petitioner files a petition for inter partes review of the patent, that civil action shall be automatically stayed until either--

    **(A)** the patent owner moves the court to lift the stay;

    **(B)** the patent owner files a civil action or counterclaim alleging that the petitioner or real party in interest has infringed the patent; or

    **(C)** the petitioner or real party in interest moves the court to dismiss the civil action.

    **(3)** Treatment of counterclaim.--A counterclaim challenging the validity of a claim of a patent does not constitute a civil action challenging the validity of a claim of a patent for purposes of this subsection.

**(b) Patent owner's action**.--An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

**(c) Joinder.**--If the Director institutes an inter partes review, the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition under section 311 that the Director, after receiving a preliminary response under section 313 or the expiration of the time for filing such a response, determines warrants the institution of an inter partes review under section 314.

**(d) Multiple proceedings.--**Notwithstanding sections 135(a), 251, and 252, and chapter 30, during the pendency of an inter partes review, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination of any such matter or proceeding.

**(e) Estoppel.--**

    **(1) Proceedings before the Office**.--The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

    **(2) Civil actions and other proceedings**.--The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

**35 U.S.C. § 316.   Conduct of inter partes review.**

**(a) Regulations.**--The Director shall prescribe regulations--

**(1)** providing that the file of any proceeding under this chapter shall be made available to the public, except that any petition or document filed with the intent that it be sealed shall, if accompanied by a motion to seal, be treated as sealed pending the outcome of the ruling on the motion;

**(2)** setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a);

**(3)** establishing procedures for the submission of supplemental information after the petition is filed;

**(4)** establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title;

**(5)** setting forth standards and procedures for discovery of relevant evidence, including that such discovery shall be limited to--

**(A)** the deposition of witnesses submitting affidavits or declarations; and

**(B)** what is otherwise necessary in the interest of justice;

**(6)** prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding;

**(7)** providing for protective orders governing the exchange and submission of confidential information;

**(8)** providing for the filing by the patent owner of a response to the petition under section 313 after an inter partes review has been instituted, and requiring that the patent owner file with such response, through affidavits or declarations, any additional factual evidence and expert opinions on which the patent owner relies in support of the response;

**(9)** setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims, and ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent;

**(10)** providing either party with the right to an oral hearing as part of the proceeding;

**(11)** requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c);

**(12)** setting a time period for requesting joinder under section 315(c); and

**(13)** providing the petitioner with at least 1 opportunity to file written comments within a time period established by the Director.

**(b) Considerations**.--In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

**(c) Patent Trial and Appeal Board.**--The Patent Trial and Appeal Board shall, in accordance with section 6, conduct each inter partes review instituted under this chapter.

**(d) Amendment of the patent**.--

**(1) In general.**--During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:

**(A)** Cancel any challenged patent claim.

**(B)** For each challenged claim, propose a reasonable number of substitute claims.

**(2) Additional motions**.--Additional motions to amend may be permitted upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director.

**(3) Scope of claims**.--An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.

**(e) Evidentiary standards**.--In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

A8

**35 U.S.C. § 317.   Settlement.**

**(a) In general**.--An inter partes review instituted under this chapter shall be terminated with respect to any petitioner upon the joint request of the petitioner and the patent owner, unless the Office has decided the merits of the proceeding before the request for termination is filed. If the inter partes review is terminated with respect to a petitioner under this section, no estoppel under section 315(e) shall attach to the petitioner, or to the real party in interest or privy of the petitioner, on the basis of that petitioner's institution of that inter partes review. If no petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a).

**(b) Agreements in writing**.--Any agreement or understanding between the patent owner and a petitioner, including any collateral agreements referred to in such agreement or understanding, made in connection with, or in contemplation of, the termination of an inter partes review under this section shall be in writing and a true copy of such agreement or understanding shall be filed in the Office before the termination of the inter partes review as between the parties. At the request of a party to the proceeding, the agreement or understanding shall be treated as business confidential information, shall be kept separate from the file of the involved patents, and shall be made available only to Federal Government agencies on written request, or to any person on a showing of good cause.

**35 U.S.C. § 318.   Decision of the Board.**

**(a) Final written decision**.--If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

**(b) Certificate**.--If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

**(c) Intervening rights**.--Any proposed amended or new claim determined to be patentable and incorporated into a patent following an inter partes review under this chapter shall have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation therefor, before the issuance of a certificate under subsection (b).

**(d) Data on length of review**.--The Office shall make available to the public data describing the length of time between the institution of, and the issuance of a final written decision under subsection (a) for, each inter partes review.

A10

**35 U.S.C. § 319.  Appeal.**

A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) may appeal the decision pursuant to sections 141 through 144. Any party to the inter partes review shall have the right to be a party to the appeal.