Nos. 2015-1944, -1945, -1946

# United States Court of Appeals
# for the Federal Circuit

WI-FI ONE, LLC,

*Appellant*,

v.

BROADCOM CORPORATION,

*Appellee*.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, IPR2013-00601, IPR2013-00602, IPR2013-00636

**BRIEF OF AMICUS CURIAE APPLE INC.
IN SUPPORT OF APPELLEE BROADCOM CORPORATION**

Joseph R. Guerra
Jeffrey P. Kushan
Thomas A. Broughan III
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000

*Attorneys for Amicus Curiae*

March 27, 2017

**CERTIFICATE OF INTEREST**

In accordance with Fed. Cir. R. 47.4 and Fed. R. App. P. 26.1, counsel for

Amicus Curiae Apple Inc. certifies the following:

1. The full name of every party or amicus represented by me is:

   Apple Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

   Joseph R. Guerra, Jeffrey P. Kushan, Thomas A. Broughan III of Sidley Austin LLP.


Date: March 27, 2017                          /s/Joseph R. Guerra
                                              *Attorney for Amicus Curiae*

ii

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST OF *AMICUS CURIAE*.............................................1

SUMMARY OF ARGUMENT .................................................................4

ARGUMENT ...........................................................................................5

I.   AS INTERPRETED BY *CUOZZO*, § 314(d) BARS REVIEW OF
TIMELINESS CHALLENGES UNDER § 315(b). ................................................5

   A.   *Cuozzo*'s Interpretation Of § 314(d) Governs Judicial Review Of More
   Than Just "Reasonable Likelihood" Determinations Under § 314(a)....................5

   B.   Section 315(b)'s Time-Bar Is Not "Jurisdictional" Or A Statutory Mandate
   That The Board May Not Transgress. ................................................10

II.  *CUOZZO*'s INTERPRETATION OF § 314(d) IS CONSISTENT WITH
CONGRESSIONAL INTENT. ..............................................................14

   A.   Precluding Judicial Review Of Timeliness Decisions Does Not Render
   § 315(b) Nugatory. ...................................................................15

   B.   Judicial Review Of Timeliness Decisions Will Frustrate The Purposes Of
   *Inter Partes* Review Proceedings. ...................................................17

CONCLUSION .......................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Achates Reference Publishing, Inc. v. Apple Inc.*,
 803 F.3d 652 (Fed. Cir. 2015) ................................................................*passim*

*Aerohive Networks, Inc. v. Chrimar Sys., Inc.*,
 IPR2016-01757, Paper 11 (Feb. 3, 2017) ........................................................16

*Ariel Land Owners, Inc. v. Dring*,
 351 F.3d 611 (3d Cir. 2003) ...........................................................................13

*Aruze Gaming Macau, Ltd. v. MGT Gaming, Inc.*,
 IPR2014-01288, Paper 13 (Feb. 20, 2015) ......................................................19

*Campbell v. Holt*,
 115 U.S. 620 628-29 (1885) ............................................................................21

*Chase Securities Corp. v. Donaldson*,
 325 U.S. 304 (1945)........................................................................................21

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
 467 U.S. 837 (1984)........................................................................................11

*City of Arlington* v. *FCC*,
 133 S. Ct. 1863 (2013)....................................................................................11

*Coalition for Affordable Drugs II LLC v. NPS Pharma., Inc.*,
 IPR2015-00990, Paper 14 (July 2, 2015) .........................................................20

*Cuozzo Speed Techologies, LLC v. Lee*,
 136 S. Ct. 2131 (2016)..............................................................................*passim*

*First Data Corp. v. Cardsoft, LLC*,
 IPR2014-00715, Paper 9 (Oct. 17, 2014) ..................................................17, 19

*Galderma S.A. v. Allergan Industrie, SAS*,
 IPR2014-01422, Paper 14 (Mar. 5, 2015) .......................................................17

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*,
 IPR2012-00001, Paper 20 (Feb. 14, 2013)......................................................21

*General Electric Co. v. Transdata, Inc.*,
   IPR2014-01505, Paper 27 (Apr. 15, 2015)........................................................17

*General Electric Co. v. Transdata, Inc.*,
   IPR2014-01380, Paper 15 (Nov. 12, 2014) ......................................................20

*Gonzalez v. Banco Cent. Corp.*,
   27 F.3d 751 (1st Cir. 1994) .............................................................................19

*Johnson Health Tech. Co., Ltd. v. Icon Health & Fitness, Inc.*,
   IPR2014-01242, Paper 16..........................................................................16, 19

*Kontrick v. Ryan*,
   540 U.S. 443 (2004).........................................................................................14

*LG Electronics, Inc. v. Mondis Technology Ltd.*,
   IPR2015-00937, Paper 8 (Sept. 17, 2015)........................................................15

*Loral Space & Commc'ns, Inc. v. Viasat, Inc.*,
   IPR2014-00239, Paper 7 (Apr. 21, 2014).........................................................16

*Sebelius* v. *Auburn Reg'l Med. Ctr.*,
   133 S. Ct. 817 (2013).................................................................................12, 14

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
   IPR2013-00258, Paper 29 (Oct. 16, 2013) .......................................................16

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).................................................................................13, 18

*Terremark N. Am. LLC v. Joao Control & Monitoring Sys., LLC*,
   IPR2015-01482, Paper 10 (Dec. 28, 2015)........................................................16

*Tristar Prod., Inc., v. Choon's Design, LLC*,
   IPR2015-00838, Paper 8 (Aug. 26, 2015) .........................................................16

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) (Scalia, J., dissenting) .....................................................20

*Universal Remote Control, Inc. v. Universal Elecs., Inc.*,
   IPR2013-00168, Paper 9 (Aug. 26, 2013)..........................................................16

*Versata Dev. Grp., Inc. v. SAP America, Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ..............................................................7

*VMware, Inc. v. Good Tech. Software, Inc.*,
    IPR2014-01324, Paper 25 (Dec. 5, 2014)..........................................20

*VMWare, Inc. v. Good Tech. Software, Inc.*,
    IPR2014-01324, Paper 28 (Feb. 20, 2015) .........................................19

*Zoll Lifecor Corp. v. Philips Elecs. N. Am. Corp.*,
    IPR2013-00609, Paper 15 (Mar. 20, 2014) ...................................17, 19

*ZTE Corp. v. ContentGuard Holdings Inc.*,
    IPR2013-00454, Paper 12 (Sept. 25, 2013) .......................................16

**Statutes**

5 U.S.C. § 706(2)(B) .................................................................................10

5 U.S.C. § 706(2)(C) ............................................................................10, 14

35 U.S.C. § 112 ...........................................................................................9

35 U.S.C. § 313 ...........................................................................................7

35 U.S.C. § 314(a) ..........................................................................5, 8, 12, 14

35 U.S.C. § 314(d) .............................................................................*passim*

35 U.S.C. § 315(a)(1)..................................................................................9

35 U.S.C. § 315(b) .............................................................................*passim*

35 U.S.C. § 316(a)(5)................................................................................20

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
    (2011) ...............................................................................................1, 2

**Other Authorities**

37 C.F.R. § 42.3 ........................................................................................14

37 C.F.R. § 42.104(a)................................................................................14

154 Cong. Rec. S9988-89 (Sept. 27, 2008) ..............................................20

157 Cong Rec. S1053 (daily ed. Mar. 1, 2011) (Statement of Sen. Schumer) ...................................................................................................18

157 Cong. Rec. S128 (daily ed. Jan. 25, 2011) (Statement of Sen. Leahy) ........................................................................................................18

77 Fed. Reg. 48,680 (Aug. 14, 2012) ....................................................................14

77 Fed. Reg. 48,756 (Aug. 14, 2012) ....................................................................18

18 C. Wright & A. Miller, Federal Practice and Procedure Juris. § 4405 (3d ed. 2004) ..........................................................................................13

H.R. Rep. No. 112-98, pt. 1, *reprinted in* 2011 U.S.C.C.A.N. 67 (2011) ..................................................................................................................18

Lex Machina, Patent Litigation Year in Review 2016 (Mar. 2017) ..........................2

Unified Patents, 2016 Annual Patent Disputes Report, https://www.unifiedpatents.com/news/2016/12/28/2016-annual-patent-dispute-report ...........................................................................................1, 2

USPTO, Patent Trial and Appeal Board Statistics (Oct. 31, 2016), https://www.uspto.gov/sites/default/ ...............................................................2

USPTO Standard Operating Procedure 2 (Rev. 9, Sept. 22, 2014) ........................16

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Apple Inc. holds a substantial patent portfolio and thus, like some of the *amici* supporting appellant Wi-Fi One, LLC ("Wi-Fi One"), has an interest in ensuring that the law protects patents that represent genuine additions to innovation. At the same time, however, Apple has a strong interest in ensuring the efficacy of processes Congress has created to eliminate improper patents that function only as a private tax on innovation.

Suits brought by non-practicing entities made up the majority of patent disputes filed in 2016, accounting for 55% of all newly filed patent cases, and for more than 90% of all such cases against high-tech companies.[2] Thanks in part to the procedures established by the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011), including *inter partes* review (IPR) and covered business method review (CBM), Apple and other technology companies have been able to resolve suits brought by non-practicing entities more expeditiously, and at reduced cost. Approximately 55% of newly-filed IPR and

---

[1] No counsel for any party authored this brief, in whole or in part, and no person other than Apple and its counsel made a monetary contribution to the preparation or submission of this brief. The Court granted permission to file amicus briefs without consent of the parties by order dated January 4, 2017

[2] *See* Unified Patents, 2016 Annual Patent Disputes Report, https://www.unifiedpatents.com/news/2016/12/28/2016-annual-patent-dispute-report

CBM petitions in 2016 were filed by high-tech companies, and almost 65% of those involved patents owned by non-practicing entities.[3]

More broadly, AIA proceedings have had the effect Congress intended. The most recent statistics compiled by the Patent and Trademark Office (PTO) on all AIA proceedings show that the Patent Trial and Appeal Board (Board) is weeding out invalid claims. Just over 50% of its IPR institution decisions (1,971 out of 3,770) granted institution.[4] The Board has issued final decisions in 1,261 of the IPR proceedings it has instituted, finding all challenged claims unpatentable in 68% of the cases (859), some challenged claims unpatentable in 16% of the cases (199), and none of the challenged claims unpatentable in 16% of the cases (203).[5] In 2015-16, district courts granted or partially granted approximately 69% of motions to stay litigation pending AIA proceedings.[6]

Automatic judicial review of the Board's timeliness decisions—and the discovery disputes that so often accompany them—would significantly undermine the purposes of the IPR scheme. Indeed, Apple's experience in the very case the

---

[3] *See id.*

[4] *See* USPTO, Patent Trial and Appeal Board Statistics at 10 (Oct. 31, 2016), https://www.uspto.gov/sites/default/ files/documents/ aia_statistics_october2016.pdf.

[5] *Id.*

[6] *See* Lex Machina, Patent Litigation Year in Review 2016, p. 13 (Mar. 2017).

Court is reconsidering illustrates why. In *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), a non-practicing patent owner sued several companies for infringement, waited a year to sue Apple, then claimed that Apple was barred from filing its IPR petition because it was allegedly in privity with one of the earlier-sued defendants, which sold software through Apple's App Store among other distribution channels. After the Board rejected that gambit and found the patent claims invalid, Achates raised no challenge whatsoever to the Board's substantive ruling. Instead, it sought to overturn that ruling based solely on a timeliness challenge—a challenge made possible by Achates' unilateral delay in naming additional defendants in its amended complaint. Achates thus sought to manipulate the procedural rules to escape legitimate validity challenges to its patents in the IPR process.

Although Apple believes that the Board has, in some cases, erroneously denied institution of IPR petitions on timeliness grounds, Apple nevertheless supports the bar on judicial review of such institution decisions. On balance, barring review of decisions that institute IPR over timeliness objections ensures that IPR proceedings continue to serve as quick, efficient and cost-effective alternatives to district court litigation, as Congress intended. Apple therefore urges this Court to affirm *Achates*'s holding that 35 U.S.C. § 314(d) bars appeals of the Board's institution decisions over timeliness objections.

## SUMMARY OF ARGUMENT

In *Cuozzo Speed Techologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), the Supreme Court interpreted § 314(d) in light of the strong presumption of judicial review. Under that interpretation, § 314(d) bars review of issues involving statutes "closely related" to decisions to institute IPR. *Id.* at 2141. Section 315(b), which governs the timeliness of petitions to institute IPRs, is indisputably such a statute. *Achates* thus remains good law.

Moreover, *Achates*'s focus on the non-jurisdictional nature of § 315(b)'s timeliness requirement was neither erroneous nor improper. The panel determined that this requirement, like most limitations periods, is not "jurisdictional," and thus is not a statutory mandate. That ruling is entirely correct, and it confirms that judicial review of Board decisions involving timeliness issues is not necessary to prevent *ultra vires* action.

Nor is judicial review necessary to ensure that § 315(b) is given effect. Numerous decisions demonstrate that the Board regularly enforces the timeliness requirement. Thus, fears that enforcement of § 314(d)'s judicial review bar in accordance with *Cuozzo*'s controlling interpretation will give rise to agency lawlessness are unfounded.

By contrast, failing to enforce the judicial review bar with respect to timeliness decisions would plainly frustrate IPR's central purpose. Decisions under

4

§ 315(b) often involve fact-intensive disputes over claims of privity or real parties-in-interest, coupled with equally fact-dependent disputes over discovery into a petitioner's relationships with non-parties. Automatic judicial review of such disputes would undermine Congress's goal of providing an efficient and less expensive way of weeding out invalid patents. Indeed, patent owners will have every incentive to routinely appeal such rulings at the end of the proceeding when, as in this case and *Achates*, the Board invalidates the underlying patent claims.

**ARGUMENT**

### I.    AS INTERPRETED BY *CUOZZO*, § 314(d) BARS REVIEW OF TIMELINESS CHALLENGES UNDER § 315(b).

#### A.    *Cuozzo*'s Interpretation Of § 314(d) Governs Judicial Review Of More Than Just "Reasonable Likelihood" Determinations Under § 314(a).

In seeking to overturn *Achates*, Wi-Fi One is forced to portray *Cuozzo* as an exceptionally narrow ruling. Wi-Fi One contends that "*Cuozzo* extended … preclusion outside of § 314 (to the § 312 'particularity' requirement for petitions) only because the Court found that '*Cuozzo*'s claim … under § 312 is little more than a challenge to the Patent Office's conclusion, under § 314(a), that the "information presented in the petition" warranted review.'" Br. at 41 (quoting *Cuozzo*, 136 S. Ct. at 2142). On this view, *Cuozzo* held that § 314(d) bars judicial review of only those institution decisions that are the functional equivalent of a "reasonable likelihood" determination under § 314(a). According to Wi-Fi One,

5

therefore, this Court must now apply the presumption of judicial review to determine whether § 314(d) can be "extended" to bar review of timeliness decisions under § 315(b). Wi-Fi-One's narrow characterization of *Cuozzo*, however, is incorrect.

In *Cuozzo*, the Supreme Court engaged in a detailed statutory analysis to determine whether, and if so to what extent, Congress intended to override the presumption of judicial review with respect to institution decisions. *Cuozzo*, 136 S. Ct. at 2139-41. The Court concluded that the text of § 314(d), "along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting *inter partes* review, all point in favor of precluding review of the Patent Office's institution decisions." *Id.* at 2141. The Court did not simply rule that § 314(d) barred judicial review of § 312 "particularity" determinations. Rather, the Court itself "emphasize[d] that [its] interpretation applies where the grounds for attacking the decision to institute inter partes review consists of questions that are closely tied to the application and interpretation of *statutes related to the Patent Office's decision to initiate inter parties review*." *Id.* (emphasis added); *see also id.* (declining to decide "the precise effect of § 314(d) on appeals … that depend on other *less closely related statutes*") (emphasis added). It was only after announcing this governing test, derived from its examination of the statute as a whole, that the

6

Court held that § 314(d) bars review "where a patent holder merely challenges the Patent Office's 'determin[ation] that the information presented in the petition … shows that there is a reasonable likelihood' of success 'with respect to at least 1 of the claims challenged.'" *Id.* at 2142 (quoting 35 U.S.C. § 314(a)).

In light of *Cuozzo*'s governing interpretation of § 314(d), the continued validity of *Achates*'s holding does not turn on whether *Achates* discussed the presumption of judicial review.[7] Nor is it necessary or appropriate for this Court to re-examine the text, structure, and purpose of the IPR statute to determine whether Congress intended to preclude review of institution decisions involving issues of timeliness. Under *Cuozzo*, the validity of *Achates* turns on whether § 315(b) is "closely related" to the decision to institute IPR. The answer to that question is plainly "yes."

Section 315(b) expressly addresses institution of IPR. It provides that IPR "may not be *instituted* if" certain time requirements are not met. 35 U.S.C. § 315(b) (emphasis added). Moreover, § 313 allows patent owners to file a preliminary response setting forth "reasons why no [IPR] should be *instituted* based upon the failure of the petition to meet any requirement *of this chapter*." *Id.*

---

[7] *Achates* did cite *Versata Dev. Grp., Inc. v. SAP America, Inc.*, 793 F.3d 1306 (Fed. Cir. 2015), extensively, *see Achates*, 803 F.3d at 656-57, and *Versata* addressed the presumption of judicial review at length, *see* 793 F.3d at 1320-22.

§ 313 (emphases added). Timeliness under § 315(b) is a requirement of "this chapter." Thus, because § 315(b)'s time-bar is a ground for not *instituting* IPR, § 315(b) is necessarily a statute "closely related" to the decision to institute IPR.

Wi-Fi One's contentions to the contrary are unavailing. It argues that, while a § 314(a) determination "has a close nexus" to the PTO's expertise in determining patent validity, a § 315(b) timeliness finding "is wholly unrelated to the agency's special expertise." Br. at 46. Wi-Fi One also notes that the PTO has never viewed § 315(b)'s timeliness requirement "as being *only* relevant to institution," and that any argument "that characterizes § 315(b) as *solely* an 'institution' decision merely because § 315(b) uses the word 'institution' elevates form over substance." *Id.* at 46-47 (emphases added).

In *Cuozzo*, however, the Court did not rule that § 314(d) bars review of "questions that are closely tied to *the PTO's area of special expertise*." Nor did it hold that § 314(d) bars review of questions that arise under "statutes *solely* related to institution decisions." The Court made clear that the judicial review bar applies to issues arising under any statute "closely related" to institution decisions. Section 315(b)'s timeliness requirement for petitions to institute, like § 312's particularity requirement for such petitions, is closely related to institution decisions.

Any conceivable doubt on this score is laid to rest by the *Cuozzo* majority's response to Justice Alito's dissent. Justice Alito observed, twice, that the

8

majority's interpretation of § 314(d) would preclude review of timeliness decisions under § 315(b). First, he stated that, if the Board failed to enforce the prohibition of § 315(a)(1) or (b), patent owners would be exposed to multiple proceedings. 136 S. Ct. at 2154. Congress thought this was improper, he said, "[y]et, according to the Court, Congress made courts powerless to correct such abuses." *Id.* Second, Justice Alito said that "the *petition's timeliness*, no less than the particularity of its allegations, *is* 'closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate … review,' *and the Court says that such questions are unreviewable.*" *Id.* at 2155 (emphases added).

Critically, the majority did not dispute or disavow Justice Alito's understanding with respect to the scope of the statute's bar on judicial review of timeliness decisions. In fact, in explaining the limits of that bar, the majority changed Justice Alito's hypothetical, in which he suggested that the PTO might engage in an untimely post-grant review (PGR), then invalidate a patent as indefinite under § 112, which is permissible in PGR but not IPR. *Id.* The majority responded by eliminating any reference to an untimely PGR petition and stated instead that § 314(d) would not bar review of a final decision where the Board "act[s] outside its statutory limits by, for example, canceling a patent claim for 'indefiniteness under § 112' in *inter partes* review." *Id.* at 2141-42. Thus, in identifying a "shenanigan[]" that could be set aside as "'in excess of statutory

9

jurisdiction,'" *id.* at 2142 (quoting 5 U.S.C. § 706(2)(C)), the majority notably did not include a Board decision on the timeliness of a petition.[8]

This exchange between the majority and dissent—rather than the majority's use of phrases such as "mine-run" claims, Wi-Fi One Br. at 3, 39—confirms that the Court understood § 315(b)'s timeliness requirement to be "closely related" to the institution decision. Under *Cuozzo*'s interpretation, therefore, § 314(d) bars review of decisions to institute over timeliness objections.

### B.      Section 315(b)'s Time-Bar Is Not "Jurisdictional" Or A Statutory Mandate That The Board May Not Transgress.

Wi-Fi One also argues that *Achates* should be overruled because it "erroneous[ly]" focused on whether § 315(b) is a "jurisdictional" statute. Wi-Fi One Br. at 2; *see also id*. at 35-38. This claim is likewise mistaken. *Achates* properly determined that § 315(b) is a non-jurisdictional statute of limitations, or claims-processing rule, that governs a petitioner's procedural obligations, not the Board's adjudicative authority. 803 F.3d at 657-58. That determination, in turn, refutes the theory that timeliness decisions must be reviewable in order to ensure

---

[8] The Court also recognized that § 314(d) would not bar review of a final decision "where a petition fails to give 'sufficient notice' such that there is a due process problem with the entire proceeding," as action that could be set aside as "'contrary to constitutional right.'" 136 S. Ct. at 2141-42 (quoting 5 U.S.C. § 706(2)(B)).

that the Board does not violate a "statutory mandate" that "deprives [it] of jurisdiction to consider whether to institute a review." NYIPLA Br. at 7-9.

Wi-Fi One contends that the Supreme Court "abrogated any supposed distinction between 'jurisdictional' and 'non-jurisdictional' agency statutes" in *City of Arlington* v. *FCC*, 133 S. Ct. 1863 (2013), where it allegedly held "that *all* statutory directives to an agency are jurisdictional, impose limitations on the agency's authority to act, and must be followed." Br. at 37. But *City of Arlington* eschewed inquiries into whether statutory provisions are "jurisdictional" in order to *increase agency discretion*, not limit it, under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Specifically, *City of Arlington* rejected the "misconception that there are, *for Chevron purposes*, separate 'jurisdictional' questions" as to which an agency's interpretation is not entitled to deference, 133 S. Ct. at 1868 (emphasis added)—a misconception that would improperly "transfer any number of interpretive decisions… about how best to construe an ambiguous term in light of competing policy interests… from the agencies that administer the statutes to federal courts," *id.* at 1873. The Court noted the truism that agencies' powers are "prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *Id.* at 1869. But the Court did not rule that all statutory provisions are mandatory, jurisdictional limitations on an agency's authority to act.

11

To the contrary, that very same term, the Court recognized that time limits on an agency's adjudicative authority can be either jurisdictional or non-jurisdictional, and it re-affirmed the presumption that "filing deadlines ordinarily are *not* jurisdictional." *Sebelius* v. *Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 825 (2013) (emphasis added). The Court explained that filing deadlines do not limit an agency's adjudicative power unless "Congress has 'clearly state[d]' that the rule is jurisdictional." *Id.* at 824. And this clear statement rule is stringent: "a time limitation may be emphatic, yet not jurisdictional." *Id.* at 825. Thus, the critical question is whether the IPR statute clearly states that § 315(b)'s one-year time limitation is a jurisdictional limit on the Board's adjudicative authority. No such clear statement can be found in the IPR statute.

The language of § 315(b)—that IPR "*may not* be instituted if"—is not written in "mandatory" or "compulsory" terms. IPO Br. at 9. This phrase does not even use "the mandatory word 'shall,'" *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824, or its negative equivalent, "shall not." The phrase "may not be instituted if" in § 315(b) is essentially the same formulation used in § 314(a) (Director "*may not* authorize an [IPR] to be instituted *unless*" he finds petitioner has a "reasonable likelihood" of prevailing) (emphases added). Yet, Wi-Fi One and its *amici* do not contend that "reasonable likelihood" determinations are jurisdictional, and that judicial review of such decisions is necessary to ensure that the Board complies

12

with compulsory or mandatory limits on its adjudicative authority. Thus, the phrase "may not be instituted" under § 315(b) must be understood to create a non-mandatory, and thus waivable, time limitation. *See*, *e.g.*, *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 614-16 (3d Cir. 2003) (statute providing that a case "may not be removed" to federal court more than a year after suit is commenced is not jurisdictional but a time-bar that can be forfeited).

In addition, Congress used the concept of "privy" in § 315(b) to define the scope of the timeliness requirement. *See* 35 U.S.C. § 315(b) ("An *inter partes* review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."). Privity is a preclusion principle in common law, *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008), and preclusion does not implicate a tribunal's authority to act, but instead can be waived by a party. *See* 18 C. Wright & A. Miller, Federal Practice and Procedure Juris. § 4405 (3d ed. 2004). The fact that § 315(b)'s timeliness requirement is tied to a waivable defense under common law confirms that the timeliness requirement is not jurisdictional.

In short, the IPR statute contains no clear statement that § 315(b) is jurisdictional, and all relevant statutory evidence demonstrates that it is not. As a consequence, § 315(b) is necessarily a claims-processing rule, even though (like

13

§ 314(a)) it is framed in terms of what the Board "may not" do, rather than what a petitioner "must" do.[9] *Cf. Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) (treating, as a forfeitable claim-processing requirement, rules that limited when a claim could be brought and restricted court's authority to enlarge that time). Accordingly, if the Board erroneously institutes IPR at the behest of a time-barred petitioner, that error does not render its action "'in excess of statutory jurisdiction.'" *Cuozzo*, 136 S. Ct. at 2142 (quoting 5 U.S.C. § 706(2)(C)).

## II.    *CUOZZO*'s INTERPRETATION OF § 314(d) IS CONSISTENT WITH CONGRESSIONAL INTENT.

Barring judicial review of timeliness will not render § 315(b) nugatory. By contrast, automatic judicial review of timeliness disputes—many of which are highly fact-based and often involve equally fact-intensive discovery disputes—would completely frustrate Congress's goal of providing an efficient and less expensive way of weeding out invalid patents.

---

[9] PTO regulations reflect this as well, providing that a petition for IPR "must be filed with the Board consistent with any time period required by statute," 37 C.F.R. § 42.3(b), and requiring a certification that the petitioner "is not barred or estopped from requesting an *inter partes* review," *id.* § 42.104(a). At the same time, to the extent PTO regulations and guidance use the terms "jurisdiction," *id.* § 42.3, or "standing," Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48,680, 48,695 (Aug. 14, 2012), in connection with § 315(b), that loose and inaccurate terminology does not alter the fact that no clear statement demonstrates that § 315(b)'s time bar is jurisdictional. *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824 ("jurisdiction has been a 'word of many, too many, meanings'").

### A.    Precluding Judicial Review Of Timeliness Decisions Does Not Render § 315(b) Nugatory.

Wi-Fi One's *amici* express concern that, absent judicial review, § 315(b) will become a dead letter. Indeed, at least one contends that, as a result of *Achates*, "the PTO has flouted § 315(b)'s one-year time limit." *See*, *e.g.*, Elm 3DS Innovations Br. at 5. The Board's decisions, however, tell a different story.

In *LG Electronics, Inc. v. Mondis Technology Ltd.*, IPR2015-00937, the Board denied a petition filed six years after the petitioner was first served with a complaint for infringement, but within one year of the date the petitioner was served with a second complaint. The Board explained that it would not "amend § 315(b) by inserting either 'latest' or 'second' into the statute…. Put simply, the date a complaint was served (January 11, 2008) predates the date LG filed this Petition (March 27, 2015) by more than one year." Paper 8 at 5 (Sept. 17, 2015) (Precedential). Accordingly, the Board declined to institute IPR. *Id.* By designating this decision precedential, moreover, the Board made it binding "in subsequent matters involving similar facts or issues." *See* USPTO Standard Operating Procedure 2 (Rev. 9, Sept. 22, 2014). And even before that precedential decision,

15

the Board had rejected numerous other petitions based on the timeliness

requirement.[10]

Similarly, the Board has declined to institute IPRs where it has found the

petitioner to be in privity with a time-barred entity or where a time-barred entity is

a real party in interest. In *Johnson Health Tech. Co., Ltd. v. Icon Health & Fitness,*

*Inc.,* IPR2014-01242, the Board denied the petition where the petitioner's

corporate parent was time-barred. Paper 16 at 8-10 (Feb. 11, 2015). In other cases

involving related corporate entities with similar relationships, the Board has

---

[10] *See Loral Space & Commc'ns, Inc. v. Viasat, Inc.,* IPR2014-00239, Paper 7 (Apr. 21, 2014) (denying petition filed more than one year after petitioner was first served with a complaint but within one year of a second complaint); *Universal Remote Control, Inc. v. Universal Elecs., Inc.*, IPR2013-00168, Paper 9 (Aug. 26, 2013) (same); *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, IPR2013-00258, Paper 29 (Oct. 16, 2013) (same); *Terremark N. Am. LLC v. Joao Control & Monitoring Sys., LLC*, IPR2015-01482, Paper 10 (Dec. 28, 2015) (denying petition filed one day after § 315(b) deadline); *Tristar Prod., Inc., v. Choon's Design, LLC*, IPR2015-00838, Paper 8 (Aug. 26, 2015) (denying petition filed exactly one year after date identified in the proof of service filed in the corresponding litigation, because patent owner presented evidence of an earlier service date); *Aerohive Networks, Inc. v. Chrimar Sys., Inc.,* IPR2016-01757, Paper 11 (Feb. 3, 2017) (denying petition filed after one year that sought joinder to a prior-filed proceeding involving the same patent where the earlier proceeding had already been terminated); *ZTE Corp. v. ContentGuard Holdings Inc.*, IPR2013-00454, Paper 12 (Sept. 25, 2013) (Informative) (same).

reached the same conclusion.[11] And the Board has denied petitions based on certain indemnification conduct and other fact-dependent circumstances.[12]

In light of this history of the Board's enforcement of § 315(b)'s requirements, claims that judicial review is necessary to prevent agency lawlessness ring hollow.[13]

### B. Judicial Review Of Timeliness Decisions Will Frustrate The Purposes Of *Inter Partes* Review Proceedings.

By contrast, automatic judicial review of decisions to institute IPR over timeliness objections will open the floodgates to appeals of fact-intensive disputes

---

[11] *See Zoll Lifecor Corp. v. Philips Elecs. N. Am. Corp.,* IPR2013-00609, Paper 15 at 14 (Mar. 20, 2014) (finding the "relationship between ZOLL Medical and Petitioner is, and has been, so close that Petitioner and ZOLL Medical should enjoy the benefits, as well as the burden, of being in privity for purposes of [IPR]"); *Galderma S.A. v. Allergan Industrie, SAS*, IPR2014-01422, Paper 14 at 12 (Mar. 5, 2015) (where same person was President and CEO of parent and subsidiary, entities were determined to have "a significant degree of effective control over the present matter" and should be considered privies).

[12] *See First Data Corp. v. Cardsoft, LLC*, IPR2014-00715, Paper 9 at 7-10 (Oct. 17, 2014) (finding third party indemnitor was real party in interest where it funded and participated in the drafting and filing of the petition); *General Electric Co. v. Transdata, Inc.,* IPR2014-01505, Paper 27 at 7-14 (Apr. 15, 2015) (finding petition time-barred where several years earlier, petitioner agreed to "provide a full and unqualified defense to" a third party in infringement action, to "direct and control the litigation" and to coordinate material decisions).

[13] Moreover, as the PTO notes, mandamus may be available in "extraordinary" circumstances involving "manifest disregard for the law." PTO Br. at 39.

over privity and real parties in interest, and the inevitable discovery issues that accompany such disputes, all of which frustrate the purpose of IPR proceedings.

The central purpose of IPR is to create a fast and efficient system that enables the PTO to weed out "low quality and dubious" patents. 157 Cong. Rec. S128, S131 (daily ed. Jan. 25, 2011) (Statement of Sen. Leahy). IPR serves the same purpose as PGR, which allows companies "to go back to the PTO and demonstrate… that the patent *shouldn't have been issued in the first place.*  That way *bad patents can be knocked out in an efficient administrative proceeding*, avoiding costly litigation." 157 Cong Rec. S1053, S1053 (daily ed. Mar. 1, 2011) (Statement of Sen. Schumer) (emphases added); *see also* H.R. Rep. No. 112-98, pt. 1, at 47, 163-64, *reprinted in* 2011 U.S.C.C.A.N. 67 (2011). Judicial review of § 315(b) determinations will frustrate this purpose, wasting the resources of parties, the Board, and this Court in ancillary procedural disputes instead of focusing on the key questions of patentabilty.

Determining who a real party in interest is, or whether an entity is in privity with a petitioner, is often a highly fact-dependent issue. To assess privity and real-party-in-interest claims, the PTO follows the guidance in *Taylor v. Sturgell*, *see* Office Patent Trial Practice Guide, 77 Fed. Reg. at 48,759, which sets forth no fewer than six distinct factors that can inform such an assessment. *Taylor*, 553 U.S. at 893-95. As a result, the Board frequently renders its privity and real-party-in-

18

interest determinations not on the basis of "isolated facts, but rather [by] consider[ing] the totality of the circumstances." *First Data*, IPR2014-00715, Paper 9 at 7.[14]

For purposes of judicial review, the import of such analyses is clear. The "correct" decision under a multi-factor, totality of the circumstances standard will often be contestable. Patent owners whose claims have been invalidated will have every incentive to appeal adverse privity and real-party-in-interest decisions in the hopes of wresting victory from the jaws of defeat. The parties, the Board, and this Court will devote substantial resources to these non-merits issues, yet those efforts are unlikely to promote uniformity or greater clarity in the law: the very nature of "totality of the circumstances" assessments is that each one turns on its own facts,

---

[14] *See also Zoll Lifecor*, IPR2013-00609, Paper 15 at 9-11 (real party in interest "inquiry is not based on isolated facts, but rather [it] must consider the totality of the circumstances" (citing *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 759 (1st Cir. 1994)); *Johnson Health Tech*, IPR2014-01242, Paper 16 at 10 ("The *totality of the evidence* shows that JHT and JHTNA have enjoyed a close parent-subsidiary relationship that is not just a mere collaboration between two separate and distinct entities" (emphasis added)); *Aruze Gaming Macau, Ltd. v. MGT Gaming, Inc.*, IPR2014-01288, Paper 13 at 20 (Feb. 20, 2015) (explaining "*the totality of the facts* before us do not lead to the conclusion that AGM's relationship with AGA is sufficiently close with respect to the District Court action" for it to be in privity with the petitioner (emphasis added)); *see VMWare, Inc. v. Good Tech. Software, Inc.*, IPR2014-01324, Paper 28 at 3 (Feb. 20, 2015) (denying petition as time barred and explaining "[t]he analysis under § 315(b) is a 'highly fact-dependent question' that is evaluated consistent with 'flexible and equitable considerations.'" (quoting Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012)).

and thus provides little, if any, guidance about how any other case should be resolved. *See United States v. Mead Corp.*, 533 U.S. 218, 241 (2001) (Scalia, J., dissenting) (the "test most beloved by a court unwilling to be held to rules (and most feared by litigants who want to know what to expect) [is] th'ol' 'totality of the circumstances' test").

Moreover, privity and real-party-in-interest disputes often spawn related discovery disputes. Given IPR's tight deadlines, Congress provided for extremely limited discovery as a matter of right in IPR, adopted a stringent "interests of justice" standard, 35 U.S.C. § 316(a)(5), that "restricts additional discovery to particular limited situations," and expected the Board to "be conservative in its grants of discovery," 154 Cong. Rec. S9988-S9989 (Sept. 27, 2008) (Senator Kyl). Where a patent owner raises a plausible, non-speculative challenge to whether a third party should be considered a privy or real party interest, and proffers evidence showing its theory could be correct, the Board has allowed for additional discovery.[15] But unsuccessful patent owners have every incentive to appeal adverse

---

[15] *See*, *e.g.*, *General Electric Co. v. Transdata, Inc.*, IPR2014-01380, Paper 15 at 5-6 (Nov. 12, 2014) (statement in SEC 10K filing that it had requested indemnification from the IPR petitioner was sufficient to justify discovery of indemnification agreement between those two entities); *VMware, Inc. v. Good Tech. Software, Inc.*, IPR2014-01324, Paper 25 (Dec. 5, 2014) (granting additional discovery into privity where corporate structure and statements on parent company's website suggested close relationship); *Coalition for Affordable Drugs II LLC v. NPS Pharma., Inc.*, IPR2015-00990, Paper 14 (July 2, 2015) (granting-in-

discovery rulings. And appellate decisions on the fact-intensive question of whether the Board properly applied its five-factor test for determining whether additional discovery was in the interests of justice, *see Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001, Paper 20 at 2-3 (Feb. 14, 2013), will increase costs and delay, while providing limited guidance for future cases.

As Broadcom has persuasively shown, Br. at 28, Congress intended this Court to bring uniformity only to substantive patent law, not to common law questions of privity and discovery disputes. But even if Wi-Fi One's claims to the contrary had merit, judicial review of timeliness decisions and related discovery rulings is unlikely to achieve those goals.[16]

To the contrary, such review will undermine the central purpose of the IPR process: an efficient and cost-effective alternative to district court litigation to weed out invalid patents. Strained privity claims, accompanied by discovery demands, are not uncommon, and as *Achates* itself illustrates, patent owners have a

part additional discovery into whether non-parties had a contractual right to control the IPR).

[16] Nor do Wi-Fi One's misplaced due process arguments justify judicial review of such rulings. *See* Wi-Fi One Br. at 51-52; *see also* WesternGeco LLC Br. at 13. A patent owner suffers no constitutional injury if discovery limitations prevent it from using a timeliness requirement to protect invalid patent claims from challenge. *Cf. Campbell v. Holt*, 115 U.S. 620, 628-29 (1885) (loss of a limitations defense to a debt action violates no constitutional rights of a debtor); *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 315-16 (1945) (affirming *Holt*'s essential holding).

particularly strong incentive to make such claims when their arguments on the patent merits are weak. Judicial review of such claims consumes private and governmental resources for no appreciable benefit. And even in the case of legitimate (though contestable) privity and real-party-in-interest claims and related discovery disputes, judicial review will still undermine the goals of IPR. Reversal of institution decisions would force the parties to endure potentially years more of district court litigation and a costly trial on patents that the Board, and even this Court, has already determined to be invalid.

## CONCLUSION

For all of the foregoing reason, this Court should affirm the continued validity of the decision and holding in *Achates*.


Dated:   March 27, 2017                    Respectfully Submitted,

                                           /s/Joseph R. Guerra
                                           Joseph R. Guerra
                                           Jeffrey P. Kushan
                                           Thomas A. Broughan III
                                           Sidley Austin LLP
                                           1501 K Street NW
                                           Washington, DC 20005
                                           (202) 736-8000
                                           *Attorneys for Amicus Curiae*

## **CERTIFICATE OF SERVICE**

I certify that on March 27, 2017, this BRIEF OF AMICUS CURIAE APPLE INC. IN SUPPORT OF APPELLEE BROADCOM CORPORATION was filed electronically using the CM/ECF system and served via the CM/ECF system on registered counsel.

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the BRIEF OF AMICUS CURIAE APPLE INC. IN SUPPORT OF APPELLEE BROADCOM CORPORATION will be filed in accordance with the Federal Circuit Rules.

/s/Thomas A. Broughan III
Thomas A. Broughan III
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
(202) 736-8000

## CERTIFICATE OF COMPLIANCE

I certify that, based on the processing software used to create this BRIEF OF AMICUS CURIAE APPLE INC. IN SUPPORT OF APPELLEE BROADCOM CORPORATION, the word count is 5,371 words, excluding those portions exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), and therefore complies with the type-volume limitation set forth in Fed. R. App. P. 29(a)(5).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point font, Times New Roman.

/s/Thomas A. Broughan III
Thomas A. Broughan III
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
(202) 736-8000

24